**E-Filed 4/15/2010**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| TYCO THERMAL CONTROLS LLC,<br><br>             Plaintiff,<br><br>      v.<br><br>REDWOOD INDUSTRIALS, et al.,<br><br>           Defendants.<br><br>ROWE INDUSTRIES, INC.,<br><br>          Counter-Claimant,<br><br>      v.<br><br>TYCO THERMAL CONTROLS, LLC,<br><br>         Counter-Defendant. | Case Number C 06-07164 JF (PVT)<br><br>**ORDER[1] RE PENDING MOTIONS**<br><br>Re: Docket No. 72, 104, 105, 125, 132, 144, 164, 167 |

Seven motions are before the Court, six of which are addressed by this order: (1) Plaintiff Tyco Thermal Controls LLC ("Tyco") moves for leave to file a third amended complaint ("TAC"); (2) Defendant Rowe Industries, Inc. ("Rowe") moves to strike the declaration of Deborah Belleau, a percipient witness offered by Tyco; (3) Tyco moves to extend the time allowed for discovery; (4) Rowe cross-moves for partial summary judgment against Tyco on its claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"); (5) Defendants Redwood Industrials, Roland Lampert and Audrey Lampert (collectively, "Redwood"), joined by Carlisle Companies Inc., Carlisle Corporation and Tensolite

---

[1] This disposition is not designated for publication in the official reports.

Company (collectively, "Carlisle") and Rowe, move for partial summary judgment as to Tyco's liability as a Potentially Responsible Party under CERCLA; and (6) Tyco moves to strike the declarations of Dr. Gabriel Sabadell and Dr. Richard Richter, expert witnesses offered on behalf of Rowe.[2]  Each of the motions is opposed.  The Court has considered the moving and responding papers and the oral arguments of counsel presented at the hearing on April 9, 2010, and will dispose of the motions as follows.

## I. TYCO'S MOTION FOR LEAVE TO AMEND

### A. Background

Tyco provided notice of its intent to bring a claim against Rowe under the Resource Conservation and Recovery Act ("RCRA") on November 13, 2006, pursuant to 42 U.S.C. § 6972(b)(2)(A).  Tyco then filed suit on November 17, 2006 alleging, among other claims for relief, violations of RCRA.  A plaintiff is required to provide a defendant with ninety days notice of its intent to file a RCRA claim.  42 U.S.C. § 6972(b)(2)(A).  Recognizing the deficiency of the pre-suit notice it provided, Tyco moved on October 28, 2009 to file a second amended complaint ("SAC") voluntarily withdrawing its RCRA claim as to all defendants.  On December 14, 2009, the Court granted Tyco's motion to withdraw the RCRA claim without prejudice and determined

---

[2]  Tyco also moves for summary adjudication of its substantive CERCLA claims against Rowe.  For the reasons discussed on the record at oral argument, determination of that motion will be deferred pending additional discovery and investigation of new developments at the Site.  However, now ripe for determination is the undisputed fact that Rowe is the successor-in-interest to Coleman and in turn the successor-in-interest to Hill Industries, Hill Magnetics, and Pacific Transformer.  Stanzler Decl., Ex. N (Rowe's Answer to Tyco's FAC) (admitting that it is the successor-in-interest to Coleman) ¶ 13; *id.* Ex. K at 1 (Corporate Quitclaim Deed executed by Coleman on March 30, 1973 representing that Coleman was the "successor in interest to Pacific Transformer Co., formerly Hill Magnetics, Inc., formerly Hill Industries, Inc."); *id.,* Ex. O (Deposition of Ted E. Gaty, former President of Coleman) at 13:6-10 (admitting that the signature on the Corporate Quitclaim Deed, identified as Exhibit K, is his own); *id.,* Ex. L (Letter to Title Insurance and Trust Company from Coleman, dated on March 40, 1973, signed by Gaty and George B. Pletsch, Secretary at Coleman, stating that Coleman "is the successor in interest to Hill Industries, inc., Hill Magnetics, Inc., and Pacific Transformer Co., Inc."); *id.* Ex. M at 2 (Letter to of Instructions to Title Insurance and Trust Company signed by Gaty and dated March 30, 1973 asserting that Coleman is the successor in interest to "Hill Magnetics Inc. (formerly Hill Industries Inc.)").

1  that Tyco's first amended complaint ("FAC"), absent the RCRA claim, would remain the

2  operative pleading.[3]  Tyco now moves to amend its pleading to re-allege the RCRA claim against

3  Rowe.

4      **B. Legal Standard**

5          Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings.  The Ninth

6  Circuit has held that the rule should be applied with "extreme liberality."  *DCD Programs, LTD.*

7  *v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *Howey v. United States*, 481 F.2d 1187, 1190

8  (9th Cir. 1973).  However, leave to amend "is not to be granted automatically."  *Zivkovic v. S.*

9  *Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002), quoting *Jackson v. Bank of Hawaii*, 902

10  F.2d 1385, 1387 (9th Cir. 1990).  Rather, a court must consider whether the proposed amendment

11  (1) would be futile, (2) would prejudice the non-moving party, (3) was brought in bad faith, or

12  (4) resulted from undue delay.  *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530 (N.D. Cal.

13  1989), citing *DCD Programs*, 833 F.2d at 186.  Absent prejudice, or a strong showing of any of

14  the remaining factors, there exists a presumption under Rule 15(a) in favor of granting leave to

15  amend. *See Lowrey v. Tex. A & M Univ. Sys.,* 117 F.3d 242, 245 (5th Cir.1997).

