1 | GLENN FRIEDMAN, SBN 10442
2 | PAUL DESROCHERS, SBN 214855
  | ROBERT A. FARRELL, SBN 107461
3 | **LEWIS BRISBOIS BISGAARD & SMITH LLP**
  | One Sansome St., Suite 1400
  | San Francisco, CA   94104
4 | Tel:    415.362.2580
  | Fax:   415.434.0882
5 |
6 | Attorneys for Defendants, Cross-Defendants and
  | Cross-Claimants CARLISLE COMPANIES INC.,
7 | CARLISLE CORPORATION and TENSOLITE
  | COMPANY (sued erroneously herein as
8 | TENSOLITE INSULATED WIRE PACIFIC
  | DIVISION, INC.) and TENSOLITE INSULATED
  | WIRE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TYCO THERMAL CONTROLS, LLC,<br><br>            Plaintiff,<br><br>v.<br><br>REDWOOD INDUSTRIALS, *et al.*,<br><br>            Defendants.<br><br>AND RELATED COUNTER AND CROSS-ACTIONS. | CASE NO. C 06 07164 JF RS<br><br>**NOTICE OF MOTION BY THE CARLISLE DEFENDANTS FOR ORDER APPROVING SETTLEMENT, BARRING CONTRIBUTION AND INDEMNITY CLAIMS PURSUANT TO THE UNIFORM COMPARATIVE FAULT ACT AND DETERMINING GOOD FAITH OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   06/25/10<br>Time:  9:00am<br>Dept.:  Courtroom 3<br>        Judge Hon. Jeremy Fogel presiding<br><br>Trial Date: TBD<br>Action Filed: 11/17/06 |

4820-0734-0294.1

CARLISLE DEFS' NOTICE & MPAS ISO MOTION FOR ORDER APPROVING SETTLEMENT

**TABLE OF CONTENTS**

**PAGE**

NOTICE OF MOTION .................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 1

I.   INTRODUCTION .............................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ............................ 2

    A.   Site Background .......................................................... 3

    B.   Carlisle Settlement ....................................................... 5

III. ARGUMENT .................................................................. 6

    A.   The Court Has Authority In Private Party Cost Recovery Actions Under CERCLA To Approve Settlements And Bar Contribution And Indemnity Claims Against Settling Defendants To Facilitate Such Settlements ............... 6

    B.   Approval And Confirmation Of The Carlisle Settlement With TYCO THERMAL Is Warranted Under The Uniform Comparative Fault Act ............ 7

    C.   CARLISLE's Settlement With TYCO THERMAL Is Fair And Reasonable In Light Of CARLISLE's Equitable Share Of Responsibility For The Alleged Environmental Contamination At The Site ............................................. 8

    D.   The UCFA Proportionate Share Method Bars Both Federal And State Contribution And Indemnity Claims ................................................ 9

    E.   The UCFA Eliminates The Need For A Fairness Or Good Faith Hearing .......... 10

    F.   The Settlement Between Carlisle And Tyco Thermal Constitutes A "Good Faith" Settlement Within The Meaning Of California Code Of Civil Procedure Section 877.6 ............................................................ 11

IV.  CONCLUSION ............................................................... 13

# TABLE OF AUTHORITIES

**PAGE**

**FEDERAL**

*Acme Fill Corp. v. Althin CD Medical, Inc.*
(N.D. Cal. 1995) 1995 U. S. Dist. LEXIS 23308 .................................. 6, 7, 10

*Adobe Lumber, Inc. v. Hellman, et al*
(E.D. Cal. 2009) 2009 U. S. Dist. LEXIS 10569 .................................. 6, 7

*Allied Corp. v. Frola*
(D. N.J., 1993) 1993 U.S. Dist. LEXIS 13343 .................................. 10

*American Cyanamid Co. v. Capuano*
(1st Cir., 2004) 381 F. 2nd 6 .................................. 6

*Barton Solvents Inc. v. Southwest Petro-Chem, Inc.*
(D. Kan 1993) 834 F. Supp. 342 .................................. 6, 10

*Comerica Bank-Detroit v. Allen Industries, Inc.*
(E.D. Mich 1991) 769 F. Supp. 1408 .................................. 6, 8, 10

*Commander Oil Corp. v. Barlo Equipment Corp.*
(2nd Cir., 2000) 215 F. 3rd 321 .................................. 9

*Franklin v. Kaypro Corp.*
(9th Cir., 1989) 884 F. 2nd 1222 .................................. 6

*Hillsborough County v. A&E Road Oiling Service, Inc.,*
(M.D. Fla. 1984) 853 F. Supp. 1408 .................................. 10

