1

2          **E-Filed 8/12/2010**

3

4

5

6

7

8

9            **IN THE UNITED STATES DISTRICT COURT**

10         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN JOSE DIVISION**

12  TYCO THERMAL CONTROLS LLC,              Case Number C 06-07164 JF (PVT)

13         Plaintiff,

           v.                              **ORDER[1] GRANTING MOTIONS
14                                          FOR APPROVAL OF
    REDWOOD INDUSTRIALS, et al.,           SETTLEMENT AND TO DISMISS**
15
           Defendants.                     Re: Docket Nos. 184, 190
16
    ROWE INDUSTRIES, INC.,
17
           Counter-Claimant,
18
           v.
19
    TYCO THERMAL CONTROLS, LLC,
20
           Counter-Defendant.
21
    _____
22  TYCO THERMAL CONTROLS LLC,             Related Case No. C 10-01606 JF (PVT)

23         Plaintiff,                      Re: Docket No. 6

24         v.

25  ROWE INDUSTRIES, INC.,

26         Defendant.

27  _____

28       [1] This disposition is not designated for publication in the official reports.

    Case No. CV 06-07164 JF (PVT)
    Related Case No. C 10-01606 JF (PVT)
    ORDER GRANTING MOTIONS FOR APPROVAL OF SETTLEMENT AND TO DISMISS
    (JFLC1)

1

2

## I. MOTIONS FOR APPROVAL OF SETTLEMENT

3

### A. Background

4

The instant actions concern remediation at a contaminated property located at 2201 Bay

5

Road in Redwood City, California ("the Property").  On November 17, 2006 Plaintiff Tyco

6

Thermal Controls, LLC ("Plaintiff") filed Case No. 06-7164 against Defendants Redwood

7

Industrials, Roland Lampert, Audrey Lampert, Laverne E. Doolittle, Deceased, Emile K.

8

Doolittle, Deceased, Masha Lampert, Deceased, Morris M. Grupp, Deceased, and Anna M.

9

Grupp, Deceased (collectively, "Redwood"), Carlisle Companies Inc., Carlisle Corporation and

10

Tensolite Company, sued erroneously as Tensolite Insulated Wire Pacific Division, Inc. and

11

Tensolite Insulated Wire Company, (collectively, "Carlisle"), and Coleman Cable & Wire,

12

Pacific Transformer Company, Hill Magnetics, Inc., and Hill Industries, Inc., predecessors in

13

interest of Defendant Rowe Industries, Inc. ("Rowe").  The initial complaint sought recovery of

14

costs associated with investigation and clean-up, contribution, and declaratory relief pursuant to

15

the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as

16

amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601, et

17

seq. ("CERCLA"), the Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901,

18

et seq., 6972; the Declaratory Relief Act, 28 U.S.C. § 2201, and California state law.

19

On January 15, 2007, Plaintiff filed its first amended complaint ("FAC") adding Rowe as

20

a defendant and alleging eight claims for relief: (1) recovery of response costs under CERCLA,

21

§§ 107(a)(1-4)(B), 42 U.S.C. § 9607(a); (2) contribution under CERCLA § 113(f), 42 U.S.C. §

22

9613(f)(1); (3) relief under RCRA, 42 U.S.C. §§ 6901, et seq., 6972; (4) declaratory relief under

23

federal law; (5) response costs under the Hazardous Substance Account Act ("HSSA"), Cal.

24

Health & Safety Code § 25300, et seq.; (6) comparative equitable indemnity under state law; (7)

25

declaratory relief under state law; and (8) attorney's fees under Cal. Civ. P. § 1021.5.  On October

26

29, 2009, Plaintiff moved for leave to file a second amended complaint ("SAC") adding claims

27

against Rowe under California law for continuing nuisance and continuing trespass and

28

1   dismissing without prejudice its claim for relief under RCRA based upon its failure to comply

2   with RCRA's pre-suit notice requirement.  On December 14, 2009, the Court granted Plaintiff's

3   motion to withdraw the RCRA claim without prejudice and determined that Plaintiff's first

4   amended complaint ("FAC"), absent the RCRA claim, would remain the operative pleading.[2]

5        On March 2, 2010, Plaintiff again moved to amend its pleading to allege a RCRA claim

6   against Rowe.  The Court denied that motion, concluding that the proposed amendment would

7   not cure Plaintiff's failure to comply with RCRA's jurisdictional notice requirement.  On April

8   14, 2010, Plaintiff filed Case No. 10-1606, alleging the RCRA claim that is the subject of the

9   motion to dismiss discussed below.  *See infra,* II.  On May 4, 2010, the Court related Case No.

10  06-7164 and Case No. 10-1606.  Defendants have filed counterclaims against Plaintiff and cross-

11  claims against each other for contribution and pursuant to the common-law doctrine of equitable

12  indemnity.

13       Plaintiff alleges that the Defendants are responsible for the release of polychlorinated

14  biphenyls ("PCBs") which have been identified in the soil at and adjacent to the Property.

15  Plaintiff has submitted reports concerning its investigation of the Property and a proposal for

16  remediation of the contamination to the Regional Water Quality Control Board.  These

17  documents contain cost estimates for remediation ranging from $363,000 to $1,638,000, not

18  including the cost of ongoing monitoring.  Declaration of Margaret K. Peischl in Support of

19  Motion for Partial Summary Judgment, Ex. F (Draft Remedial Action Plan).  This range reflects

20  two alternative remediation plans.  The estimated capital cost for soil capping (Alternative 2) is

21  $363,000.  *Id.*  The estimated cost for soil excavation and off-site disposal (Alternative 3) is

22  $1.635 million.  *Id.*  Regardless of which alternative is selected, Plaintiff has estimated the

23  monitoring costs to be $778,141, exclusive of contingencies.  The total cost estimate for

24  Alternative 2 is $1,677,000 and for Alternative 3 is $2,611,000.  Defendants have proposed a

25  variant to Plaintiff's capping alternative with a lower cost estimate and lower monitoring costs.

26  _____

27       [2]  The motion was denied with respect to Plaintiff's proposed nuisance and trespass
    claims.  Dkt. No. 101 at 6.

28

3

**B. The Settlement Agreements**

In December 2009 and January 2010, Plaintiff and Redwood participated in mediation sessions with a court-appointed mediator, Daniel Bowling.  Declaration of Margaret R. Dollbaum in Support of Redwood's Motion ("Dollbaum Decl.") ¶ 2.  The parties entered into a settlement agreement that recognizes the following: (1) Plaintiff has entered into an arrangement with the Regional Water Quality Control Board to remediate contamination at the Property pursuant to a voluntary agreement; (2) Redwood will make a payment of $275,000 that Plaintiff may use toward the costs of remediation; this sum represents more than seventy-five percent of Plaintiff's estimated capital cost for Alternative 2 and approximately seventeen percent of the cost of Alternative 3; (3) the settlement is contingent upon approval by this Court, including entry of a final order barring contribution claims against Redwood under the Uniform Comparative Fault Act ("UCFA"), 12 U.L.A. 147 1996, and confirming that the settlement is in good faith pursuant to Cal. Civ. P. §§ 877 and 877.6; and (4) Plaintiff will dismiss its claims against Redwood and will provide Redwood with a release from any claim arising from or related to the action. Dollbaum Decl., Ex. A ("Redwood-Tyco Settlement Agreement").

On January 26, 2010, following a separate mediation session with Mr. Bowling, Plaintiff and Carlisle also entered a settlement agreement.  Carlisle's Motion at 5.  Under the terms of the proposed settlement, Carlisle will pay Plaintiff the sum of $150,000 in exchange for a release of Plaintiff's claims against Carlisle.  Declaration of Paul A. Desrochers, Ex. A ("Carlisle-Tyco Settlement Agreement").  The settlement is conditioned on a judicial determination that the settlement in is in good faith pursuant to Cal. Civ. P. §§ 877 and 877.6 and on a contribution bar pursuant to the UCFA.  *Id.*

On April 23, 2010, Redwood moved for an order approving its settlement with Plaintiff, barring contribution claims, indemnity, and other claims pursuant to CERCLA and the UCFA, and determining that the settlement is in good faith pursuant to Cal. Civ. P. § 877.6.  On May 21, 2010, Carlisle moved for a similar order approving its settlement with Plaintiff.  On June 4, 2010, non-settling defendant Rowe filed "conditional non-opposition" to both motions.  Rowe

4

conditioned its non-opposition upon a determination by the Court that the protections afforded to non-settling defendants by the UCFA apply not only to the instant action but also to Plaintiff's separate but related RCRA action. Rowe contends that such a determination will ensure that there will be an appropriate apportionment of liability between itself and other potentially responsible parties in the RCRA action, including the settling defendants.

