\*\*E-Filed 9/19/2011\*\*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| TYCO THERMAL CONTROLS LLC,<br>　　　　　Plaintiff,<br>　v.<br>REDWOOD INDUSTRIALS, *et al.*,<br>　　　　　Defendants.<br>ROWE INDUSTRIES, INC.,<br>　　　　　Counter-Claimant,<br>　v.<br>TYCO THERMAL CONTROLS, LLC,<br>　　　　　Counter-Defendant<br>―――――――――――――――――――<br>TYCO THERMAL CONTROLS LLC,<br>　　　　　Plaintiff,<br>　v.<br>ROWE INDUSTRIES, INC.,<br>　　　　　Defendant. | Case No. 5:06-cv-07164 JF (PSG)<br><br>**ORDER[1] RE CROSS MOTIONS FOR PARTIAL SUMMARY ADJUDICATION**<br>[Re: Docket Nos. 311, 323, 324]<br><br><br><br><br><br>Related Case No. 5:10-cv-01606 JF (PSG) |

　　　Plaintiff Tyco Thermal Controls LLC ("Tyco") and Defendant Rowe Industries, Inc. ("Rowe") have filed cross-motions for summary judgment. Having considered the parties' submissions and the oral arguments of counsel presented at the hearing on July 29, 2011, the Court will dispose of the motions as follows.

―――――――――――

[1] This disposition is not designated for publication in the official reports.

# I. BACKGROUND

## A. Factual History

Tyco filed suit against Redwood Industries ("Redwood"), *et al.*[2] on November 17, 2006, seeking recovery of remediation costs in connection with a contaminated property now owned by Tyco located at 2201 Bay Road in Redwood City, California ("the Property"). FAC ¶ 1. Redwood owned the Property until 1973, when it was sold to Tyco's predecessor-in-interest Raychem Corporation ("Raychem"). *Id.* at ¶ 2. During Redwood's ownership, sublessor Hill Industries, Inc. ("Hill") manufactured electrical transformers on the Property. *Id.* at ¶ 8. Tyco asserts that the transformer manufacturing process resulted in the release of polychlorinated biphenyls ("PCBs") at the Property, and that Rowe is responsible for this contamination as a successor-in-interest to Hill. *See Id.* at ¶¶ 8, 13.

## B. Procedural History

Tyco filed the FAC on January 15, 2007, seeking: (1) response costs and contribution pursuant to §§ 107(a)(1-4)(B) and 113(f) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601, *et seq*. ("CERCLA"); (2) injunctive relief pursuant to the Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901, *et seq*., 6972; (3) declaratory relief; and (4) relief pursuant to related state law claims not at issue here. On October 29, 2009, Tyco moved for leave to file a second amended complaint ("SAC") adding claims against Rowe under California law for continuing nuisance and continuing trespass and dismissing without prejudice its claim for relief under RCRA based upon its failure to comply with RCRA's pre-suit notice requirement. On December 14, 2009, the Court granted Tyco's motion to withdraw the RCRA claim without prejudice and determined that the FAC,

---

[2] Rowe was added as a defendant in Tyco's first amended complaint ("FAC").

2

absent the RCRA claim, would remain the operative pleading.[3] Order Granting in Part and Denying in Part Motion for Leave to Amend Complaint and File Second Amended Complaint, Dkt. 101.[4]

On March 2, 2010, Tyco again moved to amend its pleading to allege a RCRA claim against Rowe. The Court denied that motion, concluding that the proposed amendment would not cure Tyco's failure to comply with RCRA's jurisdictional notice requirement. Order Re Pending Motions, Dkt. 180. Tyco subsequently filed Case No. 10-cv-01606 (the "RCRA Action") in order to assert the RCRA claim against Rowe in accordance with the proper statutory procedure.[5] As a result of the Court's approval of settlements between Tyco and all other defendants, Tyco and Rowe are the only remaining parties in the related actions. Order Granting Motions for Approval of Settlement and to Dismiss, Dkt. 233

With respect to its CERCLA claim, Tyco seeks summary judgment as to Rowe's status as an operator at the Property at the time of the PCB discharge, as well as Rowe's liability for response costs. As to its RCRA claim, Tyco seeks summary judgment regarding Rowe's contribution to the use and disposal of PCBs at the Property, as well as Tyco's right to injunctive relief.