16      **C. Discussion**

17          Rowe carries the burden of showing why leave to amend should not be granted.

18  *Genentech,* 127 F.R.D. at 530-31.  It contends that the proposed amendment should be denied

19  based solely on the grounds of futility.

20          RCRA's notice "provisions are jurisdictional: Absent compliance with a required notice

21  provision, [the court] lack[s] subject matter jurisdiction to hear the RCRA claims."  *Covington v.*

22  *Jefferson County*, 358 F.3d 626, 636 (9th Cir. 2004), citing *Ascon Props., Inc. v. Mobil Oil Co.,*

23  866 F.2d 1149, 1160 (9th Cir. 1989) (holding that the ninety-day notice requirement is

24  jurisdictional).  Accordingly, amendment would be futile if the Court determines that the

25  proposed RCRA claim does not comply with the ninety-day notice requirement in 42 U.S.C. §

26

27

28

---

[3]  The proposed SAC also sought to add state law nuisance and trespass claims against all
Defendants, which the Court declined to allow.

3

6972(b)(2)(A).

Tyco provided notice of its intent to bring a RCRA claim on November 13, 2006, only four days prior to alleging the claim in its original complaint against Rowe. That notice obviously failed to comply with the ninety-day pre-suit notice requirement. Then, on October 29, 2009, Tyco sought to withdraw its RCRA claim against all defendants. On December 14, 2009, the Court granted Tyco's motion to withdraw the RCRA claim without prejudice. On March 2, 2010, Tyco filed the instant motion to add a claim for violation of RCRA against Rowe, contending that the mandatory ninety-day statutory period now has been satisfied.[4]

In *Hallstrom v. Tillamook County*, 493 U.S. 20, 32, 110 S.Ct. 304, 312, 107 L.Ed.2d 237 (1989), after holding that non-compliance with RCRA notice provisions deprived it of subject-matter jurisdiction, the Supreme Court concluded that, "the dismissal of this action [will not] have the inequitable result of depriving petitioners of their right to a day in court. Petitioners remain free to give notice and file their suit in compliance with the statute to enforce pertinent environmental standards." At issue here is whether the Supreme Court intended that a plaintiff be required to file a new case alleging its RCRA claim with proper pre-suit notice, or whether a plaintiff may withdraw the faulty RCRA claim and then re-allege the claim in the same action after proper notice has been given.

The instant motion arrives in a procedural posture that does not appear to have been addressed previously by the Ninth Circuit. Both parties identify *Envirowatch, Inc. v. Fukino*, No. 07-00016 SOM-BMK, 2007 WL 1933132 (D. HI June 28, 2007), *affirmed by* 302 Fed.Appx. 572 (9th Cir. 2008), as the case closest to the present factual scenario. In that case, the court concluded that the plaintiff could not cure its untimely RCRA notice by amending its original complaint to re-allege the same RCRA claim after expiration of RCRA's statutory waiting period. *Id.* at *3 (reasoning that the court knew of "no case decided after *Hallstrom* in which the court looked to the amended complaint, rather than the original complaint, in determining

---

[4] Tyco argues that Rowe waived its pre-suit notice defense by acquiescence because the defense was raised for the first time in August 2009, nearly three years after Tyco filed suit. However, the statutory notice period is jurisdictional and cannot be waived.

4

1    whether a plaintiff had satisfied the sixty-day notice provision of a RCRA citizen suit statute

2    when the two complaints contain the same claims").[5]   Tyco argues that the instant case is

3    distinguishable because it does not seek to re-allege a claim that exists in an operative complaint

4    but rather moves to add a RCRA claim that it withdrew previously without prejudice.[6]   Rowe

5    insists that this procedural distinction is meaningless.   This Court agrees.

6           Tyco also contends that under *Zands*, a "non-adversarial" period is not required before a

7    party may file a RCRA claim.   In *Zands*, the court held that, "for purposes of a notice and delay

8    provision relating to a *new claim* which appears for the *first time* in the pleadings in the amended

9    complaint, the Court will look to the filing of the amended complaint to determine when the

10   'action' is commenced." *Id.* at 1259 (emphasis added).   The court concluded that "while giving

11   alleged violators an opportunity to voluntarily comply with RCRA regulations is a legitimate

12   purpose for purposes of a notice and delay provision, this purpose in and of itself does not

13   warrant the creation of a 'non-adversarial' period that is not explicitly in the statute." *Id.* at 1261.

14   While it recognizes *Zands'* conclusion that a "non-adversarial" period is not required prior to

15   allegation of a RCRA claim, the Court concludes that *Zands* does not govern a situation in which

16   _____

17       [5]  Plaintiff contends that "it is not entirely clear that a plaintiff cannot amend a complaint

18   to cure inadequate notice even when the currently operative complaint contains a RCRA claim."
     Motion for Leave at 9, citing *Bugsi, Inc. v. Chevron U.S.A., Inc.*, 857 F.Supp. 1427 (D. Or.

19   1994).   However, the *Bugsi* "court's factual and procedural recitation does not make clear
     whether the causes of action asserted in the amended complaint are the same ones asserted in the

20   original complaint." *Forest Guardians v. U.S. Bureau of Reclamation*, 462 F.Supp.2d 1177,
     1185 (D. N.M. 2006).   Moreover, *Bugsi* cites *Zands v. Nelson*, 779 F.Supp. 1254 (S.D. Cal.