*In Re Heritage Bond Litigation*
(9th Cir., 2008) 546 F. 3rd 667 .................................. 6

*McDermott v. AmClyde*
(1994) 511 U.S. 202, 114 S. Ct. 1461, 128 L. Ed. 148 .................................. 6

*Patterson Env. Response Trust, et al v. Autocare, Inc.*
(E.D. Cal. 2002) 2002 U. S. Dist. LEXIS 28323 .................................. 6

*Tosco Corp. v. Koch Industries, Inc.*
(10th Cir., 2000) 216 F. 3rd 886 .................................. 7

*Tyco Thermal Controls, Inc. v. Rowe Industries, Inc.*
U.S. District Court Action No. C10-01606EMC .................................. 3

*United States v. Western Processing Co.*
(W.D. Wash. 1990) 756 F. Supp. 1424 .................................. 7, 8

*Waste Management of Alameda County Inc. v. East Bay Regional Park District*
( N.D. Calif 2001) 135 F. Supp. 2nd 1071 .................................. 7

**STATE**

*Bay Development Ltd. v. Superior Court*
    (1990) 50 Cal.3rd 1012 .................................................. 12

*Far West Financial Corporation v. D&S Company*
    (1988) 46 Cal.3d 796 .................................................... 13

*Fisher v. Superior Court*
    (1980) 103 Cal.App.3rd 434 ............................................ 11

*Stambaugh v. Superior Court*
    (1977) 62 Cal.App.3d 231 .............................................. 13

*Tech-Bilt, Inc. v. Woodward-Clyde & Associates*
    (1985) 38 Cal.3d 488 ............................................... 11, 12

**STATUTES (*Federal*)**

28 U.S.C. §2201 ........................................................... 2

42 U.S.C. §6901 ......................................................... 1, 2

42 U.S.C. §9601 ........................................................... 1

42 U.S.C. §9607 (CERCLA § 107) ............................................. 2

42 U.S.C. §9613 (CERCLA § 113) .......................................... 2, 10

42 U.S.C. §9613(f)(1) ...................................................... 6

42 U.S.C. §9613(f)(2) ...................................................... 7

12 U.L.A. 147 1996 ("UCFA") ............................................. 5, 6

UCFA §6 .................................................................. 7

**STATUTES (*State*)**

C.C.P. §1021.5 ............................................................ 2

C.C.P. §877.6 ................................................... 1, 2, 11, 12, 13

CH&S Code §25363 .......................................................... 2

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on June 25, 2010 at 9:00 a.m. in Courtroom Three of the United States District Court for the Northern District of California, San Jose Division, Defendants, Cross-Defendants and Cross-Claimants CARLISLE COMPANIES INC., CARLISLE CORPORATION and TENSOLITE COMPANY, sued erroneously herein as TENSOLITE INSULATED WIRE PACIFIC DIVISION, INC. and TENSOLITE INSULATED WIRE COMPANY (hereafter, collectively referred to as "CARLISLE") will move the Court for an Order confirming and approving the conditional settlement reached between CARLISLE and Plaintiff TYCO THERMAL CONTROLS, LLC (hereinafter "TYCO THERMAL") and barring any contribution or indemnity claims against CARLISLE by non-settling parties pursuant to the Uniform Comparative Fault Act and determining that the settlement is in good faith within the meaning of and in accordance with California Code of Civil Procedure Section 877.6.

CARLISLE's motion is based upon this Notice, the Memorandum of Points and Authorities in support of the Motion, the accompanying Declaration of Paul A. Desrochers in support of the Motion and such other and further evidence as may be presented at the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER APPROVING SETTLEMENT, BARRING CONTRIBUTION AND INDEMNITY CLAIMS AND DETERMINING GOOD FAITH OF SETTLEMENT

### I. INTRODUCTION

On November 17, 2006, TYCO THERMAL brought this action against Defendants ROLAND LAMPERT, AUDREY LAMPERT and REDWOOD INDUSTRIALS (hereafter, collectively referred to as "REDWOOD INDUSTRIALS"), CARLISLE; and COLEMAN CABLE & WIRE, PACIFIC TRANSFORMER COMPANY, HILL MAGNETICS, INC., HILL INDUSTRIES, INC. (alleged predecessors of defendant ROWE INDUSTRIES, hereafter, collectively referred to as "ROWE") seeking to recover costs associated with the investigation and clean-up of contaminated property located at 2201 Bay Road in Redwood City, California (hereafter "the Site) under provisions of the of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §9601, *et seq.* ("CERCLA"), the Resource Conservation and Recovery Act, 42 U.S.C. §6901 *et seq.* ("RCRA"); and California state law.