On June 10, 2010, Carlisle and Redwood filed replies to Rowe's conditional non-opposition papers expressing their agreement with Rowe's position that the UCFA should apply to Plaintiff's RCRA action against Rowe. The next day, Plaintiff filed a reply brief opposing application of the UCFA to the RCRA action. In addition to contending that no right to contribution exists under RCRA, Plaintiff also expressed disagreement with the assertions by Redwood and Carlisle that the UCFA sets forth the appropriate method for apportioning liability with respect to Plaintiff's CERCLA claims. Plaintiff contends instead that the Court should adopt the pro tanto method for apportioning liability. Upon learning of Plaintiff's position, Rowe sought leave to file unconditional opposition to the motions for approval of settlement. The Court, recognizing that Plaintiff's position on apportionment was not evident before the filing of the June 11 reply brief, granted Rowe's request to submit unconditional opposition and permitted Plaintiff, Redwood, and Carlisle to file additional reply briefs.[3]

### C. Legal Standard

Cal. Civ. P. § 877.6 permits a court to approve a settlement if it determines that the settlement was made in good faith. "A determination by the court that the settlement was made

---

[3] On July 16, 2010, Plaintiff requested that the Court defer ruling on the motions for approval of settlement for a period of ten days to allow the parties to meet and confer with respect to a mutually acceptable resolution. Plaintiff also requested the opportunity to address comments made by Redwood's counsel at the hearing on the motions. On July 21, 2010, the Court granted Plaintiff's request to defer issuing an order but denied the request to file additional briefing or evidence. Dkt. 227 at 2 (noting that Plaintiff already had filed several memoranda and presented substantial oral argument in support of its position). Subsequently, Plaintiff notified the Court that the parties' meet and confer efforts had been unsuccessful. In that notice, Plaintiff made representations with respect to issues in dispute between the settling parties. Dkt. 228. In light of its denial of Plaintiff's prior request for an opportunity to address the same issues, *see* Dkt. 227, the Court will disregard these representations.

Case No. CV 06-07164 JF (PVT)
Related Case No. C 10-01606 JF (PVT)
ORDER GRANTING MOTIONS FOR APPROVAL OF SETTLEMENT AND TO DISMISS
(JFLC1)

in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Civ. P. § 877.6(c).  "[A] tort defendant who has entered into a good faith settlement within the meaning of section 877.6, subdivision (c) is absolved of any further liability . . . including claims seeking total equitable immunity."  *Far W. Fin. Corp. v. D&S Co.*, 46 Cal.3d 796, 817 (Cal. 1988).  Subdivision (c) applies only if the court finds that "the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." *L.C. Rudd & Son v. Superior Court*, 60 Cal.Rptr.2d 703, 747 (Cal. Ct. App. 1st Dist. 1997) (internal citation omitted).  Should any party challenge a settlement, the burden is on that party to show that the settlement was not made in good faith.  *Fisher v. Superior Ct.,* 103 Cal.App.3d 434, 447-49 (1980).

**D. Discussion**

**1. Proper method of apportioning liability with respect to Plaintiff's CERCLA and state law claims**

**a. Whether determination of the method of apportionment is premature**

In CERCLA cost recovery actions, a court must consider partial settlements in allocating response costs among potentially responsible parties ("PRPs").  *See K.C.1986 Ltd. P'ship v. Reade Mfg.,* 472 F.3d 1009, 1018 (8th Cir. 2007) ("CERCLA plainly requires that the district court take these settlements into its equitable consideration in the allocation process.").  Plaintiff contends that it is premature and unnecessary to determine which method of apportioning liability should apply with respect to Rowe.  Plaintiff relies upon the doctrine of prudential ripeness, which requires evaluating "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99, 105 (1977).  Plaintiff argues alternatively that if the Court concludes that it must determine the appropriate method of apportionment now, it should adopt the pro tanto approach.

6

The UCFA "provides that the liability of non-settlers is reduced by the proportionate share of fault attributed to the settling parties. UCFA § 2." *Am. Cyanamid Co. v. Capuano,* 381 F.3d 6, 20 (1st Cir. 2004); UCFA § 6, 12 U.L.A. 126 (1996).[4]  In contrast, "the pro tanto approach[] follows the method of the Uniform Contribution Among Tortfeasors Act ("UCATA"), which reduces the liability of litigants by the dollar amount of third-party settlements.  UCATA § 4." *See Capuano*, 381 F.3d at 20; UCATA § 4, 12 U.L.A. 194 (1996). "These two approaches, therefore, assign the risk of an inadequate partial settlement – i.e., a settlement below the amount allocated to the settling defendant at trial – to different parties. Under the proportionate share approach, the plaintiff bears the risk, while under the pro tanto approach, the nonsettling defendants bear the risk." *Adobe Lumber*,  2009 WL 256553, at *3, citing *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 161 (4th Cir.1991).

Notwithstanding Plaintiff's argument, use of the pro tanto method of allocation would appear to require an immediate determination as to the adequacy of the proposed settlements because the settlements would affect directly – dollar-for-dollar – the non-settling defendant's potential liability.  Although Plaintiff suggests that Rowe does not contest the adequacy of the proposed settlement amounts, in fact Rowe does contend that pro tanto allocation would be unfair, for two reasons.  First, Rowe claims that while Carlisle and Redwood might not have used PCBs themselves, they were well aware of the activities of Rowe's predecessor at the site and profited by having Rowe's predecessor at the Property.  Second, Rowe claims that its predecessor paid $90,000 in 1973 dollars on behalf of all the Defendants to clean up the Property and

---

[4]  "The UCFA provides for equitable allocation of liability based on relative fault." *Adobe Lumber*, No. CIV. 05-1510 WBS EFB, 2009 WL 256553, at *3 n.1 (E.D. Cal. Feb. 3, 2009), citing UCFA § 2, 12 U.L.A. 126 (1996). Under CERCLA, a PRP's equitable share consists of the portion of response costs a court allocates to that PRP "using such equitable factors as the court determines are appropriate." 42 U.S .C. § 9613(f)(1). These equitable factors extend beyond fault. *See Waste Mgmt. of Alameda County, Inc. v. E. Bay Reg'l Park Dist.,* 135 F.Supp.2d 1071, 1090 (N.D. Cal. 2001) (listing a variety of potential considerations, including relative fault, the care exercised by parties, the degree of cooperation with government agencies, the benefits received by the parties from the contamination, and the financial resources of the parties, among others).

Case No. CV 06-07164 JF (PVT)
Related Case No. C 10-01606 JF (PVT)
ORDER GRANTING MOTIONS FOR APPROVAL OF SETTLEMENT AND TO DISMISS (JFLC1)

effectuate the "as is" sale of the Property to Plaintiff.  Rowe argues that the settlement amounts proposed – ranging from six to seventy-five percent of the cost of remediation depending on what method of clean up is adopted – thus are unfairly disproportionate to the settling defendants' liability.  Moreover, the question of who bears the risk of a low settlement amount is relevant to the Court's determination as to whether the settlement agreements were reached in good faith and in accordance with CERCLA.  Accordingly, the Court concludes that it must decide how liability is to be apportioned before determining if the settlement agreements are in good faith pursuant to Cal. Civ. P. 877.6.[5]  *See U.S. v. Western Processing Co., Inc.*, 756 F.Supp. 1424, 1431 (W.D. Wash 1990) ("[T]he effect of settlement upon nonsettling parties cannot be divorced from the overall issue of the basis upon which liability will be apportioned among the parties."), quoting *United States v. Conservation Chemical Co.,* 628 F.Supp. 391, 401 (W.D. Mo. 1985).