By its cross-motions, Rowe seeks determinations that as a matter of law: (1) Tyco has failed to show that Rowe is a covered person under CERCLA; (2) if Rowe is found liable under CERCLA, Redwood must assume Rowe's share of liability because of a mutual release executed between Redwood and Rowe's predecessor-in-interest; and (3) Tyco's RCRA claim is subject to dismissal because a remedial action plan was substantially in place before suit was filed;

---

[3] The motion was denied with respect to Tyco's proposed nuisance and trespass claims. Dkt. 101 at 6.

[4] All citations to the docket refer to Case No. 06-cv-07164 unless otherwise indicated.

[5] On April 26, 2010, the Court related Case No. 06-cv-07164 and Case No. 10-cv-01606. Order Granting Administrative Motion to Relate Cases, Dkt. 185.

3

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson,* 477 U.S. 242, 248-49; *Barlow v. Ground,* 943 F.2d 1132, 1134-36 (9th Cir. 1991). However, "[a] non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

## III. ANALYSIS

**A. CERCLA**

    **1. Liability**

To prevail on its CERCLA claim, Tyco must prove: (1) that the site in question is a "facility"; (2) that Rowe is a "responsible person"; (3) that a release or threatened release of hazardous substance has occurred; and (4) that the release or threatened release has caused Tyco to incur response costs. *See* 42 U.S.C. § 9607. Courts have interpreted these elements as requiring proof that the defendant owned or operated the facility *at the time of the disposal. See, e.g., United States v. Burlington Northern & Santa Fe Ry Co.*, 520 F.3d 918, 938 (9th Cir. 2008),

4

Case No. 5:06-cv-07164 JF (PSG)
Related Case No. 5:10-cv-01606 JF (PSG)
ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY ADJUDICATION
(JFLC1)

*rev'd on other grounds*, 129 S.Ct. 1870 (2009) ("CERCLA requires a *connection* . . . that the [potentially responsible party ("PRP")] be a landowner 'at the time of disposal'") (emphasis in original)(citing 42 U.S.C § 9607(a)(2)); *City of Wichita v. Trs. of the Apco Oil Corp. Liquidating Trust*, 306 F. Supp. 2d 1040, 1054-55 (D. Kan. 2003).

The parties dispute whether Rowe may be considered a PRP. Tyco asserts that Rowe must be a responsible party because: (1) it is undisputed that Hill manufactured transformers at the Property between 1965 and 1971; (2) PCB fluids historically have been used to manufacture transformers; (3) shipping records indicate that 400,000 pounds of PCB transformer fluids containing chlorinated benzenes were shipped by the Monsanto Company to Hill between 1965 and 1971; (4) sampling studies show that chlorinated benzenes are present in the paint and concrete at the Property; and (5) Tyco's experts have opined that the chlorinated benzenes could have come only from the PCB transformer fluids shipped by Monsanto, and that the distribution of PCB concentration in the soil is consistent with the loading dock area being a primary point of release. Delfino Decl. ISO Opp. to Rowe Mot. for Summary Judgment at ¶ 3, Dkt. 318.

Rowe argues that Tyco's cumulative evidence is too attenuated to prove that a release occurred, let alone that a release occurred on Rowe's watch. However, although Rowe asserts that CERCLA liability generally must be proved by direct evidence, there is persuasive authority that CERCLA claims can be resolved by the type of circumstantial evidence produced by Tyco here. *See, e.g.*, *Tosco Corp. v. Koch Indus.*, 216 F.3d 886, 892 (10th Cir. 2000) (finding circumstantial evidence of contamination occurring during defendant's ownership or operation sufficient to prove liability); *Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 547 (6th Cir. 2001) ("there is nothing objectionable in basing findings solely on circumstantial evidence, especially where the passage of time has made direct evidence difficult or impossible to obtain.").

**a. Monsanto Shipping Records**

Rowe contests the admissibility of the Monsanto records, arguing that the records have not been authenticated by an individual with personal knowledge of the documents in question.

5

*See* Fed. R. Evid. 803(6). Although Tyco attempts to establish a foundation through the deposition testimony of former Monsanto employee Sharon Locke, Rowe claims that this testimony is insufficient because Locke was not the custodian of records, but instead worked with invoices similar to those offered as evidence. Ex. A. to Boone Decl. ISO Rowe December 2010 Mot. for Summary Judgment ("Locke Depo.") at 63:11-64:11, Dkt. 284. Rowe also points out that Locke is unable to confirm who actually authored the records. *Id.* at 62:19-63:20, 80:15-23.