21   1991) for the proposition that "jurisdiction may be based on an amended complaint filed more
     than sixty [or ninety] days after the notice of intent to sue only if the claim requiring sixty-day [or

22   ninety-day] notice is brought for the first time in the amended complaint." *Envirowatch, Inc.*,
     2007 WL 1933132, at *4, citing *Zands*, 799 F.Supp at 1258-59 (holding that "[f]or the purposes

23   of a notice and delay provision relating to a new claim which appears for the first time in the
     pleadings in the amended complaint, the court will look to the filing of the amended complaint to

24   determine when the action is commenced.")

25

26       [6]  Finally, in *Envirowatch,* the court indicated that it would not rule then on "whether
     [plaintiff] may immediately file a new suit under *Hallstrom* or any other case, leaving that matter

27   for consideration in any new action [plaintiff] may commence." *Envirowatch, Inc.*,  2007 WL
     1933132, at 6.

28

                                                    5

the adversarial period included the faulty allegation of a RCRA claim.  Accordingly, the Court

concludes that *Envirowatch* controls and will deny Tyco's motion for leave to amend.[7]

## II. Rowe's Motion to Strike the Declaration of Deborah Belleau

The declaration of Deborah Belleau in support of Tyco's motion for partial summary

judgment against Rowe purportedly authenticates and explains Monsanto Company

("Monsanto") shipping records dated between 1958 and 1971.  Opp. Mot. at 2 (claiming that

"Belleau's declaration authenticates and explains Monsanto shipping records, which show that

Rowe received over 400,000 pounds of [polychlorinated biphenyls ("PCBs")] during the time it

manufactured electrical transformers at 2201 Bay Road, Redwood City, CA (the "Site")).  In her

declaration, Belleau purportedly identifies what the documents mean with regard to the shipment

of PCB containing products to Rowe's alleged predecessors.  Declaration of Deborah E. Belleau

("Belleau Decl.") ¶¶ 3-19.

Rowe contends that Belleau's declaration should be stricken because it consists solely of

expert opinion testimony, and Belleau has not been disclosed as an expert witness.  In its

opposition papers, Tyco argues that Belleau's declaration "is clearly based on her personal

knowledge and experience and does not constitute expert opinion."  Opp. Mot. at 2.  In its reply,

Rowe contends that Belleau cannot be considered a lay witness because she lacks personal

knowledge of the facts to which she testifies.

Belleau currently is employed as a paralegal at the law firm of Husch Blackwell Sanders,

LLP, where she works on litigation matters involving Monsanto, now known as Pharmacia

Corporation. Belleau Decl. ¶ 1.  Before working at the law firm, Belleau was a paralegal in the

legal department at Monsanto from August 1981 to August 1997.  *Id.*  Tyco contends that as a

result of her experience as a Monsanto employee from August 1981 to August 1997 and her

current employment at a firm that represents Monsanto, Belleau developed personal knowledge

about Monsanto shipping records and their significance.  *Id.* (stating that she "became familiar

---

[7]  As the Court indicated during the hearing on this motion on April 9, Tyco may file a separate action alleging the concerned RCRA claim against Rowe in compliance with the ninety-day notice requirement and subsequently move to relate the cases pursuant to Civil L. R. 3-12.

Case No. CV 06-07164 JF (PVT)
ORDER RE PENDING MOTIONS
(JFLC1)

1  with the creation and maintenance of Monsanto's documents and records, including its records

2  reflecting sales of Monsanto products, [as well as] the nomenclature and terminology used in

3  these documents").

4      Opinion testimony by a lay witness "is limited to those opinions and references which are

5  (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the

6  witness' testimony or the determination of a fact in issue, and (c) not based on scientific,

7  technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

8  Rule 701's requirement that lay opinion be "rationally based on the perception of the witness" is

9  "the familiar requirement of first-hand knowledge or observation."  Advisory Committee Note to

10  Federal Rule of Evidence 701, 56 F.R.D. 183, 281.

11      As argued by Rowe, Belleau provides no explanation of the context in which her position

12  as a paralegal gave her access to Monsanto's records or the basis of her alleged understanding of

13  the records.  More importantly, Belleau's employment at Monsanto did not begin until August

14  1981, many years after the end of the period relevant to the instant case.  She does not explain

15  how her experience gives her the "first-hand knowledge or observation" required to explain the

16  significance of shipping records dated from 1958 to 1971.  Neither Belleau's declaration nor any

17  other evidence on the record demonstrates that Monsanto maintained its records in the manner

18  with which Belleau allegedly became familiar decades later.  Reply at 3 ("There are no facts

19  regarding whether Monsanto maintained the exact same invoice-generating or accounting system,

20  including the same relevant codes, terms and shorthand references, from 1959 through 1971").

21      The Court concludes that without personal knowledge of record-keeping procedures at

22  Monsanto during the time period in which the relevant shipping records were created, Belleau

23  cannot provide a helpful understanding of the facts at issue.  Accordingly, the Court will grant

24  the motion to strike Belleau's declaration.  The shipping records that Belleau's declaration is

25  offered to authenticate thus are inadmissible.[8]  However, authenticity of the records still may be

26

27      [8]  Redwood joins in Rowe's motion to strike Belleau's declaration and also moves to
strike paragraph 21 of the declaration of Jordan Stanzler and its accompanying Exhibit T

28  (Monsanto shipping records).  Redwood's motion also will be granted.

7

established going forward by way of a deposition of Monsanto's custodian of records. *See infra* III.

### III. Motion to Continue Discovery Deadline

Tyco moves to extend the current discovery deadline of November 9, 2009 in order to take the deposition of a Monsanto employee with personal knowledge of the company's shipping records and to retake the deposition of Roland Lampert.