Following a January 26, 2010 mediation session before U.S. District Court mediator Daniel Bowling, CARLISLE entered into a settlement with TYCO THERMAL of any and all claims between them with respect to environmental contamination at the Site. The settlement is contingent on this Court issuing an Order finding the settlement to be in good faith and barring any and all contribution or indemnity claims against CARLISLE with respect to the subject matter of the litigation.

CARLISLE respectfully requests that this Court apply the strong public policy favoring the settlement of CERCLA cost recovery actions and issue an Order approving the settlement, finding that the settlement is in good faith for purposes of California Code of Civil Procedure section 877.6 and barring any and all contribution or indemnity claims against CARLISLE under any and all State, Federal, and local laws related to alleged environmental contamination at the Site.

## II. FACTUAL AND PROCEDURAL BACKGROUND

TYCO THERMAL commenced this action in late 2006 and filed a First Amended Complaint on January 15, 2007. In its First Amended Complaint, TYCO THERMAL contends that prior owners and/or tenants of the Site are liable for all costs associated with investigating and remediating Polychlorinated Biphenyl ("PCB") and other industrial chemical contamination at the Site because the contamination is allegedly attributable to operations conducted prior to the 1973 acquisition of the Site by TYCO THERMAL'S predecessor in interest, Raychem Corporation (hereafter "RAYCHEM").

TYCO THERMAL's First Amended Complaint set forth causes of action for contribution and cost recovery under Section 107 of CERCLA (42 U.S.C. §9607); contribution under Section 113 of CERCLA (42 U.S.C. §9613); declaratory relief under CERCLA and the Federal Declaratory Relief Act, 28 U.S.C. §2201, *et seq.*; for alleged violation of RCRA §6901, *et seq.* for contribution and indemnity under the California Hazardous Substances Account Act, California Health and Safety Code ("CH&S") section 25363, *et seq.* ("HSAA"); equitable indemnification under California law; Declaratory Relief under California law; and for attorney fees under California Code of Civil Procedure section 1021.5.

In late 2009, Defendants requested that TYCO THERMAL dismiss its RCRA claim because TYCO THERMAL had not provided timely pre-litigation notice of its intent to pursue a claim under RCRA as required by statute. TYCO THERMAL thereafter filed a motion for leave to file a Second Amended Complaint in which TYCO THERMAL's RCRA claim against all Defendants would be

1  dismissed without prejudice to TYCO THERMAL's right to re-assert the RCRA claim in a new action
2  and move to consolidate the new RCRA action with this action. TYCO THERMAL also sought leave
3  to assert new California state law claims for continuing nuisance and trespass against ROWE.

4        On December 14, 2009, the Court granted TYCO THERMAL's motion as to the withdrawal of
5  the RCRA claim against all Defendants and denied the motion to add continuing nuisance and trespass
6  claims against ROWE, leaving the First Amended Complaint (less the RCRA claim) as the operative
7  pleading in the action. TYCO THERMAL has since filed a new action asserting a RCRA claim against
8  ROWE only (*Tyco Thermal Controls, Inc. v. Rowe Industries, Inc.* U.S. District Court Action No. C10-
9  01606EMC) and the Court recently granted TYCO THERMAL's administrative motion to relate the
10 new RCRA action with the pending action.

11     **A.**    **Site Background**

12       The Site is located in a mixed industrial and commercial area near the intersection of Highway
13 101 and Woodside Road in Redwood City. The Site was developed in the1950s by co-defendants
14 REDWOOD INDUSTRIALS who owned the Site from the 1950s until the sale to RAYCHEM in 1973.
15 The Site initially consisted of 22,000 square feet of office and warehouse space with an outdoor loading
16 ramp and platform. Additional office and warehouse space was added in the ensuing years and the Site
17 currently consists of approximately 71,600 square feet of office and warehouse space. During its period
18 of ownership, REDWOOD INDUSTRIALS contends that it did not conduct any manufacturing or
19 business operations at the Site, instead leasing the Site to others.

20       From approximately 1955 to 1962, the Site was leased to SEQUOIA PROCESS
21 CORPORATION (hereafter, "SEQUOIA"), which reportedly used the Site to manufacture wire
22 products.[1] In 1962, the Site was leased to CARLISLE, which continued SEQUOIA's operations
23 manufacturing wire products on the premises until approximately mid-1963, when CARLISLE ceased
24 manufacturing operations at the Site. None of the wire manufacturing operations conducted at the Site
25 by SEQUOIA or CARLISLE involved the use of PCBs or PCB-containing products.