### b. The appropriate method of allocation

The motions for approval of settlement request both a determination that the settlements are in good faith and a bar on contribution claims, indemnity, and other claims related to this action.  "Under federal law, particularly in CERCLA cases such as this, district courts have approved settlements and entered bar orders."  *AmeriPride Services Inc. v. Valley Indus.*, Nos. CIV. S-00-113-LKK JFM, S-04-1494-LKK/JFM., 2007 WL 1946635, at *2 (E.D. Cal. July 2, 2007), citing *United States v. Western Processing Co., Inc.,* 756 F.Supp.1424, 1432-33 (W.D. Wash. 1990).  "Such an order is appropriate to facilitate settlement, particularly in a CERCLA case."  *Id.*, citing *Foamseal, Inc v. Dow Chemical,* 991 F.Supp. 883, 886 (E.D. Mich. 1998). "Within the Ninth Circuit, a court's authority to review and approve settlements and to enter bar orders has been expressly recognized."  *Id.*, citing *Franklin v. Kaypro Corp.,* 884 F.2d 1222 (9th Cir. 1989) (approving settlement of claims and entering bar orders in the context of federal

---

[5]  Rowe also challenges the proposed settlement amounts based upon on-going discovery and the escalating cost of remediation. However, as explained in more detail below, a determination of good faith settlement must be made based on the facts as they exist at the time a settlement agreement is reached.

Case No. CV 06-07164 JF (PVT)
Related Case No. C 10-01606 JF (PVT)
ORDER GRANTING MOTIONS FOR APPROVAL OF SETTLEMENT AND TO DISMISS
(JFLC1)

securities laws).  The same is true for settlement of state law claims in a federal action.  *See id.,*
*citing Patterson Environmental Response Trust v. Autocare 2000,* Inc., No. Civ-F 01-6606 (E.D.
Cal. July 8, 2002); *see also Federal Savings and Loan Ins. Corp v. Butler,* 904 F.2d 505, 511
(9th Cir. 1990).

  Rowe and the settling defendants contend that the Court should apply the UCFA's
proportionate share method.  They contend that the majority of federal case law supports
application of the proportionate share approach.[6]  Each party also argues that the language of the
settlement agreements and the equitable principles of CERCLA require adoption of their
respective proposed method of allocation.

### i. Legal authority

  CERCLA does not address specifically how settlements in private party cost recovery
actions should be apportioned or evaluated for fairness, nor has the Ninth Circuit issued a
decision directly addressing the issue.  42 U.S.C. § 9613(f)(1) (providing no explicit guidance on
the method of apportioning liability between private PRPs); *Adobe Lumber,* 2009 WL 256553, at
*3 ("In the twenty-eight years that CERCLA has been [sic] existence, the Ninth Circuit has never
addressed the question of the proper credit method for settlements between private PRPs under
CERCLA."), *but c.f. In re Exxon Valdez,* 229 F.3d 790, 796 (9th Cir. 2000) (asserting in the
context of a non-CERCLA case that "[t]he proportionate share approach is the law in the Ninth
Circuit").  "Nevertheless, district judges in the Ninth Circuit [] appear to uniformly employ the
[UCFA] proportionate share approach for settlements between private PRPs."  *Adobe Lumber,*
2009 WL 256553, at *3, citing *Ameripride Serv.* 2007 WL 1946635, at *4; *Patterson Envtl.*

---

  [6]  This case is primarily a federal action requesting relief under federal law.  Although
Plaintiff does allege a claim under California's Carpenter-Presley-Tanner Hazardous Substance
Account Act ("HSAA"), as well as attendant state law claims for comparative equitable
indemnity, declaratory relief, and attorney fees, HSAA recovery largely is defined by CERCLA
itself, and the statute includes several direct references to and incorporates much of CERCLA's
language. "Because the principal basis for this action is a federal statute, CERCLA, federal
law-including case law of federal courts-is controlling."  *Allied Corp. v. Acme Solvent*
*Reclaiming, Inc.*, 771 F.Supp.219, 223 (N.D. Ill. 1990).  Accordingly, federal common law
controls the method of apportionment.

Case No. CV 06-07164 JF (PVT)
Related Case No. C 10-01606 JF (PVT)
ORDER GRANTING MOTIONS FOR APPROVAL OF SETTLEMENT AND TO DISMISS
(JFLC1)

*Response Trust v. Autocare 2000, Inc.,* No. 01-6606, 2002 U.S. Dist. LEXIS 28323, at *15 (E.D. Cal. July 8, 2002) (Wanger, J.) ("Most courts have adopted the Uniform Comparative Fault Act (the "UCFA") in evaluating the effect of settlement upon nonsettlors because its principles are most consistent with Congress's intent in enacting CERCLA."); *West County Landfill, Inc. v. Raychem Int'l Corp.,* No. 93-3170, 1997 U.S. Dist. LEXIS 1791, at *3 (N.D. Cal. Feb. 14, 1997); *Acme Fill Corp. v. Althin CD Med., Inc.,* No. 91-4268, 1995 WL 822663, at *1 (N.D. Cal. Nov. 8, 1995); *United States v. W. Processing Co.,* 756 F.Supp. 1424, 1432 (W.D. Wash. 1990).

"District courts nationally have also widely adopted the proportionate share credit method." *Adobe Lumber*, 2009 WL 256553, at *3, citing *Tosco Corp. v. Koch Indus., Inc.,* 216 F.3d 886, 897 (10th Cir. 2000) (asserting that a majority of courts deciding CERCLA § 113(f)(1) contribution claims have adopted the UCFA's proportionate share method), citing Lynnette Boomgaarden & Charles Breer, *Surveying the Superfund Settlement Dilemma,* 27 Land & Water L.Rev. 83, 109-12, 111 n. 189 (1992); *see also New York v. Solvent Chem. Co., Inc.,* 984 F.Supp. 160, 168 (W.D.N.Y. 1997) ("Under section 113(f)(1), which applies to allocation of costs among private parties, the court must consider equitable factors.  The omission of this language in section 113(f)(2) appears to dictate application of the UCFA in actions between private parties. This finding is consistent with the purposes behind [CERCLA] sections 113(f)(1) and 113(f)(2)."); *Hillsborough County v. A & E Road Oiling Serv., Inc.,* 853 F.Supp. 1402, 1410 (M.D. Fla. 1994) ("[T]he intent of Congress and the purposes of CERCLA are inextricably intertwined: To achieve the prompt clean-up of hazardous waste sites, and fairly allocate the costs of the clean-up to those responsible for the contamination. . .UCFA effectively embraces both prompt clean-up and fair allocation.") (internal citation and quotation marks omitted); *United States v. SCA Serv. of Ind., Inc.*, 827 F.Supp. 526, 535 (N.D. Ind. 1993) ("The UCFA will better promote CERCLA's policy of encouraging settlements, while securing equitable apportionment of liability for Non-settlors.").

Plaintiff acknowledges that district courts in the Ninth Circuit uniformly have concluded that the UCFA's proportionate share approach applies to private party cost recovery actions

10

Case No. CV 06-07164 JF (PVT)
Related Case No. C 10-01606 JF (PVT)
ORDER GRANTING MOTIONS FOR APPROVAL OF SETTLEMENT AND TO DISMISS
(JFLC1)

under CERCLA, but it argues that better reasoned decisions outside the Ninth Circuit have concluded otherwise.  Dkt. 209 at 5-6, citing *Azko Nobel Coatings, Inc. v. Aigner Corp.*, 197 F.3d 302, 308 (7th Cir. 1999) (adopting the pro tanto approach in part because (1) it provides an incentive for early settlement and (2) the Supreme Court in *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 211-14, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994) concluded in a maritime action that "the choice between the *pro tanto* approach and claim reduction is a tossup" and the pro tanto approach is specified in CERCLA section 113(f)(2), "the most closely related rule of law"); *Capuano*, 381 F.3d at 20-21 (interpreting CERCLA to "give the district court discretion regarding the most equitable method of accounting for settling parties" and applying pro tanto approach); *see also Veolia es Special Services v. Hiltop Investments*, No. 3:07-0153, 2010 WL 898097, at *7 (S.D. W.Va. Mar. 12, 2010) (adopting the pro tanto method and focusing in part on the fact that the non-PRP plaintiff faced the risk of obtaining less than full recovery for its own undertaking in cleanup).[7]

This Court joins other district courts in the Ninth Circuit in concluding that the UCFA's proportionate share method applies to claims brought under § 113(f)(1).  § 113(f)(1) provides that courts should "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1).  "This provision promotes fairness and prevents relatively innocent PRPs from being forced to bear a disproportionate burden of the liability." *Adobe Lumber*, 2009 WL 256553, at *4, citing *Carson Harbor Village, Ltd. v. Unocal Corp.,* 270 F.3d 863, 871 (9th Cir. 2001) (en banc) ("The contribution provision aims to avoid a variety of scenarios by which a comparatively innocent PRP might be on the hook for the entirety of a large cleanup bill."); *SmithKline Beecham Corp. v. Rohm & Haas Co.,* 89 F.3d 154, 163, 163 n. 7 (3d Cir. 1996) (noting that CERCLA policy disfavors the apportionment of liability "in

---

[7]  Here, the Court already has determined that Plaintiff is a PRP.  *See contra Veolia.* 2010 WL 898097, at 7 ("Since a non-PRP private party who conducts CERCLA related cleanup already faces the hurdle and expense of pursuing litigation to receive compensation for its response costs, the prospect of less than full recovery would add an additional disincentive to private party cleanups and would therefore be contrary to CERCLA's principle [sic] goals." )

11

disregard of the equities affecting the parties") (citation omitted); *In re Hemingway Transp., Inc.,* 993 F.2d 915, 922 (1st Cir.1993) (holding that "CERCLA section [113(f)] is aimed at promoting equitable allocations of financial responsibility").