The Ninth Circuit has held that business records may be authenticated by the custodian of records *or* another qualified witness. *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990) ("The phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system."). Although it indicated in a previous order that the records *could* be authenticated by Monsanto's custodian of records, the Court did not preclude Tyco from using another qualified witness. Order Re Pending Motions, Dkt. 180 at 7-8 ("authenticity of the records still may be established going forward by way of a deposition of Monsanto's custodian of records."). Rowe argues alternatively that there is no way of knowing that the records are complete because Locke cannot explain the lack of shipping information and delivery methods in certain documents. Locke Depo. at 74:20-75:23, 85:6-86:18. However, this argument goes to the weight that should be attributed to the records, not to their admissibility.

**b. Alternative Contamination Theories**

Through sworn affidavits and deposition testimony, Rowe's experts Dr. Richard Richter and Dr. Gabriel Sabadell have indicated that the subject contamination likely is the result of three contributing factors: (1) Tyco's manufacture at the Property of a product known as "44 wire"; (2) historical railroad operations; and (3) surface paint at the Property. *See* Richter Decl. ISO Opp. to Tyco Mot. for Partial Summary Judgment ("Richter Decl."), Dkt. 332; Ex. G to Boone Decl. ISO Opp. to Tyco Motions for Partial Summary Judgment ("Sabadell Depo."), Dkt. 336.

Tyco admits that it formulated a PCB-containing compound known as "Viscol" in order to manufacture "44 wire" at the Property between 1975 and 1976. Shell Decl. ISO Tyco Motions

6

Case No. 5:06-cv-07164 JF (PSG)
Related Case No. 5:10-cv-01606 JF (PSG)
ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY ADJUDICATION
(JFLC1)

for Partial Summary Judgment at ¶¶ 14, 23, Dkt. 325. According to Tyco employee Kenneth Shell, plastic pellets were manufactured using liquid "Viscol" at a Menlo Park facility owned by Tyco. *Id.* at ¶ 18. The pellets then were shipped to the Property, where they were melted and extruded onto wire to create "44 wire." *Id.* at ¶ 19. After the extrusion process, the wire was subjected to radiation to destroy the PCBs. *Id.* at ¶ 20. Although Tyco argues that the use of non-liquid PCBs could not have contributed to contamination at the Property, Dr. Richter opines that PCBs easily could have been released into the atmosphere during the extrusion process. Richter Decl. at ¶ 4. He goes on to conclude that such a release could have resulted in PCB settlements on surfaces throughout the building. *Id.*

Dr. Sabadell also suggests that railroad activities adjacent to the Property are responsible for much of the contamination, as evidenced by the comparatively high levels of PCBs found along the rail spur. Ex. A to Boone Decl. ISO Opp. to Tyco December 2009 Mot. for Summary Judgment ("Sabadell Decl."), Dkt. 121. Rowe argues that this theory is bolstered by a report submitted by Tyco to the California Environmental Protection Agency, admitting that the railroad industry has used and disposed of "significant quantities of PCBs over time." Ex. B to Boone Decl. ISO Opp. to Tyco Motions for Summary Judgment (April 2, 2004 Soil Sampling Plan: Railroad Right-of-way South of the Tyco Facility, at 8), Dkt. 333. Tyco challenges Dr. Sabadell's opinion, arguing that it lacks supporting facts and is entirely speculative. Specifically, Tyco contends that there is an analytical gap connecting historical railroad operations, which have involved the use of PCBs, with the use of PCBs in the railroad operations at the Property. However, if PCB use within the railroad industry was as prevalent as Dr. Sabadell and Tyco seem to acknowledge, then it does not defy logic to infer that the railroad operations adjacent to the Property also may have involved the use of materials containing PCBs.

Even without Dr. Sabadell's opinion, there is at the very least an issue of fact as to whether railroad operations on the Property led to the contamination in question. Tyco's former environmental consultant, Roy Litzenberg, testified during his deposition that PCB releases along the railroad right-of-way occurred at some point between 1961 and 1969 based upon aerial

7

photographs showing staining along the right-of-way. *Id.* at Ex. D ("Litzenberg Depo.") at 86:3-21, Dkt. 336. Although Tyco highlights that this time period is consistent with Hill's ownership of the Property, it does not follow that the contamination necessarily must have resulted from Hill's use of PCBs. Tyco has not shown why it would be unreasonable to conclude that railroad operations unrelated to Hill's use of the Property could have caused the contamination.