#### A. Legal Standard

Rule 16(b)(4) provides that a court may modify or extend a discovery deadline upon a showing of good cause. Fed. R. Civ. P. 16(b)(4). In determining whether or not to reopen discovery for the limited purpose requested here, the court considers:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Bleek v. Supervalu, Inc.*, 95 F.Supp.2d 1118, 1120 (D. Mont. 2000), citing *U.S. ex rel. Schumer v. Hughes Aircraft Co.,* 63 F.3d 1512, 1526 (9th Cir.1995), *cert. granted in part,* 519 U.S. 926, 117 S.Ct. 293, 136 L.Ed.2d 212, *judgment vacated on other grounds,* 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), citing *Smith v. United States,* 834 F.2d 166, 169 (10th Cir.1987). "Whether to reopen discovery rests in the court's sound discretion." *Bleek*, 95 F.Supp.2d at 1120, citing *U.S. ex rel. Schumer*, 63 F.3d at 1526.

#### B. Discussion

##### 1. Deposition of Monsanto employee

Tyco seeks an extension of the discovery deadline to depose a Monsanto employee with knowledge of the company's shipping records in order to authenticate and explain the meaning of the same. As discussed above, Tyco submitted the Belleau declaration in an attempt to explain and authenticate these records. Tyco argues that the deposition of an employee familiar with Monsanto's shipping records would eliminate any dispute at trial relating to the authenticity, admissibility or meaning of the records.

1   The Court agrees.  The records in question are highly relevant to the issue of whether

2   PCBs existed and/or were released on the Site between 1958 and 1971.  Moreover, while it

3   opposes the motion, Rowe does not claim that it would suffer any prejudice if Tyco were

4   permitted to conduct the deposition.  The Court has vacated the original trial date, and a new trial

5   date has not been scheduled.  Accordingly, the Court will grant the motion to extend the

6   discovery deadline to enable Tyco to depose a Monsanto employee with personal knowledge of

7   the company's shipping records.

8                              **2. Re-deposition of Roland Lampert**

9        Tyco deposed Lampert on February 12, 2008.  Tyco claims that it needs to re-depose

10  Lampert because Lampert disclosed approximately three hundred additional documents to Tyco

11  on December 29, 2009, after his original deposition and after the close of discovery.  Declaration

12  of Jordan Stanzler in Support of Motion to Continue Discovery ¶ 4, Ex. C (Letter from Margaret

13  Dollbaum, counsel for Roland Lampert, dated December 29, 2009) (indicating that a disc

14  enclosed contains copies of documents supplementing the response of Lampert to Tyco's

15  document request).  Tyco asserts that the relevant documents include several letters referencing

16  storms that caused roof leaks and water pooling on the floor at the Site during the late 1960s, and

17  that this new information potentially is relevant to the origin and migration of PCBs at the Site –

18  a disputed issue of material fact.

19       Rowe contends that Tyco had ample opportunity to address the topic of the condition of

20  the property during Lampert's first deposition and any need for a second deposition is a result of

21  Tyco's own lack of diligence.  Rowe also argues that the vast majority of the late-disclosed

22  documents were duplicative of previous discovery and that only three letters concerning roof

23  repairs sometime between 1968 and 1969 were new.  Declaration of Mordecai Boone in

24  Opposition to Motion to Continue Discovery ¶ 3, Ex. B.  However, even if there are only a few

25  newly-disclosed documents, Tyco still may suffer prejudice if it is not permitted to explore the

26  additional inquiry suggested by these documents.  Accordingly, particularly because the trial is

27  not imminent, the Court will permit Tyco to re-depose Lampert, with the understanding that the

28  scope of the deposition will be limited to questions reasonably related to the newly-discovered

9

letters.

Finally, in light of the unknown trial date, late produced documents, newly-discovered facts and recent and imminent excavation at the Site – any party may seek additional discovery by agreement or at the discretion of Magistrate Judge Trumbull.

## IV. ROWE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Background

Tyco acquired ownership of the Site through a merger with its predecessor, Raychem. FAC ¶¶ 1, 2.  It alleges that between 1965 and 1973, when Hill Industries, also known as Hill Magnetics, Inc., manufactured transformers on the property, "[t]he manufacturing operations involved the use of compounds known as polychlorinated biphenyls ("PCBs"), and other chemicals associated with PCBs...These operations have caused the discharge of PCBs, dichlorobenzene and trichlorobenzene into the environment." *Id.* ¶ 8.  It also alleges that Rowe is the successor in interest to Coleman Cable and Wire Company ("Coleman") and is therefore the successor in interest to Pacific Transformer Co., Hill Industries, Inc. and/or Hill Magnetics, Inc. *Id.* ¶ 13.  Tyco seeks to recover "all investigative costs, response costs and abatement costs it has incurred or will incur in cleaning up and remediating the environmental contamination at the site; and for attorneys' fees and costs associated therewith." *Id.* ¶ 15.

Tyco filed the FAC against all defendants in this action on January 15, 2007, alleging claims for relief pursuant to sections 107 and 113 of CERCLA for recovery of response costs and contribution; injunctive relief under RCRA;[9] declaratory relief; and related state law claims not at issue here.  It is undisputed that Tyco provided no notice of its intent to seek relief under CERCLA.  Declaration of Mordecai D. Boone in Support of Rowe's Motion for Summary Judgment ¶ 1 (asserting Tyco never provided any pre-suit notice to any defendant in this action of its intention to file a claim under CERCLA).

---

[9]  As addressed above, the FAC, minus the RCRA claim, is the operative complaint in the instant action.  *See supra* I.