26       Although it did not use the Site for manufacturing purposes after mid-1963, CARLISLE
27 continued to lease the Site from REDWOOD INDUSTRIALS. Beginning in June, 1965, CARLISLE
28

---

[1]    SEQUOIA is a predecessor corporation to RAYCHEM.

sub-leased the Site to ROWE. Pursuant to the sub-lease, ROWE conducted manufacturing operations at the site from 1965 until approximately 1969. During a portion of this period, ROWE manufactured electric transformers at the Site and reportedly used and stored PCBs on the premises as part of its transformer manufacturing operations.

In approximately March 1973, REDWOOD INDUSTRIALS agreed to sell the Site to RAYCHEM. Under the terms of the Sales Agreement, RAYCHEM agreed to acquire the Site "as is". The Sales Agreement also provided that ROWE would pay RAYCHEM $90,000 (the equivalent of over $437,000 in current dollars) to compensate RAYCHEM "for such repair, modification and restoration of [the Site] as Raychem shall deem appropriate". Based on discovery and deposition testimony in this action, it does not appear that RAYCHEM conducted any assessment or investigation of environmental conditions at the Site prior to acquiring title to the property in the Fall of 1973.

From 1973 until RAYCHEM was acquired by TYCO THERMAL in approximately 1999, RAYCHEM used the Site to manufacture insulated wire, cable and pipe products, industrial process heaters and other electronic products. From 1999 until approximately 2008, TYCO THERMAL continued to use the Site to manufacture similar products. TYCO THERMAL contends that no PCBs or PCB-containing materials were used by RAYCHEM or TYCO THERMAL in their manufacturing operations at the Site between 1973 and 2008. Based on discovery and deposition testimony, however, it appears that RAYCHEM was aware that PCB contamination had been detected in soil located at the rear of the Site and in the vicinity of a rail spur on the neighboring property as early as the mid-1990s.

Beginning in approximately 2006, TYCO THERMAL undertook a voluntary investigation of contamination at the Site under the direction of the California Regional Water Quality Control Board (hereafter, "RWQCB"). Based on this investigation, TYCO THERMAL submitted a Feasibility Study ("FS") to the RWQCB in December 2008 (and an Addendum to the FS in September 2009) which addressed three potential remedial approaches – Alternative One (no action); Alternative Two (surface capping over areas of contaminated soil, institutional controls to manage future site use and groundwater monitoring); and Alternative Three (soil excavation and off-site disposal, monitored natural attenuation and groundwater monitoring). TYCO THERMAL's FS Addendum estimated that with annual operation and maintenance and groundwater monitoring expenses included, the total cost of

Alternatives Two and Three were **$1,677,000** and **$2,611,000** respectively. Defendants' environmental consultant responded to TYCO THERMAL's FS Addendum with a report which estimated that with more reasonable estimates for future operation, maintenance and groundwater monitoring expenses, the cost of Alternatives Two and Three would be **$647,266** and **$1,038,640** respectively.

The RWQCB approved TYCO THERMAL's proposed Remedial Action Plan ("RAP") for the Site (*i.e.*, Alternative Three) in October 2009. Since that time, TYCO THERMAL has conducted additional investigative activities at the Site and has expanded the scope of the proposed remedial work at the Site. The estimated cost of completing the proposed additional remedial work is not presently known.

### B. Carlisle Settlement

An initial mediation session was conducted in this action on January 26, 2010 before U.S. District Court mediator Daniel Bowling. Although TYCO THERMAL and CARLISLE did not reach a settlement during the initial mediation, subsequent negotiations (with the involvement of mediator Bowling) resulted in a conditional agreement between TYCO THERMAL and CARLISLE to resolve the claims against CARLISLE in the action. Under the terms of the proposed settlement, CARLISLE will pay TYCO THERMAL the sum of $150,000 in full and final settlement of TYCO THERMAL'S claims against CARLISLE in the action. The settlement is subject to the terms of a Settlement Agreement and Release of Claims between the parties, a copy of which is attached to the accompanying Declaration of Paul A. Desrochers as **Exhibit A.** The settlement is also conditioned on the Court issuing an Order finding that the Federal Uniform Comparative Fault Act (12 U.L.A. 147 1996, hereafter "UCFA") governs the evaluation of the fairness of the proposed settlement; that the settlement is fair and reasonable under the UCFA and is approved on that basis; and that any and all contribution or indemnity claims by or against CARLISLE under any provision of Federal, State or local law in connection with the subject matter of the litigation are barred.