The Court recognizes that there are advantages and disadvantages to each methodology. Under the proportionate share approach, a plaintiff must bear the risk of settling for too little too early, thus discouraging early settlement, an ideal that both CERCLA and judicial economy promote. *Veolia*, 2010 WL 898097, at *7 ("The proportionate rule would discourage settlement by making plaintiff bear the risk that the settlement adequately reflected the settlor's share of fault. Where there are several PRPs, like this case, the proportionate approach encourages defendants to hold out until a fault-based allocation can be made, requiring the plaintiff to continuing [sic] litigating and thereby reduce its net recovery.") However, § 113(f)(1) specifically concerns allocation of response costs, and the only consideration it expressly references is equity. "Of the two alternative approaches, the pro tanto method clearly produces a greater risk of inequitable allocation of liability." *Adobe Lumber,* 2009 WL 256553, at *4, citing *McDermott v. AmClyde,* 511 U.S. 202, 214, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994); *cf. Capuano*, 381 F.3d at 20 ("The [proportionate share] approach has the benefit [ ] of ensuring, in theory, that damages are apportioned equitably among the liable parties."). "Under the pro tanto approach, nonsettling defendants must pay more than their fair share whenever a plaintiff settles with a defendant for less than that defendant's equitable share." *Id.*, citing *Franklin v. Kaypro Corp.,* 884 F.2d 1222, 1230 (9th Cir. 1989). A plaintiff may accept such a settlement for a variety of reasons, such as the benefit of reduced uncertainty, lower litigation costs, or the ability to leverage the settlement amount toward litigating the action against the non-settling defendants. *McDermott,* 511 U.S. at 212-13; *Kaypro,* 884 F.2d at 1230.

Inequity also may result under the proportionate share method. A plaintiff who settles with a defendant for less than its equitable share no longer will be able to recover its full damages because its total recovery is reduced by the equitable share of the settling defendant. However, as the court concluded in *Adobe Lumber*, "the plaintiff, as the party that decides

whether to settle with any of the defendants, is in the best position to mitigate that risk by settling only when the proposed amount approximates the settling defendant's equitable share of liability." *Adobe Lumber*, 2009 WL 256553, at *4, citing *Comerica Bank-Detroit v. Allen Indus., Inc.,* 769 F.Supp. 1408, 1414 (E.D. Mich. 1991). The opposite is true under the pro tanto approach. Under that scheme, the potential injury will be suffered by the nonsettling defendant, who has no ability to affect the settlement amount. Accordingly, the proportionate share approach makes it more likely that pre-trial settlements and the overall litigation will achieve the equitable allocation of liability among all responsible parties that 42 U.S.C. § 9613(f)(1) specifically demands.[8]

### ii. Language of the settlement agreements

Redwood and Carlisle argue that the language of the settlement agreements calls for the proportionate share method of allocation, while Plaintiff contends that the same agreements mandate the pro tanto approach. Because it has concluded that the UCFA's proportionate share method of allocating liability is applicable to CERCLA claims brought under § 113(f)(1), the Court now must determine if the settlement agreements expressly elect to follow this methodology, opt instead for the pro tanto method, or are so ambiguous that there was no meeting of the minds as to this material provision of the agreements.

---

[8] "The Supreme Court adopted the proportionate share approach for maritime actions specifically because of this tendency to achieve a fairer allocation of costs." *Adobe Lumber*, 2009 WL 256553, at *5. "The Court concluded that the two settlement credit methods were 'closely matched' with regard to the promotion of settlement and judicial economy, but adopted the proportionate share approach because it was more consistent with the Court's holding in *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), which required that damages in maritime cases be equitably allocated in accordance with the parties' comparative fault." *Id.*, citing *McDermott,* 511 U.S. at 217 ("[T]he proportionate share approach is superior, especially in its consistency with *Reliable Transfer*.")**;** *see Kaypro,* 884 F.2d at 1231 (adopting the proportionate share method for securities class actions in part because it "comports with the equitable purpose of contribution" (citing *Smith v. Mulvaney,* 827 F.2d 558, 561 (9th Cir.1987)). In *McDermott*, contrary to the Seventh Circuit's conclusion in *Azko Nobel Coatings,* the Supreme Court concluded that "the *pro tanto* approach, even when supplemented with good-faith hearings, is likely to lead to inequitable apportionments of liability" and that the "proportionate share approach is superior." *McDermott*, 511 U.S. at 214, 217.

"A settlement agreement is treated as a contract and is subject to all contractual requirements." *Parker v. Foster*, No. CV F 05-0748 AWI LJO, 2006 WL 2085152, at *5 (E.D. Cal. July 25, 2006), citing *Huens v. Tatum*, 52 Cal.App.4th 259, 264 (1997), *disapproved on other grounds by Zamora v. Clayborn Contracting Group, Inc.,* 28 Cal.4th 249, 256 (2002). "The interpretation of a settlement agreement is governed by the same rules that guide the court's review of any other contract." *Id., citing Edwards v. Comstock Insurance Co.,* 205 Cal.App.3d 1164, 1167-69 (1988). "A settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term" or fail to agree to the same thing in the same sense. *Lindsay v. Lewandowski*, 139 Cal.App.4th 1618, 1622-23 (2006).

However, "[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." *Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.*, 164 Cal.App.3d 1122, 1127 (1985). "[I]t is [] a settled principle of the law of contract that the undisclosed intentions of the parties are ... immaterial; and that the outward manifestation or expression of assent is controlling." *Id.*, quoting *Brant v. California Dairies, Inc.,* 4 Cal.2d 128, 133, 48 P.2d 13 (1935); *see also Mission Valley East, Inc. v. County of Kern* 120 Cal.App.3d 89, 97, 174 Cal.Rptr. 300 (1981); *City of Mill Valley v. Transamerica Ins. Co.,* 98 Cal.App.3d 595, 603, 159 Cal.Rptr. 635 (1979). "The parties' undisclosed intent, undisclosed understanding, or subject[ive] intent is irrelevant to contract interpretation." *Parker,* 2006 WL 2085152, at *6, citing *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.,* 109 Cal.App.4th 944, 955 (2003). "It is enough that a reasonable person would understand that the parties consented to the contract and consented to the same terms in the same sense." *Parker,* 2006 WL 2085152, at *6, *citing Beard v. Goodrich,* 110 Cal.App.4th 1031, 1039-40 (2003).

The settlement agreements at issue here make express reference to the contribution bar and the statute that authorizes it, which is the UCFA. Redwood Settlement Agreement ¶ 2.b ("'Contribution Bar' as used herein shall mean the contribution protection afforded under Uniform Comparative Fault Act, 12 U.L.A. 147 (1996)."); Carlisle Settlement ¶ 1.b

14

("Contribution Bar Protection' as used in this Agreement shall mean the contribution protection afforded under the Uniform Comparative Fault Act, 12 U.L.A. 147 (1996).").

§ 6 of the UCFA provides that:

> A release, covenant not to sue, or similar agreement entered into by a claimant and person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions of Section 2.

U.C.F.A. § 6, 12 U.L.A. 147 (1996).  This language unambiguously calls for application of the proportionate share methodology.

Plaintiff argues that the same paragraph in the settlement agreements also refers to Cal. Civ. P. § 877, which calls for the pro tanto approach.  Redwood Settlement Agreement ¶ 2.b ("'Good Faith Application' shall mean an application to the Court for determination of good faith settlement pursuant to California Code of Civil Procedure sections 877 and 877.6, or similar federal statutes, common law rules or guidelines."); Carlisle Settlement ¶ 1.b ("'Good Faith' Application' as used in this Agreement shall mean an application to the Court for determination of good faith settlement pursuant to California Code of Civil Procedure sections 877 and 877.6, or similar federal statutes, common law, rules, or guidelines.")