Litzenberg also testified that he received reports of flooding at the Property from rain water collected near the railroad easement. *Id.* at 67:13-17. Tyco argues correctly that this evidence constitutes inadmissible hearsay because Litzenberg had no direct knowledge of the alleged flooding. However, even if Litzenberg's testimony is inadmissible, Rowe has produced independent evidence from the owner of a facility neighboring the Property who testified that Tyco eventually installed a catch basin and pump to process accumulating rain water. *Id.* at Ex. E ("Andrus Depo.") at 22:14-25, Dkt. 336.

Finally, Rowe points to evidence that Tyco's predecessor-in-interest painted the facility shortly after taking ownership in 1973. *Id.* at Ex. A (Letters dated Apr. 3, 1973 and Apr. 14, 1973, announcing Raychem's plans to paint the building "inside and out" immediately after taking possession of the Property), Dkt. 333. Rowe asserts that the high levels of PCBs contained in paint during the 1970s could account for the current presence of PCBs on the building's surfaces. Richter Decl. at ¶ 7.

Taken together, the evidence produced by the parties demonstrates that there are issues of fact still to be resolved. Although Tyco theoretically could prove that Rowe is a responsible party based on the circumstantial evidence Tyco has provided, Rowe has rebutted that evidence with credible facts and expert opinion. Accordingly, the issue of Rowe's CERCLA liability is not appropriate for summary adjudication and must proceed to trial.

**2. Damages**

Rowe contends alternatively that in the event it is found liable under CERCLA, Tyco must absorb Rowe's share of liability. Rowe points out that Redwood indemnified it from all future claims in a sublet termination contract executed in 1973 between Redwood and Rowe's

8

predecessor-in-interest, sub-lessor Coleman Cable & Wire Company ("Coleman");[6] that the Court has concluded that the proportionate share method applies to the CERCLA claims brought under § 113(f) in the instant case;[7] and that the Court already has determined that Tyco is a PRP and that Tyco bears the risk of Redwood's responsibility beyond the dollar amount of the Redwood settlement.[8]

Tyco argues that Rowe's analysis is based on a false assumption, claiming that the Redwood contract in fact was never signed. Ex. F to Boone Decl. ISO Rowe December 2010 Mot. for Summary Judgment, Dkt. 253. Rowe does not dispute that the only copy of the contract that it has produced is unsigned. However, it contends that there is ample evidence that the contract was executed, including a $90,000 payment made by Coleman to Raychem in order to compensate Raychem for the repair, modification, and restoration of the Property. *See Id.* at Exs. D-G. Rowe asserts that this payment not only evidences the indemnity agreement but also demonstrates that Rowe has paid its fair share toward remediation of the Property.

It appears that there may be a triable issue of fact as to the effect of the indemnity agreement. However, because Rowe's liability under CERCLA remains unresolved, it would be premature for the Court to determine Rowe's responsibility, if any, for statutory damages.

**B. RCRA**

Damages are not available under RCRA. As the Court has noted previously, RCRA "is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards." Order Granting Motions for Approval of Settlement and to Dismiss at 19, Dkt. 233 (quoting *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996)). *Express Car Wash v. Irinaga Bros.*, 967 F.Supp. 1188, 1193 (D. Or.

---

[6] Ex. F to Boone Decl. ISO Rowe December 2010 Mot. for Summary Judgment, Dkt. 253.

[7] Order Granting Motions for Approval of Settlement and to Dismiss, Dkt. 233.

[8] *Id.* n. 7.

9

1997) held that as interpreted in *Meghrig*, "RCRA does not allow a plaintiff to recover any costs for remediation *substantially in place* at the time of suit." (emphasis added), citing *Meghrig*, 615 U.S. at 487 (holding that the difference in language between RCRA and CERCLA's costs recovery provisions "amply demonstrate[s] that Congress did not intend for a private citizen to be able to undertake a cleanup and then proceed to recover its costs under RCRA."). Unlike the relief provisions contained in CERCLA, "[t]he primary relief available to a private party under RCRA is a mandatory injunction, i.e., one that orders a responsible party to 'take action' by attending to the cleanup and proper disposal of toxic waste, or a prohibitory injunction, i.e., one that 'restrains' a responsible party from further violating RCRA." *Gilroy Canning Company, Inc. v. California Canners and Growers*, 15 F. Supp. 2d 943, 945 (N.D. Cal. 1998), quoting *Meghrig,* 516 U.S. at 484. Here, Tyco seeks injunctive relief to compel Rowe to pay for future cleanup costs at the Property. Alternatively, Tyco requests an injunction ordering Rowe to take over the remediation in its entirety.[9]