Case No. CV 06-07164 JF (PVT)
ORDER RE PENDING MOTIONS
(JFLC1)

**B. Legal Standard**

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).  Material facts are those that might affect the outcome of the case under the governing law.  *Id.* at 248.  There is a genuine dispute about a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  The moving party bears the initial burden of informing the Court of the basis for the motion and identifying portions of the pleadings, depositions, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Where the party moving for summary judgment would not bear the ultimate burden of persuasion at trial, it must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets its initial burden, the burden shifts to the nonmoving party to present specific facts showing that there is a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

The evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).  Summary judgment thus is not appropriate if the nonmoving party presents evidence from which a reasonable jury could resolve the material issue in its favor.  *Liberty Lobby,* 477 U.S. at 248-49, 106 S.Ct. at 2510; *Barlow v. Ground,* 943 F.2d 1132, 1134-36 (9th Cir. 1991).

**C. Discussion**

The sole issue presented by Rowe's motion for partial summary judgment is whether the Court has subject matter jurisdiction over Tyco's two CERCLA claims in light of the undisputed fact that Tyco did not provide pre-suit notice of the claims to Rowe.  Rowe contends that pre-suit

11

notice is a jurisdictional pre-requisite.  42 U.S.C. § 9659(d)(1) (providing that "[n]o action may be commenced under subsection (a)(1) of this section before 60 days after the plaintiff has given notice of the violation to...[a]ny alleged violator of the standard, regulation, condition, requirement, or order concerned (including any provision of an agreement under section 9620 of this title.")   Tyco argues that the notice provision in Section 9659(d) applies to claims brought under Section 9659(a), but not to claims brought under Section 9607.

Tyco contends that controlling case law within the Ninth Circuit holds that Section 9607 contains no notice requirement at all.  Tyco's Opposition to Rowe's Motion for Summary Judgment at 4-5, citing *State of Idaho v. Howmet Turbine Component Co.*, 814 F.2d 1376 (9th Cir. 1987) and *Denison v. Kitzhaber*, CV-00-833-BR, 2001 U.S. Dist. LEXIS 12514 (D. Or. July 24, 2001).  *Howmet* held that "Section 107...contains no notice requirement."  *Howmet*, 814 F.2d at 1380.  The court explained that the sixty day notice language of 42 U.S.C. § 9612(a) applies only to claims against the Hazardous Substance Superfund (the "Fund") and is not a jurisdictional prerequisite to filing a private action to recover costs incurred in cleaning up toxic waste against parties who potentially are liable under § 9607.  Much of the reasoning in *Howmet* focuses on the distinction between the use of the word "claims" in Section 112(a) and the authorization of "actions" in Section 9607.  The court concluded that "this distinction between 'claims' and 'actions' is central to the structure of CERCLA and has been carefully preserved throughout the statute."  *Howmet*, 814 F.2d at 1380, citing *United States v. Mottolo,* 605 F.Supp. 898, 904 (D.N.H. 1985). "[S]ection 112(a)'s reference to 'claims' indicates that its notice requirement applies solely to those seeking reimbursement from the fund. The differences in language between sections 107 and 112(a) militates against requiring notice in civil actions." *Howmet*, 814 F.2d at 1380, citing *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1080 (1st Cir.1986) (internal citation omitted).

While *Howmet* analyzed the notice requirement of section 9612(a), it did not address the separate notice requirement of Section 9659.  Indeed, the sixty-day pre-suit notice requirement in Section 9659 applies expressly to civil *actions.*  However, *Howmet* did recognize in dicta the Superfund Amendments and Reauthorization Act of 1986 ("SARA") – which added the notice

requirement at issue here – and concluded that it did not alter the analysis of CERCLA's notice requirements. *Howmet*, 814 F.2d at 1379 (not mentioning Section 9659 specifically, but stating that "we need not decide whether to apply the recent amendments because we conclude the result would be the same under either version of the statute.").

In *Denison*, the court concluded specifically that the sixty-day notice provision of § 9659(d) was a jurisdictional prerequisite for a citizen suit brought under § 9659(a).  *Denison*, 2001 U.S. Dist. LEXIS 12514, at *18, citing *Roe v. Wert*, 706 F.Supp.788, 794 (W.D. Okla. 1989).  Tyco contends that while *Denison* applies to citizen suits brought under § 9659(a), the reasoning of the case does not apply to actions brought under § 9607 to recover response costs. *Id.* at *17.  Notably, the court observed that, "Plaintiff's CERCLA action is a citizen suit brought under § 9659(a) and does not involve reimbursement of costs.  The principles in *Howmet*, therefore, are not applicable in these circumstances."  *Denison*, 2001 U.S. Dist. LEXIS 12514, at *17 n. 5.  This Court interprets this observation as supporting the conclusion that actions seeking reimbursement of costs pursuant to § 9607 are distinct from actions seeking injunctive or declaratory relief under § 9659, and that the notice requirement of § 9659(d) applies only to the latter.

Rowe contends that because *Howmet* did not consider Section 9659 at all and *Denison* did not address whether the notice requirement of Section 9659(d) applied to claims brought under Section 9607, there is no Ninth Circuit authority directly on point with respect to the issue before the Court.  Rowe recognizes that there is a split of authority outside of the Ninth Circuit and urges the Court to reject the holding articulated in *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 514 F.Supp.2d 328 (D.Conn. 2007) and adopt the holding of *Roe v Wert*, 706 F.Supp.788 (W.D. Okl. 1989).