///
///
///
///

III. ARGUMENT

    A.    **The Court Has Authority In Private Party Cost Recovery Actions Under CERCLA To Approve Settlements And Bar Contribution And Indemnity Claims Against Settling Defendants To Facilitate Such Settlements**

It is well established that Federal Courts may review settlements and issue orders that bar all claims for contribution or indemnity against settling defendants to facilitate settlement in multi-party litigation,. *Franklin v. Kaypro Corp.* (9th Cir., 1989) 884 F. 2nd 1222 at 1225; *In Re Heritage Bond Litigation* (9th Cir., 2008) 546 F. 3rd 667 at 677. It is also well established that there is a strong federal interest in settling complex environmental clean-up actions under CERCLA and that to facilitate the early and complete settlement of CERCLA private party cost recovery actions, " . . . courts have used their settlement-approval authority together with their ability to impose broad contribution bars to allow settling defendants to free themselves from the litigation." *Acme Fill Corp. v. Althin CD Medical, Inc.* (N.D. Cal. 1995) 1995 U. S. Dist. LEXIS 23308; *Comerica Bank-Detroit v. Allen Industries, Inc.* (E.D. Mich 1991) 769 F. Supp. 1408 at 1414-1416; *Barton Solvents Inc. v. Southwest Petro-Chem, Inc.* (D. Kan 1993) 834 F. Supp. 342 at 345.

In general, when a plaintiff settles with one of several joint tortfeasors, the non-settling defendants are entitled to a credit for the partial settlement against their total liability. *McDermott v. AmClyde* (1994) 511 U.S. 202 at 216-217, 114 S. Ct. 1461, 128 L. Ed. 148. The Courts have adopted two principal methods for applying settlement credit against a plaintiff's eventual recovery – pro tanto (dollar for dollar), under which the liability of the non-settling defendants is reduced by the amount of the settlement, and proportionate share, under which the non-settling defendants' liability is reduced by the equitable share of the settling parties' obligation. *American Cyanamid Co. v. Capuano* (1st Cir., 2004) 381 F. 2nd 6 at 20; *Adobe Lumber, Inc. v. Hellman, et al* (E.D. Cal. 2009) 2009 U. S. Dist. LEXIS 10569.

The proportionate share method, which is embodied in the UCFA, provides for an equitable allocation of liability based on relative fault. In the CERCLA context, a PRP's equitable share consists of the portion of response costs allocated to that party by the court using such equitable factors as the Court deems appropriate. 42 U.S.C. Section 9613(f)(1); *Adobe Lumber, Inc. v. Hellman, et al* (E.D. Cal. 2009) 2009 U. S. Dist LEXIS 10569 at Fn. 1; *Patterson Env. Response Trust, et al v. Autocare, Inc.*

(E.D. Cal. 2002) 2002 U. S. Dist. LEXIS 28323; *Waste Management of Alameda County Inc. v. East Bay Regional Park District* ( N.D. Calif 2001) 135 F. Supp. 2nd 1071. Contribution is an equitable remedy and the legislative history of CERCLA makes clear that Courts have an obligation to apportion responsibility fairly and equitably. *United States v. Western Processing Co.* (W.D. Wash. 1990) 756 F. Supp. 1424 at 1426.

In the context of Governmental cost recovery actions, CERCLA provides an apportionment methodology, *i.e.*, non-settling parties are entitled to a pro tanto (dollar for dollar) reduction in liability for any amounts paid in settlement. 42 U.S.C. Section 9613(f)(2). In contrast, CERCLA does not specifically address how settlements in private party cost recovery actions should be apportioned or evaluated for fairness and the Ninth Circuit has not issued a decision directly addressing the issue. However, District Court judges in the Ninth Circuit have uniformly applied the UFCA proportionate share approach to evaluate settlements between private PRPs and District Courts nationally have widely adopted the UFCA proportionate share method for settlements in CERCLA private party cost recovery actions. *Adobe Lumber, Inc. v. Hellman et al* (E.D. Cal. 2009) 2009 U. S. Dist LEXIS 10569, *supra*; *Acme Fill Corp. v. Althin CD Medical, Inc.* (N.D. Cal. 1995) 1995 U. S. Dist. LEXIS 23308; *Tosco Corp. v. Koch Industries, Inc.* (10th Cir., 2000) 216 F. 3rd 886 at 897.