§ 877 states in relevant part:

> Where a release, dismissal with or without prejudice, or a convenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:
> (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the convenant, or in the amount of the consideration paid for it whichever is the greater.

Under § 877(a), a non-settling defendant's liability shall be reduced "against the others in the amount stipulated by the release, the dismissal or the convenant, or in the amount of the consideration paid for it whichever is the greater."  *Id., see also Federal Sav. & Loan Ins. Corp. v. Butler,* 904 F.2d 505, 511 (9th Cir.1990) (noting that Cal. Civ. P. § 877 adopts the UCATA "almost word for word").

The reference in the settlement agreements to conflicting methods of apportioning liability may appear at first glance to create an ambiguity as to a material term of the agreements. Plaintiff argues that this ambiguity reflects a failure of the parties to reach a meeting of the minds. *Callie v. Near,* 829 F.2d 888, 891 (9th Cir. 1987). However, the Court concludes that there is only one reasonable interpretation of the settlement agreements. The agreements define the proposed contribution bar by referring expressly to the UCFA. § 6 of the UCFA defines the contribution bar in tandem with the method of allocating liability to the non-settling defendants. U.C.F.A. § 6, 12 U.L.A. 147 (1996) ("A release, covenant not to sue, or similar agreement entered into by a claimant and person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions of Section 2.") Adoption of the UCFA contribution bar thus necessitates adoption of its corresponding method of allocating liability to the non-settling defendant whose claims for contribution are extinguished. The only reasonable purpose for an express reference to the UCFA in defining the contribution bar is to invoke the statute's proportionate share method.[9]

Viewed in this light, the reference in the agreements to Cal. Civ. P. §§ 877 and 877.6 is not inconsistent, nor does it create an ambiguity. The "good faith application" referenced in each settlement agreement reasonably may be understood as the procedural motion that is the subject of the instant order. In particular, Cal. Civ. P. § 877.6 is a procedural statute. Apart from the bare reference to these provisions, nothing in the agreements evidences the parties' intent to adopt the pro tanto method of allocation; the parties are agreeing to nothing more than to approval of the agreements by the Court.

---

[9] At the hearing on July 16, 2010, in response to the Court's inquiry regarding the reference to the UCFA in the settlement agreements, Plaintiff's counsel asserted that he agreed to this reference only to provide broad contribution protection to the settling Defendants and not to protect Rowe from pro tanto liability. However, given the actual effect of the UCFA's contribution bar, this assertion is inconsistent with any reasonable reading of the agreements.

Several other factors support this conclusion.  First, the method of allocating liability often is a disputed and highly relevant issue in CERCLA settlement negotiations.  The settlement agreements at issue here were negotiated at arm's length over a period of many months under the supervision and assistance of the judicially-assigned mediator, Daniel Bowling.  The settling parties also were represented by experienced counsel.  Plaintiff's suggestion that the parties did not agree upon a method of allocating liability strains credulity and is not supported by the record.  Plaintiff's claim also is called into question by the timing of its filings in response to the instant motions for approval of settlement.  The motion papers and proposed orders filed by Redwood and Carlisle on April 23, 2010 and May 21, 2010, respectively, clearly and emphatically call for the application of the UCFA's proportionate share approach.  Plaintiff did not interpose any objection prior to the filing deadline for opposing the motions.  Only on June 11, 2010, after Rowe had filed its conditional non-opposition addressing the related RCRA action, did Plaintiff suggest that the parties had agreed to pro tanto allocation.[10]

Finally, Plaintiff argues that the determination of the proper method of apportionment affects only Plaintiff and Rowe, and not Carlisle and Redwood.  It contends that application of the proportionate share approach would amount to an unenforceable gift to Rowe, as Carlisle and Redwood received no consideration in exchange.  However, Rowe's opposition to the motions for approval of settlement is evidence of the consideration Carlisle and Redwood were meant to receive in exchange for an adoption of the proportionate share method: Rowe's acquiescence to the agreements and litigation peace.  *See e.g., Adobe Lumber*, 2009 WL 256553, at *5 (concluding that the proportionate share approach governs the effect of settlements in a private CERCLA action and denying plaintiff's motion to approve the settlement based upon the settling parties' express condition that the pro tanto method apply).

Accordingly, the Court concludes that both applicable legal authority and the language of

---

[10]  Plaintiff also failed to provide any evidence of its state of mind when it entered into the settlement agreements with Redwood and Carlisle.  It was only at oral argument, in response to Redwood's assertion that there was no evidence on the record supporting Plaintiff's position, that Plaintiff requested leave to proffer such evidence.

the settlement agreements themselves support the conclusion that the proportionate share method applies to the instant settlements.

### 2. RCRA action

Rowe also opposes approval of the settlement agreements in the event that the Court determines that the proportionate share approach does not apply to Plaintiff's related RCRA claim against Rowe.  Plaintiff not only opposes application of the proportionate share method, as discussed above, *see supra,* I.D.1, but also disputes Rowe's contention that there is a right to contribution under RCRA.

### a. Whether there is a right to contribution under RCRA

It is undisputed that there is no express statutory right to contribution under RCRA. *United States v. Valentine,* 856 F.Supp. 627, 631 (D. Wyo. 1994).  However, "contribution may also arise from a federal statute 'by clear implication' or 'through the power of federal courts to fashion a federal common law of contribution.'"  *Id.,* quoting *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981).

The Ninth Circuit has not addressed whether there is an implied or common-law right to contribution under RCRA.  Rowe contends that district courts consistently have found that there is an implied right to contribution, as such a right is consistent with the purpose of the statute. Dkt. No. 202, 203 at 2, citing *Valentine*, 856 F.Supp. at 632-34; *Aurora National Bank v. Tri Star Marketing, Inc.*, 990 F.Supp. 1020, 1034 (N.D. Ill. 1998); *Bayless Investment and Trading Co. v. Chevron U.S.A., Inc.,* No. 93C704, 1994 WL 1841850 (D. Ariz. May 25, 1994).  Rowe also argues that an implied right to contribution arises from the fact that RCRA liability is joint and several.  *Id.,* citing *Valentine*, 856 F.Supp. at 634.

However, *Valentine* examined 42 U.S.C. § 6973, which governs actions brought by the United States, rather than citizen suits brought pursuant to § 6972.  *Valentine*, 856 F.Supp. at 637 n. 11 (distinguishing its holding from *United States v. Production Plated Plastics, Inc.,* 21 E.L.R. 21220, 1991 WL 257083 (W.D.Mich.1991) in part based upon the fact that *Production Plated Plastics* was "decided under a different RCRA provision, 42 U.S.C. § 6972. Consequently, the

court in that case did not review Section 7003, its legislative history or the decisions recognizing the sweeping nature of the authority it grants to federal courts."). Moreover, as Plaintiff points out, *Valentine* was decided prior to the Supreme Court's decision in *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996). Plaintiff notes that two district court decisions subsequent to *Meghrig* addressed directly the question before the Court and determined that there is no right to contribution, implied or otherwise, under RCRA. Dkt. 208 at 3-5, citing *Davenport v. Neely,* 7 F.Supp.2d 1219 (M.D. Ala. 1998) and *U.S. v. Domestic Industries, Inc.*, 32 F.Supp.2d 855 (E.D. Va. 1999).

In *Meghrig,* the Supreme Court distinguished RCRA from CERCLA, in part by noting that RCRA is not a "clean-up" statute. As the district court observed in *Domestic Industries,* "[w]hile RCRA provides for private causes of action to stop polluters injunctively through its citizen suit provisions, *see* 42 U.S.C. § 6972(a)(1)(A), in CERCLA, Congress specifically provided for remedies such as contribution and indemnity." *Domestic Industries,* 32 F.Supp.2d. at 870. The Supreme Court also held that citizens cannot maintain private suits under RCRA for past clean-up costs. Although *Meghrig* did not address the precise issue presented in this case – whether a private party can recover – through an action for contribution or indemnity – civil penalties or clean-up costs where remediation has not been completed, it did conclude that RCRA "is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards." 516 U.S. at 483.