   Relying upon *Express Car Wash*, Rowe contends that neither form of relief is proper as a matter of law because a remediation plan already was in place at the time suit was filed. The California Regional Water Quality Control Board ("CRWQCB") approved a Remedial Action Plan and a Remedial Design/Remedial Action Work Plan for the Property on October 9, 2009 and January 20, 2010, respectively. Request for Judicial Notice ISO Rowe Mot. to Dismiss, Exs. A-B, Case No. 10-cv-01606 Dkt. 8. Tyco did not file its RCRA Action until April 14, 2010. Following adoption of the remedial action plan by the CRWQCB, Tyco sought approval of the plan from the Environmental Protection Agency ("EPA").[10] The EPA granted conditional

---

[9] Tyco sought damages in its original RCRA complaint, and the Court granted Rowe's motion to dismiss, with leave to amend. Order Granting Motions for Approval of Settlement and to Dismiss, Case No. 10-cv-01606 Dkt. 17. Tyco then filed an amended complaint requesting only injunctive relief. Case No. 10-cv-01606, Dkt. 18.

[10] While the plan was under review, Rowe moved to dismiss Tyco's first amended complaint in the RCRA Action. The Court denied Rowe's motion without prejudice, indicating that without an EPA ruling, it would not be possible to determine whether Tyco's remedial plan

10

Case No. 5:06-cv-07164 JF (PSG)
Related Case No. 5:10-cv-01606 JF (PSG)
ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY ADJUDICATION
(JFLC1)

approval of the plan on January 4, 2011. Ex. I to Boone Decl. ISO Rowe Mot. for Summary Judgment (Letter dated January 4, 2011, from the EPA to Tyco Re Conditional Approval ("EPA Approval Letter")), Dkt. 312.

Tyco argues that the CRWQCB plan cannot be considered "substantially in place" at the time of suit because the plan was subject to EPA approval pursuant to the Toxic Substances Control Act, 15 U.S.C. § 2601, *et seq.* ("TSCA") and 40 CFR § 761.61 promulgated thereunder. However, this argument contradicts previous assertions made by Tyco itself. In a brief submitted after it sought approval from the EPA, Tyco made several references to the fact that the CRWQCB "has approved a plan of remediation," and acknowledged that "Tyco is proceeding under an approved plan." Opp. Br. to Rowe Mot. to Dismiss at 3, Case No. 10-cv-01606 Dkt. 10.

Under the TSCA, PCB remediation may be conducted in one of three ways: self-implementing on-site cleanup, performance-based disposal, or risk-based disposal. 40 CFR § 761.61(a)-(c). It is clear from the regulations that agency approval is required for risk-based disposals. § 761.61(c) "No person may conduct cleanup activities under this paragraph prior to obtaining written approval by EPA." However, the approval requirement for self-implementing cleanup proposals is less firm. § 761.61 (a). Under § 761.61(a)(3)(ii), notice of the remediation plan must be given to the EPA, and "[i]f the EPA Regional Administrator does not respond within 30 calendar days . . . the person submitting the notification may assume that it is complete and acceptable and proceed with the cleanup . . ."

Here, Tyco elected to conduct self-implementing disposal of the PCBs found at the Property. EPA Approval Letter at 2 ("[Tyco] submitted the PCB Cleanup Notification under 40 CFR § 761.61(a)."). Under these circumstances, it is somewhat disingenuous for Tyco to argue that EPA approval was *required* prior to implementation of the CRWQCB plan. Nonetheless,

---

was "substantially in place" for the purposes of barring RCRA recovery under *Express Car Wash*. Order Denying Motion to Dismiss, Case No. 10-cv-01606 Dkt. 32.

11

because Tyco provided defective notice of the plan to the EPA, the thirty-day response provision was deemed waived, and Tyco could not commence cleanup prior to receiving a response from the EPA. *Id.* at 1. Additionally, in a departure from what Tyco had intended, the agency chose to approve the plan under a hybrid approach, requiring both a self-implementing and risk-based disposal. *Id.* at 4. However, regardless of how the CRWQCB plan was approved, the fact remains that indeed it was approved, and with relatively minor changes,[11] and it is reasonable to conclude that a plan was in place at the time Tyco filed its RCRA claim.

As the Court has acknowledged, even when a plan is substantially in place at the time of suit, *Express Car Wash* permits plaintiffs to seek an injunction requiring defendants to assume responsibility for completing remediation:

> [M]any RCRA citizen suits would continue to be viable if a plaintiff *who had begun remediation* at a site sued to have defendants install additional remediation systems or perform different required activities than plaintiff *had already undertaken*, or if a plaintiff sought to have defendants completely take over responsibility for completing a remediation that plaintiff *had begun*.