In *Wert*, plaintiffs brought suit to recover response costs.  *Wert* concluded that while the action was filed under Section 9607, it "should have properly been brought under 42 U.S.C. § 9659."  *Id.* at 792.  The court reasoned that "Section 9607 provides for claims against Superfund, and section 9659 is for citizens['] suits brought by private parties against all other entities."  *Id.* (reasoning that "[u]nder section 9607, pre-suit notice was not a prerequisite for citizens suits.

13

Under section 9659, sixty (60) days notice is now a prerequisite for citizens suits. 42 U.S.C. § 9659(d)(1) (1986).")  The court then went on to apply the notice requirement of Section 9659(d) to the claim originally alleged to have been filed under Section 9607.  Rowe contends that this Court similarly should hold that Section 9659(d)'s requirement applies here.  However, the Ninth Circuit has ruled that Section 9607 not only provides for claims against the Fund but also "expressly creates a private cause of action" for cost recovery against private parties.  *3550 Stevens Creek Assocs. v. Barclays Bank of California*, 915 F.2d 1355, 1358 (9th Cir. 1990); *see also Innis*, 514 F.Supp.2d at 335 (holding that *Wert's* holding "is inconsistent with the plain language of § 107, which provides that the covered persons are liable for removal costs incurred by the federal government, a state, an Indian tribe, or '*any other person.*' 42 U.S.C. § 9607(a)(4)(A)-(B)") (emphasis added). In light of this authority, *Wert* is unpersuasive.

*Innis* confronted the precise question at issue here – whether the jurisdictional notice requirement under section 310 of CERCLA, 42 U.S.C. § 9659(d)(1), applies to claims brought under section 107 of CERCLA, 42. U.S.C. § 9607(a).  *Innis*, 514 F.Supp. at 332 (stating that the holding "hinge[d] on the nature of [plaintiff's] claim and the interaction, if any, between sections 107 and 310 of CERCLA.").  It concluded that the "two sections provide two distinct remedial possibilities for private parties, one to recover response costs, and the other to induce legal compliance."  *Id.* at 333.  *Innis* relied upon the Supreme Court's holding in *In Key Tronic Corp. v. United States,* 511 U.S. 809, 817, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994), where the Court distinguished "between sections 107 and 310 in the context of a discussion about attorney's fees." *Id.* ("As we have said, neither § 107 nor § 113 expressly calls for the recovery of attorney's fees by the prevailing party. In contrast, two SARA provisions contain explicit authority for the award of attorney's fees. A new provision authorizing private citizens to bring suit to enforce the statute, see 100 Stat. 1704-1705, expressly authorizes the award of 'reasonable attorney and expert witness fees' to the prevailing party. 42 U.S.C. § 9659(f).")

*Innis* also relied upon *Regan v. Cherry Corp.*, 706 F.Supp.145 (D.R.I. 1989) in concluding that Congress intended two different types of claims for relief to be brought under Sections 9607 and 9659.  In *Regan*, the court held that pre-suit notice was required for plaintiff's

14

claim under Section 9659 and concluded, "§ 310[, 42 U.S.C. § 9659] does not provide a private

right of action for response costs as does § 107[, 42 U.S.C. § 9607]. The purpose of § 310...is

not to reimburse citizens for out-of-pocket expenses, but to prod government agencies into

vigorously enforcing CERCLA and to allow private actions to compel compliance when the EPA

and state still fail to act." *Regan*, 706 F.Supp. at 148 (concluding that claims brought under

section 310 and section 107 are different and that the pre-suit notice required for claims asserted

under section 310 cannot be waived).

Finally, *Innis* adopted the observation in *City of Detroit v. A.W. Miller, Inc.,* 842 F.Supp.

957, 964 (E.D. Mich. 1994), that "Subsection (d) of section 9659 makes clear that the notice

provisions [defendant] argues are applicable here, apply *only* to actions brought under subsection

9659(a)."[10]  In light of the Ninth Circuit's determination that Congress intended Section 9607 to

create a private right of action for remediation costs distinct from the injunctive and declaratory

relief available under Section 9659(a) – this Court concludes that the notice requirement of

Section 9659(d) applies only to those claims brought under Section 9659(a). *See* 42 U.S.C. §

9659(d) (expressly stating "[n]o action may be commenced *under subsection (a)(1) of this

section* before 60 days after the plaintiff has given notice of the violation...") (emphasis added).

Because Tyco only alleges claims under Section 9607 with no reference to Section 9659, the

Court concludes that there is no notice-and-waiting prerequisite to plaintiff's CERCLA claims.

_____

[10] "This interpretation of CERCLA is further supported by other cases in which courts
have explained the prerequisites for recovery of response costs by private parties under § 107
without reference to § 310 or any notice requirement." *Innis*, 514 F.Supp.2d at 334, citing *B.F.
Goodrich Co. v. Murtha,* 958 F.2d 1192, 1198 (2nd Cir.1992) (defining the four elements of a
prima facie case under § 107); *Gen. Elec. Co. v. Litton Indus. Automation Sys.,* Inc., 920 F.2d
1415, 1417-20 (8th Cir.1990) ( "[Section 107(a)] holds the party responsible for a hazardous
substance release liable for cleanup costs incurred as a result of the release [and] allows a private
party who incurs such costs to recoup its cleanup expenses from the responsible party."); *3550
Stevens Creek Assocs.,* 915 F.2d at 1358 ("There is no question that section 107(a)(2)(B)
expressly creates a private cause of action.") (quotation marks omitted); *cf. Walls v. Waste
Resource Corp.,* 823 F.2d 977, 981 (6th Cir.1987) ("hold[ing] that the sixty-day notice provision
of § 9612(a) does not apply to private actions for the recovery of response costs" brought
pursuant to § 107(a)).