**B.     Approval And Confirmation Of The Carlisle Settlement With TYCO THERMAL Is Warranted Under The Uniform Comparative Fault Act**

The UCFA protects the interests of non-settling defendants because under the proportionate share approach, the plaintiff rather than the non-settling defendants bears the risk if the amount of the partial settlement proves to be inadequate (*i.e.*, less than the settling defendants' equitable share of liability as determined at trial). UCFA §6 provides in pertinent part:

> A release, covenant not to sue, or similar agreement entered into between a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other person liable upon the same claim unless it so provides. ***However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation.*** (Emphasis added)

Under the UCFA, the plaintiff's recovery, if any, is reduced by the settling defendants' proportionate fault as determined at trial, not by the settlement amount. *United States v. Western Processing Co., supra*, at 1430. "[T]he rule protects non-settling defendants by assuring that their

1  liability will reflect only their responsibility for the clean-up costs, regardless of the amount the settling
2  defendant tendered to the plaintiff . . . Under the Uniform Act, then, the [plaintiff] bears the risk that the
3  ultimate liability of the settling defendant may exceed the settlement amount." *Comerica Bank-Detroit,*
4  *supra*, at 1414.

The advantages of the proportionate rule approach have been stated as follows:

(1) [The UCFA] provides for equitable apportionment of responsibility, and where there is a partial settlement, the judgment is reduced by the proportionate fault of the settling defendant who is then discharged;

(2) complex partial settlements involving multiple parties, claims, or theories are more easily resolved (without imprecision of allocation prior to trial by the court under the pro tanto theory);

(3) the need for a good faith hearing is eliminated as the proportionate credit is not based on the amount of the settlement; and

(4) total settlement is encouraged after partial settlement as a culpable nonsettlor cannot escape responsibility when a settling defendant pays more than his fair share and cannot gamble on a jury verdict in view of a guaranteed credit; this also serves to deter wrongful conduct.

*United States v. Western Processing Company, Inc., supra,* at 1430-31.

In this case, the interest of the non-settling defendant (ROWE) are fully protected if the UCFA proportionate share method is applied because TYCO THERMAL, not ROWE, will be responsible for any shortfall if CARLISLE's equitable share of liability as determined at trial exceeds the amount paid by CARLISLE in settlement. In that regard, an Order approving the settlement (and barring further contribution or indemnity claims against CARLISLE) promotes the well-established policy favoring settlements in CERCLA private cost recovery actions and allows CARLISLE to buy its peace in the litigation without prejudicing the rights of the non-settling defendant.

C. **CARLISLE's Settlement With TYCO THERMAL Is Fair And Reasonable In Light Of CARLISLE's Equitable Share Of Responsibility For The Alleged Environmental Contamination At The Site**

Based on the facts developed in discovery in this action, CARLISLE submits that its equitable share of responsibility for the alleged contamination at the Site is minimal at best.. There is no dispute that CARLISLE's only manufacturing operations at the Site occurred for a period of approximately 18 months in 1962-1963 and did not involve the use of PCBs. It is also undisputed that after 1963, CARLISLE's sole connection to the Site is the fact that it continued to lease the Property from

1  REDWOOD INDUSTRIALS and sub-leased the Site to ROWE (with REDWOOD INDUSTRIAL's
2  approval) during the period of 1965-1969. The sole basis asserted by TYCO THERMAL for
3  CARLISLE's alleged liability under CERCLA is its status as the master lessor of the Site during the
4  period that ROWE was using and storing PCBs on the premises as part of its manufacturing operations.
5  While TYCO THERMAL asserts that CARLISLE's status as the purported master lessor makes it a "de
6  facto" owner of the Site for purposes of CERCLA liability, CARLISLE submits that there is no
7  evidence to establish that CARLISLE exercised anything close to the type of control over,
8  or involvement in, ROWE's operations at the Site necessary to find CARLISLE liable as a "de facto"
9  owner under CERCLA.[2] In that regard, there is a very serious question as to whether CARLISLE is
10 even subject to CERCLA's liability for the alleged PCB contamination at the Site.

11 The $150,000 which CARLISLE has agreed to pay in full and final settlement of this litigation
12 is fair, reasonable and reflects an equitable allocation of CARLISLE's potential liability in the action
13 given the fact that CARLISLE had no role whatsoever in the manufacturing operations at the Site which
14 allegedly caused the PCB contamination and the absence of any evidence to substantiate that
15 CARLISLE acted as a "de facto" owner of the Site for purposes of CERCLA liability. Accordingly, an
16 Order approving the settlement between CARLISLE and TYCO THERMAL (and barring further
17 contribution or indemnity claims against CARLISLE) is fully consistent with the Court's obligation to
18 fairly and equitably allocate liability and evaluate settlements in CERCLA's cost recovery actions.