The Eighth Circuit did address the issue before the Court in *Furrer v. Brown,* 62 F.3d 1092 (8th Cir. 1995), *cert. denied,* 517 U.S. 1167, 116 S.Ct. 1567, 134 L.Ed.2d 667 (1996). *Domestic Industries,* 32 F.Supp.2d at 870-71. "The Furrer's [sic] property was contaminated and they were ordered by the State to remediate the contamination." *Id.* at 871. The Furrers then filed a third-party complaint seeking the costs of remediation from the previous owners and lessees of the property. "The Eighth Circuit denied the Furrer's [sic] attempt to recover from the third-parties noting that it was ultimately a question of Congressional intent, and that there was no basis in the law for such an action." *Id.* at 871, citing *Furrer*, 62 F.3d at 1101-02 (citations

omitted).   Moreover, "[w]hile the Supreme Court did not specifically address the question presented here or in *Furrer,* the Court denied the request for *certiorari* in *Furrer,* and tacitly affirmed *Furrer* by resolving the conflict between the Eighth Circuit's decision in *Furrer* and the Ninth Circuit's decision in *Meghrig* with an unanimous reversal of the Ninth Circuit's *Meghrig* decision."   *Id*. (citation omitted).

In *Davenport,* the district court determined that "[d]efendants ha[d] not established that they have a right to indemnity/contribution from the proposed third-party defendants under the RCRA."   *Davenport*, 7 F.Supp.2d at 1230.   A significant element of the holdings in both *Meghrig* and *Davenport* is that a "court should not impose a remedy where Congress specifically declined to allow th[at] remedy."   *Domestic Industries*, 32 F.Supp.2d at 871; *see Davenport,* 7 F.Supp.2d at 1228; *see also Meghrig*, 516 U.S. at 485 (comparing what relief is provided under RCRA and CERCLA and noting that CERCLA provides that "'[a]ny person may seek contribution from any other person who is liable or potentially liable' for these response costs. *See* § 9613(f)(1).   Congress thus demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and that the language used to define the remedies under RCRA does not provide that remedy.")   This Court also "declines to 'engraft' a contribution or indemnity action" onto RCRA.   *Domestic Industries*, 32 F.Supp.2d at 872.[11]

### b. Method of apportionment for RCRA liability

In light of its conclusion that a defendant has no right to contribution under RCRA, the Court need not determine the proper method of apportioning RCRA liability.   Plaintiff's right to relief under RCRA generally is discussed below.   *See infra*, II.

### 3. Good faith settlement

Whether a settlement is made in "good faith" within the meaning of § 877.6 is determined based on a variety of factors identified in the California Supreme Court's decision in *Tech-Bilt,*

---

[11]   While such a result may seem inequitable, such a conclusion is mandated by existing law. As the *Furrer* court noted, "remediation of contaminated property attaches, without regard to fault, to the then owner of the property." *Furrer*, 62 F.3d at 1098-99. Moreover, § 6972(f) specifically reserves state remedies. 42 U.S.C. § 6972(f).

*Inc v. Woodward-Clyde & Associates,* 38 Cal.3d 488, 499-500 (1985).  Relevant factors here
include: (i) a rough approximation of plaintiffs' total recovery and the settler's proportionate
liability; (ii) the amount paid in settlement; (iii) a recognition that a settler should pay less in
settlement than if found liable after trial; (iv) the allocation of the settlement proceeds; (v) the
settling party's financial condition and the availability of insurance; and (vi) evidence of any
collusion, fraud, or tortious conduct between the settler and the plaintiff aimed at requiring the
non-settling parties pay more than their fair share.  *Id.*

A settling party in a federal action involving California claims may file a motion seeking
a good faith determination.  *Federal Savings & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 511 (9th
Cir. 1990).  Consistent with *Federal Savings* and the language of the settlement agreements,
Carlisle and Redwood have moved for an order determining that the settlements are in good
faith.  Federal courts in California have jurisdiction to apply the *Tech-Bilt* factors in ruling on
such a motion.  *Shawmut Bank N.A. v. Kress Assoc.*, 33 F.3d 1477, 1504 (9th Cir.1994); *Rutgard
v. Haynes*, 61 F.Supp.2d 1082, 1085 (S.D. Cal. 1999).

There is no evidence that either of the settlements before the Court was the result of
collusion or fraud or was structured in a way that imposes an undue share of liability on
non-settling parties.  Instead, each of the settlements was reached through arm's length
negotiations among sophisticated entities represented by counsel after years of investigation and
discovery with the assistance of a professional, judicially-assigned mediator.

The first *Tech-Bilt* factor – an approximation of recovery and potential liability – typically
is the most important. There are no firm guidelines that define whether the amount of a
settlement is "grossly disproportionate." The settlement amount only need be "in the ballpark,"
with any party challenging a settlement having the burden of establishing that it is so far "out of
the ballpark" that the equitable objectives of § 877 are not satisfied. *Tech-Bilt*, 38 Cal.3d at 499-
500.  Here however, because the Court has determined that the proportionate share method
applies, the fairness of the settlement to the non-settling defendant is not at issue.  Moreover,
Rowe has no objection to the settlement amounts provided that the Court adopts the

proportionate share method.

The Court nonetheless concludes that the proposed settlements appear to be in the ballpark. *Tech-Bilt*, 38 Cal.3d at 499-500. "[P]ractical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement. A defendant's settlement figure must not be grossly disproportionate to what a reasonable person, *at the time of the settlement*, would estimate the settling defendant's liability to be." *Tech-Bilt, Inc.,* 38 Cal. 3d at 499 (emphasis added) (internal quotation marks and citation omitted); *see also Bonds v. Nicoletti Oil Inc.*, No. CV-F-07-1600 OWW/DLB, 2008 WL 4104272, at *2 (E.D. Cal. Sept. 3, 2008) (citing *Tech-Bilt* and granting unopposed motion for good faith settlement in environmental contamination case); *Buckner v. E.I. Du Pont De Nemours and Co.*, No. CV F 05-0156 AWI SMS, 2006 WL 1314008, at *6 (E.D. Cal. May 12, 2006) (granting motion for determination of good faith settlement in a products liability case and concluding that "[p]ractical considerations require that evaluation be made on the basis of the information available at the time of settlement.") (internal quotations marks and citation omitted).

In determining whether the proposed settlement amounts are fair, the Court looks to the known or estimated costs of remediation at the time of settlement. At the time the settlement agreements were reached, the Regional Water Quality Control Board's approved remediation plans estimated the total cost of remediation, including annual operation and maintenance and groundwater monitoring, as between $1,677,000 and $2,611,000. Accordingly, Carlisle's proposed settlement ($150,000) would constitute between six and nine percent of the total cost of remediation, and Redwood's proposed settlement ($275,000) would satisfy eleven to sixteen percent of the total cost. At the time of settlement, Defendants' environmental consultant estimated that with more reasonable estimates for future operation, maintenance, and groundwater monitoring expenses, the total cost of remediation would be in the range of $647,266 to $1,038,640. Using these numbers, Carlisle's contribution would be approximately fifteen to twenty percent of the total costs, and Redwood's settlement would represent twenty-six to forty-two percent of the total cost of remediation.

While the proposed settlement amounts are less than one-third of the likely total cost of remediation under the approved remediation plan, it is undisputed that Carlisle and Redwood never used PCBs on the property. Moreover, because Plaintiff is a PRP, the appropriate division of the costs of remediation should not be assumed to be in thirds merely because there are three named defendants. Finally, while its claim is disputed by Plaintiff, Rowe asserts that the Southern Pacific Railroad, a non-party, is principally responsible for the PCB contamination. Accordingly, the evidence supports a determination that the settlement amounts reached are not "out of the ballpark" of the settling parties' approximate liability.

## II. MOTION TO DISMISS

### A. Factual Background

Plaintiff alleges that the Property is contaminated with PCBs. It claims that this contamination occurred between 1965 and 1973, when electrical transformers were manufactured by Rowe's predecessors-in-interest, Pacific Transformer Co., Hill Magnetics, Inc., and Hill Industries, Inc. RCRA Complaint ¶¶ 1, 2. Plaintiff seeks recovery of investigation, response and abatement costs that it has incurred and will continue to incur in cleaning up and remediating the environmental contamination at the Property, as well as attorney's fees. *Id.* ¶¶ 10, 25. Plaintiff also seeks a judicial declaration that it is entitled to payment of these costs. *Id.* ¶ 22-36.