Order Granting Motions for Approval of Settlement and to Dismiss at 30-31 (quoting *Express Car Wash*, 967 F. Supp. at 1194 n. 5.) (emphasis added). In *ABB Indus. Sys., Inc. v. Prime Technology, Inc.*, 32 F. Supp. 2d 38, 42 (D. Conn. 1998), the court concluded that injunctive relief was warranted under the *Express Car Wash* exception because plaintiff began remediation after filing suit and cleanup was not yet complete.

In this case, however, Tyco concedes that no physical remediation has taken place. FAC ¶ 13; Opp. Br. to Rowe December 2010 Mot. for Summary Judgment at 16 ("In the instant case, no cleanup has begun–no dirt has been moved, nothing has yet been remediated."), Dkt. 258. Arguably, the *Express Car Wash* exception could be extended to situations in which remediation is deemed to have "begun" once a cleanup plan has received regulatory approval, but such an

---

[11] The EPA has directed Tyco to: (1) conduct additional soil sampling; (2) demonstrate that sampling has been conducted with an adequate number of samples; (3) provide an estimate of the number of concrete samples that would be collected to characterize concrete for on-site and off-site disposal; and (4) erect a physical barrier to separate the soil on the northern boundary of the Property from the railroad spur. *Id.* at 1.

12

Case No. 5:06-cv-07164 JF (PSG)
Related Case No. 5:10-cv-01606 JF (PSG)
ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY ADJUDICATION
(JFLC1)

interpretation of *Express Car Wash* then could be used as an end-run around RCRA's bar to damages, allowing plaintiffs to obtain approval of a remediation plan and thereafter seek a court order requiring defendants to "take over" the remediation.

There is no binding authority with respect to this issue. *Meghrig* did not address this precise question, nor did the cases relied upon by Tyco in its moving papers. *See Continental Carbon Co., Inc. v . Am. Int'l Specialty Lines Ins. Co.*, No. H-05-1187, 2006 U.S. Dist. LEXIS 33545, *41 (S.D. Tex. May 23, 2006); *City of Waukesha v. Viacom Int'l, Inc.*, 362 F. Supp. 2d 1025 (E.D. Wis. 2005); *Spillane v. Commonwealth Edison Co.*, 291 F. Supp. 2d 728 (N.D. Ill. 2003); *ABB Indus.*, 32 F. Supp. 2d 38; *PMC, Inc. v. Sherwin-Williams Co.*, No. 93 C 1379, 1997 U.S. Dist. LEXIS 6013, *37 (Apr. 23, 1997), *aff'd,* 151 F.3d 610 (7th Cir. 1998) (ruling issued prior to *Express Car Wash*). This Court finds the reasoning of *Express Car Wash* persuasive. Based on the plain language of the exception outlined in that decision, it is clear that injunctive relief is not available when abatement of the contamination has not yet begun. Because no remediation has occurred at the Property, the Court concludes that Tyco is not entitled to injunctive relief under RCRA.[12]

//
//
//
//
//
//

---

[12] Tyco is not without recourse. RCRA does not preempt state law tort claims premised upon facts similar to those giving rise to a RCRA claim. *See, e.g., Nutrasweet Co. v. X-L Eng'g Corp.,* 926 F. Supp. 767, 771 (N.D. Ill. 1996) ("[T]he court disagrees that Plaintiffs are barred by RCRA from bringing a state law tort claim premised on facts similar to those which might also violate RCRA. . . . RCRA is mere evidence, to be used at trial, which could establish to a jury or judge that a duty existed and that the failure to meet RCRA requirements constitutes a breach of that duty.").

13

Case No. 5:06-cv-07164 JF (PSG)
Related Case No. 5:10-cv-01606 JF (PSG)
ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY ADJUDICATION
(JFLC1)

## IV. ORDER

Good cause therefor appearing, summary judgment is GRANTED in favor of Rowe as to Tyco's claim for relief under RCRA. Summary judgment is DENIED as to Tyco's CERCLA claim.

IT IS SO ORDERED.

DATED: September 19, 2011

_____
JEREMY FOGEL
United States District Judge

Case No. 5:06-cv-07164 JF (PSG)
Related Case No. 5:10-cv-01606 JF (PSG)
ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY ADJUDICATION
(JFLC1)