Accordingly, the Court has subject matter jurisdiction, and Rowe's motion for partial summary judgment on Tyco's CERCLA claims will be denied.[11]

## V. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Background

Tyco acquired the Site through a merger with its predecessor Raychem and remains the owner of the Site today.  FAC ¶¶ 1-2.  The Site has been operated by Raychem or Tyco continuously since 1973.  Tyco alleges that Rowe is responsible as the successor-in-interest to Hill Industries, Inc., which allegedly manufactured transformers at the Site from 1965 to 1973 and used PCBs and other chemicals leading to the release of those chemicals into the environment.  *Id.* ¶¶ 8-13.  Tyco also claims that Carlisle is liable as the alleged former sublessor/guarantor of Hill. *Id.* ¶¶ 2-7.  Redwood Industrials is a California general partnership, and Roland and Audrey Lampert are two of its partners.  The other partners are deceased.  Redwood Industrials purchased the Site in the late 1950s and leased it to Carlisle from 1962 until mid-1973, when it was sold to Raychem.

On February 26, 2007, Redwood filed its Answer to the FAC, and at the same time asserted counterclaims for:  (1) contribution under CERCLA; (2) declaratory relief under CERCLA and state law; and (3) equitable indemnity.  Counter-Claims ¶¶ 114-124.  Tyco's answer to Redwood's counterclaims reads in its entirety as follows, "Plaintiff denies that Redwood Industrials, Roland Lampert and Audrey Lampert are entitled to contribution from Plaintiff.  Plaintiff denies that it is responsible for a release or threatened release of contaminants or hazardous substances." Tyco's Answer to Redwood ("Answer") at 2.  Tyco did not allege any affirmative defenses in its Answer.  *Id.*  Redwood, joined by Rowe and Carlisle, moves for a determination that Tyco is a Potentially Responsible Party ("PRP") as a matter of law within the meaning of Section 9607 and should be held responsible for paying its fair share of the cleanup

---

[11]  Tyco also asserts that its Section 9607 claims are subject only to the enumerated affirmative defenses identified within that provision, which do not include a "defense" of deficient notice.  However, noncompliance with a jurisdictional notice requirement is not an affirmative defense but a challenge to the Court's ability to consider a claim at all.

16

costs for the Site.  Defendants do not seek an allocation of Tyco's responsibility, leaving that issue for determination at trial.

**B. Legal Standard**

The legal standard on a motion for summary judgment is set forth above. *See supra* IV.B.

**C. Discussion**

Section 9607(a) provides that , "Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section – (1) the owner and operator of a vessel or a facility...[is liable for] (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan."  42 U.S.C. § 9607(a).  "CERCLA liability is triggered by ownership or operation of the facility, not by responsibility for contamination." *U.S. v. Iron Mountain Mines, Inc.*, 812 F.Supp.1528, 1552-53 (E.D. Cal. 1992), citing *Nurad, Inc. v. W.E. Hooper & Sons Co.,* 966 F.2d 837, 846 (4th Cir.1992). *See also Stanley Works v. Syndergeneral Corp.,* 781 F.Supp. 659, 662-664 (E.D. Cal.1990).

Tyco concedes that it is the current owner of the Site and that as "the owner and operator of a vessel or a facility" it falls within the statutory definition of a PRP under Section 9607(a)(1). Tyco nonetheless argues that even though it is a PRP, it is not liable because it did not contribute to the contamination of the Site and was unaware of any PCB contamination at the time it purchased the Site in 1973.

Section 9607(b) specifically lists affirmative defenses to CERCLA liability, and the innocent landowner defense is included on that list.  42 U.S.C. § 9607.  However, as noted above, Tyco failed to allege any affirmative defenses to Redwood's counterclaims in its Answer. Rather, Tyco generally denied responsibility for a release or threatened release of contaminants or hazardous substances.  Answer at 2 (asserting in its entirety that, "Plaintiff denies that Redwood Industrials, Roland Lampert and Audrey Lampert are entitled to contribution from Plaintiff.  Plaintiff denies that it is responsible for a release or threatened release of contaminants or hazardous substances.")  Defendants contend that Tyco cannot defeat summary judgment by raising an issue for the first time in opposition to the motion because its "failure to assert [the] defense in the[] amended answer to [the] complaints or in an appropriate manner pursuant to

17

Rule 56(e) precludes them from raising it at this late date." *Broadcast Music, Inc. v. Moor-Law, Inc.,* 484 F.Supp. 357, 364 n. 16 (D. Del. 1980).

It is true that, "[a defendant] may raise an affirmative defense for the first time in a motion for summary judgment ... if the delay does not prejudice the plaintiff." *Magana v. Commonwealth of N. Mariana Islands,* 107 F.3d 1436, 1446 (9th Cir. 1997). Here, however, Tyco attempts to assert the innocent landowner defense after three years of litigation during which the Defendants have had no opportunity to discover facts that may support or defeat such a defense. Tyco neither provides an explanation for its delay, nor seeks leave of court to add the affirmative defense. Under these circumstances, the Court will grant Defendants' motion for summary adjudication, and determines that Tyco is a PRP responsible for paying its fair share of the cleanup costs for the Site.[12]

## VI. MOTION TO STRIKE TESTIMONY OF ROWE'S EXPERT WITNESSES

"The test for admissibility of expert testimony under *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), is whether the opinion the expert seeks to offer is relevant and reliable." *Walnut Creek Manor*, 622 F.Supp.2d at 926. "This determination 'entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Id.*, citing *Daubert,* 509 U.S. at 592, 113 S.Ct. 2786. Tyco moves to strike the declarations of both Dr. Gabriel Sabadell and Dr. Richard Richter, not challenging the scientific validity of their methods or methodology, but arguing their conclusions are unsupported by facts and are speculative.