### D. The UCFA Proportionate Share Method Bars Both Federal And State Contribution And Indemnity Claims

21 CARLISLE's goal of fully and completely resolving its involvement in this litigation can only
22 be served by a bar against both federal and state contribution and indemnity claims that might be made
23 by non-settling defendants or other parties. Without such a bar against both state and federal claims

---

[2] The issue of CARLISE's status as an "owner" for purposes of CERCLA liability was before the Court in TYCO THERMAL's motion for summary adjudication against REDWOOD INDUSTRIALS and CARLISLE (Document Nos. 108 and 109 on the Court Docket), but was not decided as a result of the pending settlement between the parties. However, as set forth in CARLISLE's Opposition to TYCO THERMAL's motion for summary adjudication (Document No. 116 on Court Docket) at 3:11 to 8:7, none of the factors listed in *Commander Oil Corp. v. Barlo Equipment Corp.* (2nd Cir., 2000) 215 F. 3rd 321 for determining when a master lessor may be subject to "owner" liability under CERCLA are present in this case.

arising out of the facts, circumstances and subject matter at issue, the finality offered by the Settlement Agreement would be elusive at best. Without a broad contribution bar in place, any non-settling defendant could pursue state law claims for contribution and indemnity following a determination of the non-settling defendant's share of liability, or upon their entering a subsequent settlement with TYCO THERMAL. Because such a result would be a disincentive to settlement and would contravene the strong federal policy of encouraging settlement in complex CERCLA matters, courts, "have held that the contribution protection accorded to defendants settling their liability under CERCLA discharges related claims made under state law". *Hillsborough County v. A&E Road Oiling Service, Inc.*, (M.D. Fla. 1984) 853 F. Supp. 1408 (dismissing all cross-claims against settling defendants); see also, *Acme Fill Corp. v. Althin CD Medical, Inc.* (N.D. Cal. 1995) 1995 U. S. Dist. LEXIS 23308 (failure to dismiss state claims frustrates CERCLA's basic policy of encouraging early settlements). *Allied Corp. v. Frola* (D. N.J., 1993) 1993 U.S. Dist. LEXIS 13343 (contribution bar effected by Section 113 of CERCLA applies to equitable state law indemnification claims not based on express contract because such claims would constitute an end run around CERCLA's contribution bar). Accordingly, in addition to barring all CERCLA's claims, the Court should issue an Order barring all other federal and state law claims for equitable contribution or indemnity against CARLISLE.

### E. The UCFA Eliminates The Need For A Fairness Or Good Faith Hearing

"One of the most important advantages to using the UCFA approach is that it does not require a fairness hearing." *Barton Solvents Inc. v Southwest Petro-Chem, Inc.* (D. Kan 1993) 834 F. Supp. 342 at 349; see *Comerica Bank-Detroit v Allen Industries, Inc.* (E.D. Mich 1991) 769 F. Supp. 1408 at 1411 (requiring evidentiary fairness hearing raises specter of "mini trials" and uncertainty of outcomes, thereby discouraging rather than encouraging settlement consistent with CERCLA policy); *Acme Fill Corp. v Althin CD Medical, Inc.* (N.D. Cal. 1995) 1995 U. S. Dist. LEXIS 23308 (fairness hearing would require additional discovery and evidentiary hearing, thereby opening Pandora's Box and defeating incentive for early settlement).

Here, the "fairness" of the settlement between CARLISLE and TYCO THERMAL cannot be seriously questioned. As discussed above, the settlement is the result of arms-length negotiation between the parties and thus reflects the fact that TYCO THERMAL, with full knowledge of the

evidence regarding the cause of the PCB contamination at the Site and the cost of investigating and remediating the contamination, agreed to accept $150,000 as compensation for CARLISLE's equitable share of TYCO THERMAL's claimed damages. Moreover, given the fact that there is a significant question as to whether CARLISLE is even subject to liability for the PCB contamination under CERCLA and that the rights of the non-settling defendant (ROWE) are fully protected under the UCFA proportionate share approach, CARLISLE's settlement with TYCO THERMAL is eminently fair and reasonable.

### F. The Settlement Between Carlisle And Tyco Thermal Constitutes A "Good Faith" Settlement Within The Meaning Of California Code Of Civil Procedure Section 877.6

California has long favored settlement as an alternative to litigation in resolving disputes. *Fisher v. Superior Court* (1980) 103 Cal.App.3rd 434 at 447. In furtherance of this goal and to provide a degree of certainty to settlements in multi-party litigation, the California legislature adopted Code of Civil Procedure section 877.6, which provides in pertinent part:

(a) Any party to an action in which it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors . . . .

(b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counter-affidavits filed in response, or the court may, in its discretion, seek other evidence at the hearing.