Plaintiff alleges that Rowe is liable under RCRA, 42 U.S.C. §§ 6901-6972, because "Rowe has contributed to the past and present handling, storage, treatment, transportation or disposal of hazardous waste at the Property, which may present an imminent and substantial endangerment to health or the environment." RCRA Complaint ¶ 23. Plaintiff also claims that "[t]o date, [it] has incurred Response Costs to fully characterize the Property," *id.*, and has prepared groundwater and sub-slab investigation reports, which characterize the contamination at the Property. *Id.* ¶ 9. Documents of which the Court may take judicial notice establish that the Regional Water Quality Control Board approved a Remedial Action Plan, and a Remedial Design/Remedial Action Work Plan on October 9, 2009 and January 20, 2010, respectively. Request for Judicial Notice, Exs. A (October 2, 2009 Approval of Plaintiff's Remedial Action

Plan) and B (January 20, 2010 Approval of Plaintiff's Remedial Design/Remedial Action Work).[12]  Rowe moves to dismiss, arguing that (1) the complaint does not plead sufficiently a request for injunctive relief; and (2) even if it did, it impermissibly seeks pre-suit damages that cannot be recovered under RCRA.

**B. Legal Standard**

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Thus, a court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-755 (9th Cir.1994).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.,* 66 F.3d 245, 248 (9th Cir.1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp,*

---

[12]  Exhibits A and B are official public records of the Regional Water Quality Control Board that are not subject to reasonable dispute. "A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment,' as long as the facts noticed are not 'subject to reasonable dispute.'" *Intri-Plex Technologies, Inc. v. The Crest Group, Incorporated,* 499 F.3d 1048, 1052 (9th Cir. 2007), quoting *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001).

Case No. CV 06-07164 JF (PVT)
Related Case No. C 10-01606 JF (PVT)
ORDER GRANTING MOTIONS FOR APPROVAL OF SETTLEMENT AND TO DISMISS
(JFLC1)

90 F.3d 386, 393 (9th Cir.1996).

**C. Discussion**

**1. RCRA claim**

**a. Whether Plaintiff adequately pleads injunctive relief**

Pursuant to RCRA's citizen suit provision, 42 U.S.C. § 6972(a), "[t]he district court shall have jurisdiction. . .to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste. . .to order such person to take such other action as may be necessary, or both. . ." "The primary relief available to a private party under RCRA is a mandatory injunction, i.e., one that orders a responsible party to 'take action' by attending to the cleanup and proper disposal of toxic waste, or a prohibitory injunction, i.e., one that 'restrains' a responsible party from further violating RCRA." *Gilroy Canning Company, Inc. v. California Canners and Growers*, 15 F.Supp.2d 943, 945 (N.D. Cal. 1998), quoting *Meghrig,* 516 U.S. at 484. The parties agree that a plaintiff must seek injunctive relief in order to state a RCRA claim upon which relief may be granted, but they dispute whether a request for such injunctive relief is asserted adequately in the operative complaint.

Plaintiff's prayer for relief seeks "payment by Defendant Rowe of all Response Costs that have been or will be incurred by Plaintiff as required by law in response to the Release and threatened Release of Hazardous Substances and in enforcement of RCRA's statutory liability scheme, or in an amount this Court deems appropriate." RCRA Complaint, Prayer ¶ 1. Plaintiff also seeks attorney's fees, costs, and pre-judgment interest. *Id.* ¶¶ 2, 3. Nowhere does the complaint mention injunctive relief as such. Plaintiff expressly defines the "response costs" it seeks as a statutory remedy under CERCLA. *Id.* ¶ 19 ("[T]he term 'Response Costs' means the costs of 'removal' and 'remedial actions' of Hazardous Substances, as those terms are defined in CERCLA § 101(23) and (24), and all other costs to respond to Releases of Hazardous Substances, as defined in CERCLA § 101(25), 42 U.S.C. § 9601(25)."). However, in *Meghrig*, the Supreme Court made clear that "CERCLA differs markedly from RCRA [] in the remedies it

provides. . . Congress [] demonstrated in CERCLA that it knew how to provide for recovery of cleanup costs, and that the language used to define the remedies under RCRA does not provide that remedy." *Meghrig*, 516 U.S. at 485.

Plaintiff contends that "injunctive relief is encompassed within the relief pled" in its complaint, Dkt. No. 10 at 5, because it alleges that Rowe is liable under RCRA, 42 U.S.C. §§ 6901-6972 for contributing to past and present disposal of hazardous waste at the Property. Complaint ¶ 23.  As noted above, § 6972(a) gives the district court authority to "restrain any person" contributing to the disposal of hazardous waste, or "to take such other action as may be necessary, or both."  Plaintiff argues that its invocation of § 6972 amounts to a prayer for injunctive relief under the liberal pleading standard applicable to a motion to dismiss.  However, the Court need not make unreasonable inferences or unwarranted deductions of fact, *Clegg,* 18 F.3d at 754-755, particularly because Plaintiff defines "response costs" elsewhere in its complaint as the costs of removal and remedial actions of Hazardous Substances, as those terms are defined in CERCLA.[13]  *See Green Hills (USA) v. Aaron Street, Inc.*, 361 F.Supp.2d 81, 85 (E.D.N.Y. 2005) (granting leave to amend RCRA when "[t]he complaint clearly [sought] money damages for past clean-up efforts and only vaguely [sought] injunctive relief.")

**b. Whether the relief requested is recoverable under RCRA**

The Supreme Court held in *Meghrig* that "[a] private party cannot recover the cost of a

_____

[13]  Plaintiff argues that it may seek an injunction requiring Rowe to pay costs of remediation, as distinguished from an injunction requiring Rowe to assume the actual *work* of remediation.  Dkt. No. 10, citing *City of Waukesha v. Viacom International, Inc.*, 362 F.Supp.2d 1025 (E.D. Wisc. 2005) and *Nashua Corp. v. Norton Co.*, 116 F.Supp.2d 330 (N.D.N.Y. 2000). The Court agrees that under some circumstances a RCRA plaintiff may seek an injunction ordering a defendant to pay *future* remediation costs.  However, in *Waukesha*, the plaintiff's pleading clearly sought injunctive relief in the form of, "an order requiring Viacom, Amrom LLC, and A.W. Holding 'to take action to address the endangerment which exists..." *Waukesha*, 362 F.Supp.2d at 1029.  In *Nashua*, the plaintiff "s[ought] *injunctive relief* directing Norton to participate in the Site investigation and clean up, *an order* directing Norton to pay the costs and expenses incurred by Nashua in connection with the Site to date, and an award of the costs of litigation." *Nashua,* 116 F.Supp.2d at 355 (emphasis added).  Here, Plaintiff does not allege with any clarity the nature of prospective relief it seeks.

26

*past* cleanup effort under RCRA." *Meghrig,* 516 U.S. at 488 (emphasis in original).  In reaching this conclusion, it reasoned that "[u]nlike the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 94 Stat. 2767, as amended, 42 U.S.C. § 9601 *et seq.,* RCRA is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards." *Id.* at 483, citing *General Electric Co. v. Litton Industrial Automation Systems, Inc.*, 920 F.2d 1415, 1422 (8th Cir. 1990) (the "two. . . main purposes of CERCLA" are "prompt cleanup of hazardous waste sites and imposition of all cleanup costs on the responsible party.")  Rather, "RCRA's primary purpose. . .is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the *present and future* threat to human health and the environment.'" *Id.* (emphasis added), quoting 42 U.S.C. § 6902(b).  "Finally, the Court found that RCRA's failure to set a statute of limitations for damages claims or any standard by which to judge the reasonableness of its response costs both sharply contrasted with the response costs provisions of CERCLA and suggested that Congress did not intend RCRA to function as a cost recovery plan for private agents." *Nashua Corp. v. Norton Co.,* 116 F.Supp.2d 330, 358 (N.D.N.Y. 2000), citing *Meghrig*, 516 U.S. at 486.

*Meghrig* expressly did not "consider[] whether a private party could seek to obtain an injunction requiring another party to pay cleanup costs which arise after a RCRA citizen suit has been properly commenced, [] or otherwise recover cleanup costs paid out after the invocation of RCRA's statutory process. . ." 516 U.S. at 488 (internal quotation omitted).  Accordingly, as Plaintiff argues, because it has not spent or incurred any remediation costs or cleanup costs at this point, the relief it seeks is not necessarily barred under *Meghrig*.  There is no binding post-*Meghrig* authority that addresses whether a plaintiff can recover *investigative* costs expended prior to initiation of a RCRA action or whether a plaintiff may seek cleanup costs under RCRA when a remediation plan already is in place at the time of suit.