---

[12] In addition to asserting the innocent landowner defense for the first time in opposition to Defendants' motion, Tyco also fails to raise a triable issue of material fact. The only evidence offered by Tyco is the deposition testimony of Paul Cook, Raychem's founder and corporate designee, that he had no personal knowledge that "PCBs had been used in the manufacturing operations that had been conducted at the site during that time between Sequoia's operations and 1973 when Raychem acquired the site." Declaration of Jeffrey M. Curtiss, Ex. A (Deposition of Paul Cook) at 65:8-13. This is insufficient to demonstrate that no one at Raychem or Tyco knew of the contamination at the time Raychem acquired the Site.

Dr. Sabadell opines that the likely source of PCB soil contamination detected along the railroad spur behind the Site is the railroad or other users of the rail spur, not a release by Rowe's predecessors.  In addition, he concludes the area of highest contamination is located off-site and that it is unlikely that the PCB-containing materials were delivered to Hill Industries by railway car.  This testimony is highly relevant as to *when* and *how* the release of PCBs on the Site took place.  Contrary to Tyco's argument, Dr. Sabadell's opinion is supported by historical information, environmental data from the Site and a review of aerial images from 1969 and 1972.  Declaration of Mordecai Boone in Support of Rowe Opposition to Tyco's Motion for Summary Adjudication ("Boone Decl."), Ex. A (Gabriel Sabadell) ¶ 6 (describing aerial photographs from 1969 and 1972 indicating a staining pattern north of the site within the railroad right-of way, indicating that the most common contamination found along rail corridors is residual contamination from railroad operations, and explaining that the PCB concentrations are not consistent with a release from a transformer); *see Boone Decl.,* Ex. A at Ex. C (list of documents Sabadell reviewed); *see also* Boone Decl., Ex. A at Ex. D (Aerial photo of the Site Sabadell relied upon).  Tyco attacks many of Dr. Sabadell's conclusions as based upon general propositions rather than specific facts related to the Site in dispute, as well as claiming that the opinions are disingenuous and "riddled with false assumptions and fallacies."  Reply to Motion to Strike at 10.  Such attacks go to the credibility and weight of the opinions, not their admissibility.

Finally, in section C of paragraph six of his declaration, Dr. Sabadell purports to interpret and rely upon Monsanto's shipping records.  Dr. Sabadell does not explain how or why he is qualified to interpret or draw conclusions from these shipping records, and this aspect of his opinion thus appears to be beyond his expertise.  Accordingly, the Court will grant Tyco's motion to strike as it applies to section C of paragraph six of Dr. Sabadell's declaration, but otherwise will deny the motion.

Dr. Richter's opinions are based upon a review of relevant environmental data, including "the prior investigation reports regarding the Bay Road site performed by Tyco Thermal's environmental consultants (GRA Associates, Earth Tech Inc. and AMEC Geometrix) and the

19

1   results of all soil and groundwater sampling conducted on the property as set forth in those

2   reports."  Boone Decl., Ex. C (Declaration of Richard Ricther) ¶ 3.  However, while there is a

3   factual basis for his conclusions, Dr. Richter's general opinion – that "there is insufficient

4   evidence to support the claim that PCB and VOC contamination which is the subject of the

5   proposed remedial work is most probably attributable to Hill's prior manufacturing operations on

6   the property," *id.* ¶ 5 – is an inadmissible legal conclusion. In addition, Dr. Richter also purports

7   to interpret the Monsanto shipping records.  This opinion appears to lie outside Dr. Richter's area

8   of expertise.  Dr. Richter also observes that PCB and VOC contamination is located almost

9   entirely along the former rail line at the rear of the property and not near the structures where the

10  transformer manufacturing operations would have taken place or the location of the former above

11  ground storage tanks on the property.  *Id.*  This observation is within Dr. Richter's expertise and

12  is relevant for the same reasons as Dr. Sabadell's identical conclusion – it supports Rowe's

13  position that an entity other than Hill Industries may be responsible for the release of PCBs on

14  the Site.  Accordingly, Tyco's motion to strike will be granted as to Dr. Richter's legal

15  conclusion and his testimony in reliance on the Monsanto records, but otherwise will be denied.

16                              **VII.  ORDER**

17       Good cause therefore appearing:

18           1. Tyco's motion for leave to amend is DENIED;

19           2. Rowe's motion to strike the declaration of Deborah Belleau is GRANTED;

20           3. Tyco's motion for extended discovery is GRANTED as limited by this order;

21           4. Rowe's motion for partial summary judgment based on lack of pre-suit

22       CERCLA notice is DENIED;

23           5. Defendants' motion for partial summary judgment that Tyco is a Potentially

24       Responsible Party under CERCLA is GRANTED; and

25           6. Tyco's motion to strike the declarations of Gabriel Sabadell and Richard

26       Richter is GRANTED IN PART and DENIED IN PART as set forth above.

27

28

Case No. CV 06-07164 JF (PVT)
ORDER RE PENDING MOTIONS
(JFLC1)

1   IT IS SO ORDERED.

2   DATED: 4/15/2010

3

4                                            _____
                                             JEREMY FOGEL
5                                            United States District Judge__

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV 06-07164 JF (PVT)
ORDER RE PENDING MOTIONS
(JFLC1)