(c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor . . . from any further claims against the settling tortfeasor . . . for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

(d) The party asserting the lack of good faith shall have the burden of proof on that issue.

In *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, the California Supreme Court set forth guidelines in order to determine the "good faith" of a settlement. Recognizing the Legislature's desire to promote settlement and to assure the finality of those settlements, the Court fashioned a "reasonable range" test to be utilized in determining when a settlement is made in good faith. The factors taken into account in determining the good faith of a settlement include the following: (1) a rough approximation of plaintiff's total recovery and the settler's proportion of liability; (2) the

amount paid in settlement; (3) the allocation of the settlement amongst the plaintiffs; (4) recognition of the concept that a defendant should pay less in settlement than if it had been found liable at trial; (5) the defendant's financial condition and insurance policies available to the defendant; and (6) the existence, or lack thereof, of collusion, fraud or tortuous conduct aimed to injure the interests of the non-settling defendants. (*Id.* at 499.) The *Tech Bilt* decision also makes clear that a party contesting a motion for good faith settlement determination has the burden to prove that the proposed settlement is so far "out of the ballpark" that it is inconsistent with the equitable objectives of the statute. *Id.* at 499-500. In that regard, the fact that the settling defendant may have paid something less than its perceived "fair share" does not establish that the settlement is in bad faith – all that is necessary for a settlement to be in good faith is a "rough approximation" between the between the settling defendants' payment and its proportionate liability. *Id.* at 499; *Bay Development Ltd. v. Superior Court* (1990) 50 Cal.3rd 1012 at 1027-1028.

Based upon the *Tech Bilt* factors, CARLISLE submits that its settlement with TYCO THERMAL constitutes a good faith settlement within the meaning of Code of Civil Procedure §877.6. As discussed above, the parties participated in a mediation session with District Court mediator Dan Bowling in which all parties exchanged their respective positions on liability and damages. Accordingly, the settlement between CARLISLE and TYCO THERMAL was the result of arms-length negotiations and was not the product of fraud or collusion. Further, and importantly, the amount of CARLISLE's settlement payment ($150,000) is fully commensurate with its alleged responsibility for PCB contamination at the Site given the fact that CARLISLE did not use or store PCBs at the Site during its limited manufacturing operations on the premises; that CARLISLE had no involvement in or control over the activities of the sub-leasee (ROWE) which allegedly caused the PCB contamination; and that there is a significant issue as to whether CARLISLE, in its capacity as the master lessor, is even subject to liability as an "owner" under CERCLA.

California case law has established that if a defendant settles a claim against it prior to an official determination of liability and obtains a finding from the Court that the settlement was in good faith within the meaning of Code of Civil Procedure section 877.6, the settling defendant is discharged from any further obligations to the claimant and the non-settling defendants, including any present or

future claims for equitable indemnity or contribution. *Stambaugh v. Superior Court* (1977) 62 Cal.App.3d 231; *Far West Financial Corporation v. D&S Company* (1988) 46 Cal.3d 796 at 805. In that regard, a "good faith" settlement determination under Code of Civil Procedure section 877.6 is entirely consistent with the provisions of the UCFA and the Federal policy of resolving CERCLA cost recovery claims on a fair and equitable basis. CARLISLE thus requests that this Court include in its Order a finding that the settlement between CARLISLE and TYCO THERMAL is in "good faith" within the meaning of California Code of Civil Procedure section 877.6.

## IV. CONCLUSION

Based on the foregoing, CARLISLE respectfully request that this Court confirm and approve the settlement entered into between CARLISLE and TYCO THERMAL pursuant to the UCFA and enter an Order dismissing any and all pending or yet to be filed complaints, counterclaims and cross-complaints against CARLISLE and barring any and all contribution and indemnity claims against CARLISLE, whether based on Federal, State or local law, related to the subject matter of this litigation. In addition, CARLISLE respectfully request that the Court find the settlement between CARLISLE and TYCO THERMAL to have been made in good faith pursuant to California Code of Civil Procedure section 877.6 and that all equitable indemnity and contribution claims by any non-settling parties are barred.

Dated: May 21, 2010                LEWIS BRISBOIS BISGAARD & SMITH LLP


By: ____/S/ Paul A. Desrochers_____
GLENN FRIEDMAN PAUL A. DESROCHERS
ROBERT A. FARRELL, Counsel for Defendants, Cross-Defendants and Cross-Claimants CARLISLE COMPANIES INC., CARLISLE CORPORATION and TENSOLITE COMPANY (sued erroneously herein as TENSOLITE INSULATED WIRE PACIFIC DIVISION, INC. and TENSOLITE INSULATED WIRE COMPANY)