Case No. CV 06-07164 JF (PVT)
Related Case No. C 10-01606 JF (PVT)
ORDER GRANTING MOTIONS FOR APPROVAL OF SETTLEMENT AND TO DISMISS
(JFLC1)

### i. Investigative costs incurred prior to the filing of the instant action

Defendants argue that recovery of *any* pre-suit costs necessarily is precluded by *Meghrig,* Addressing this precise issue, the court in *Nashua Corp.* concluded that "whether characterized as investigative costs or clean up costs" RCRA "cannot be read to allow an award of [such] damages." 116 F.Supp.2d at 358, citing *Avondale Fed. Sav. Bank v. Amoco Oil Co.,* 170 F.3d 692, 694 (7th Cir. 1999), *cert. denied,* 528 U.S. 922, 120 S.Ct. 284, 145 L.Ed.2d 238 (1999). Recognizing that both *Avondale* and *Nashua* hold that a plaintiff cannot recover investigative costs incurred even after a RCRA suit is filed, but before an injunction has been issued, Plaintiff contends that the instant case is distinguishable because Plaintiff seeks *only* investigative costs and gave notice of its intent to file a RCRA action before expending such costs. RCRA Complaint ¶ 24 (alleging that "Plaintiff provided notice to Rowe of its intent to file a RCRA claim [] on November 13, 2006."). Plaintiff goes on to argue that "[t]here is no logical reason why the defendant should not pay for these costs. The plaintiff could not be expected to seek an injunction before conducting an investigation to develop the facts." Dkt. No. 10 at 8.

However, while there is a certain logic to Plaintiff's argument, the relief intended by Congress under RCRA is solely prospective. This is supported by the reasoning of *Meghrig. See Nashua*, 116 F.Supp.2d at 358 ("[plaintiff's] argument overlooks the most powerful basis for the *Meghrig* opinion-the statutory language. Section 7002(a) simply cannot be read to allow an award of damages, whether for investigative costs incurred or clean up costs incurred."); *see also Express Car Wash Corp. v. Irinaga Bros.*, 967 F.Supp. 1188, 1193 (D. Or. 1997) ("[f]ederal courts addressing the issue have universally held that RCRA citizen suits provide no damages remedy."). Accordingly, because Plaintiff's previously incurred investigative costs cannot be characterized as anything but damages, they are unrecoverable under RCRA.

### ii. Recovery of costs based upon the remediation plan adopted prior to the instant action

"Federal courts addressing the issue have universally held that RCRA citizen suits provide no damages remedy." *Express Car Wash Corp.,* 967 F.Supp. at 1193; *Furrer v. Brown,*

62 F.3d 1092 (8th Cir. 1995); *Walls v. Waste Resource Corp.,* 761 F.2d 311 (6th Cir. 1985); *see also Green Hills (USA) v. Aaron Street, Inc.*, 361 F.Supp.2d 81, 85 (E.D.N.Y. 2005) (citation omitted) ("The statute provides injunctive relief, not damages; as the Supreme Court has ruled..."); *Portsmouth Redevelopment & Housing Auth. v. BMI Apartments Assocs.,* 847 F.Supp. 380 (E.D. Va. 1994); *Polcha v. AT & T Nassau Metals Corp.,* 837 F.Supp. 94 (M.D. Pa. 1993); *Commerce Holding Co. v. Buckstone,* 749 F.Supp. 441 (E.D.N.Y. 1990). Relying upon this authority, numerous courts "ha[ve] held that RCRA does not allow clean-up costs incurred after commencement of the process." *City of Oakland v. Keep on Trucking Company, Inc.*, C 95-03721 CRB, 1998 WL 470465, at *1 (N.D. Cal. July 30, 1998), citing *Express Car Wash Corp.,* 967 F.Supp. at 1194 ( "[T]he Supreme Court's logic in *Meghrig* indicates that, if squarely faced with the question at issue here, it would hold that RCRA does not allow a plaintiff to recover any costs for remediation substantially in place at the time of suit"); *Orange Environment, Inc. v. County of Orange,* 923 F.Supp. 529, 539 (S.D.N.Y. 1996) ("[T]he [*Meghrig*] opinion suggests that the Court would be reluctant to read into the RCRA remedies not clearly provided by Congress"); *Nutrasweet Co. v. X-L Eng'g Corp.,* 926 F.Supp. 767, 771 (N.D. Ill. 1996) (opining that there is no private right of action under RCRA for the recovery of investigation and remediation costs, and that the plaintiff would have to seek such costs by bringing a state law tort claim); *Agricultural Excess and Surplus Ins. Co. v. A.B.D. Tank & Pump Co.,* No. 95 C 3681, 1996 WL 515088, at *2 (N.D. Ill. 1996) (stating that "under the Supreme Court's reasoning in *Meghrig*, this court is compelled to find that plaintiffs also may not recover cleanup costs incurred after the invocation of RCRA's statutory process").

In *Express Car Wash,* the court held not only that costs already incurred were barred under RCRA but also that the "Supreme Court's logic in *Meghrig* indicates that, if squarely faced with the question at issue here, it would hold that RCRA does not allow a plaintiff to recover any costs for remediation *substantially in place* at the time of suit." *Express Car Wash*, 967 F.Supp. at 1194 (emphasis added), citing *Meghrig*, 615 U.S. at 487 (holding that the difference in language between RCRA and CERCLA's costs recovery provisions "amply demonstrate that

1  Congress did not intend for a private citizen to be able to undertake a cleanup and then proceed
2  to recover its costs under RCRA.").  The court reasoned that "plaintiff at this juncture seeks only
3  to recover its present and future costs for an established remediation" and that such relief only
4  can be classified as damages.  *Id.* at 1194.

5      Plaintiff argues that the instant case is distinguishable from *Express Car Wash* because
6  the plaintiff in that case already had engaged in at least some active remediation prior to filing its
7  RCRA claim, while here no remediation has taken place.  Plaintiff cites the district court's
8  comment in *Express Car Wash* that "a plaintiff facing an imminent threat from hazardous waste,
9  when no remediation has yet taken place, clearly can sue under RCRA for an injunction to force
10  appropriate parties to clean up the contamination.  That same plaintiff absolutely *cannot* sue
11  under RCRA if he or she has already cleaned up the waste and only seeks reimbursement." *Id.* at
12  1192 (emphasis in original).

13      However, this dictum does not effect the outcome here.  In fact, the court in *Express Car
14  Wash* reasoned that once an established remediation plan is in place, recovery under RCRA
15  *cannot* be sought because all that remains are unrecoverable monetary damages.  *Id.* at 1194
16  (observing that "plaintiff at [that] juncture seeks only to recover its present and future costs for
17  an established remediation. . .and RCRA, as discussed above, does not provide a damages
18  remedy.")  In the instant case, the Regional Water Quality Control Board approved a remediation
19  plan prior to the filing of the action.  Because the relief sought is based upon a previously-
20  approved remediation plan, the costs properly must be characterized as damages and thus are
21  unrecoverable under RCRA.

22      In *ABB Indus. Systems, Inc. v. Prime Techn., Inc.*, 32 F.Supp.2d 38, 42 (D.Conn. 1998),
23  the court concluded that the plaintiff's RCRA claim fell within an exception identified in *Express
24  Car Wash* and thus pled a claim for recoverable relief.  In *Express Car Wash*, the court
25  commented that, "I would expect that many RCRA citizen suits would continue to be viable if a
26  plaintiff who had begun remediation at a site sued to have defendants install additional
27  remediation systems or perform different required activities than plaintiff had already

28

30

undertaken, *or if a plaintiff sought to have defendants completely take over responsibility for completing a remediation that plaintiff had already begun." ABB Indus.*, 32 F.Supp.2d at 41-42 (emphasis in original), quoting *Express Car Wash*, 967 F.Supp. at 1194 n. 5.  Although Plaintiff's claim as presently pled does not fall within this exception, it is conceivable that Plaintiff may be able to plead a claim for prospective relief recoverable under RCRA.[14]

### 2. Declaratory relief claim

The parties do not dispute that Plaintiff's claim for declaratory relief depends upon the viability of its claim for relief under RCRA.

### III.  ORDER

Good cause therefore appearing, the motions for approval of settlement in case number 06-7164 are GRANTED, and the motion to dismiss case number 10-1606 is GRANTED with leave to amend.

IT IS SO ORDERED.

DATED: 8/11/2010

_____
JEREMY FOGEL
United States District Judge

---

[14]  Plaintiff also cites *Gilroy Canning* for the proposition that even after a remediation plan has been approved, a plaintiff may seek an order from the court requiring a defendant to pay response costs.  However, *Gilroy Canning* did not address the issues now before the Court or the holding in *Express Car Wash*.

31