1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                        OAKLAND DIVISION

9

10   TYCO THERMAL CONTROLS, LLC,              Case No:  C 06-7164 SBA
                                                        C 10-1606 SBA
              Plaintiff,
11                                            **ORDER RE MOTIONS IN LIMINE**

        vs.                                   Docket 398, 399, 400, 431
12
     REDWOOD INDUSTRIALS, LLC., et al.,
13
              Defendants.
14

15

16        Tyco Thermal Controls, LLC ("Tyco") filed the instant action against Rowe

17   Industries, Inc., ("Rowe"), among others, for recovery of response costs and contribution

18   pursuant to the Comprehensive Environmental Response, Compensation and Liability Act

19   of 1980 ("CERCLA").  A five day bench trial is scheduled to commence on July 16, 2012.

20        The parties are presently before the Court on:

21        1.    Plaintiff Tyco's Motion in Limine No. 1 to Exclude Evidence of Unsigned

22   Release, Dkt. 399;

23        2.    Plaintiff Tyco Motion in Limine No. 2 to Exclude Opinions of Dr. Gabriel

24   Sabadell and Dr. Richard Richter re Railroads, Dkt. 400, 431; and

25        3.    Defendant Rowe's Motion in Limine to Exclude Plaintiff's Monsanto

26   Shipping Records, Dkt. 398.[1]

27   _____

          [1] Court addressed Defendant Rowe's Motion in Limine to Exclude Plaintiff's
28   Undisclosed Expert Witnesses in a separate order.  Dkt. 429.

Having read and considered the papers filed in connection with this matter and being fully informed, the Court DENIES all of the foregoing motions.  The Court, in its discretion, finds these matters suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.   BACKGROUND

The instant action arises from a dispute over who is responsible for remediation costs associated with real property located at 2201 Bay Road, Redwood City, California ("the Property"), which is contaminated with Polychlorinated Biphenyls ("PCBs").  The Property is now owned by Tyco.

In or about 1955, the Property was owned by Redwood Industrials, LLC, which no longer is a party to this action.  In 1962, Redwood leased the Property to Carlisle Corporation ("Carlisle").  From 1965 to mid-1973, Carlisle subleased the Property to Hill Magnetics ("Hill").  In 1968, Coleman Cable & Wire Company ("Coleman") acquired Hill's stock.  Defendant Rowe is the successor-in-interest to Coleman.

In March 1973, Redwood sold the Property to Raychem Corporation ("Raychem"), Tyco's predecessor-in-interest.  The sale was memorialized in a Real Property Exchange Agreement ("Exchange Agreement"), which specified that the Property was "to be delivered to Raychem 'as is,' and it is expressly understood that Redwood shall have no obligation now or hereafter to make any repair, modification or restoration of [the Property]."  Pl.'s Mot. in Limine No. 1, Ex. A at 4, Dkt. 399.  As a condition of Raychem's obligations under the Exchange Agreement, the tenant of the Property (i.e., Coleman) was to pay Raychem "on or before April 30, 1973 . . . the sum of $90,000 cash for such repair, modification and restoration [of the Property] by Raychem as Raychem shall deem appropriate and for Raychem's sole and exclusive benefit."  Id. at 4.

The operative pleading is the First Amended Complaint ("FAC") filed on January 15, 2007.  Dkt. 4.  The FAC alleges eight claims for relief:  (1) recovery of response costs under CERCLA; (2) contribution under CERCLA; (3) injunctive relief under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B); (4) declaratory

1  relief under federal law; (5) response costs under California Health and Safety Code

2  §§ 25300, et seq.; (6) comparative equitable indemnity under state law; (7) declaratory

3  relief under state law; and (8) attorney's fees under California Code of Civil Procedure

4  § 1021.5.  Rowe was joined as a party-defendant in the FAC.

5       The action initially was assigned to the Honorable Jeremy Fogel.  On September 19,

6  2011, Judge Fogel ruled on the parties' cross-motions for summary judgment.  Dkt. 344.  In

7  particular, he granted summary judgment in favor of Rowe on Tyco's RCRA claim, but

8  denied summary judgment as to its claim under CERCLA.  Id.  All parties except Tyco and

9  Rowe have since reached a settlement in this action.  Dkt. 233.

10      On September 28, 2011, the case was reassigned to the undersigned due to Judge

11  Fogel's departure from this Court.  Dkt. 347.  A bench trial involving Tyco's claims against

12  Rowe is scheduled to commence on July 16, 2012.  Dkt. 427.  In anticipation of trial, the

13  parties have filed various motions in limine, which are discussed below.[2]

14  **II.**    **DISCUSSION**

15        A.    **PLAINTIFF TYCO THERMAL CONTROLS, LLC'S MOTION IN LIMINE NO. 1
             TO EXCLUDE EVIDENCE OF UNSIGNED RELEASE**
16

17      As noted, Redwood sold the Property to Raychem in 1973 at a time when Property

18  was subleased to Hill (which was owned by Coleman).  In order to effectuate the sale of the

19  Property, Redwood terminated Coleman's sublease.  The terms of the termination allegedly

20  were memorialized in an Agreement and Mutual Release ("Release Agreement").  Pl.'s

21  Mot. Ex. B.  The Release Agreement states that its purpose "is to settle all rights and

22  obligations which may exist between Lessor and Sublessee at the date hereof and to

23
─────────────────
24      [2] The Court's Order for Pretrial Preparation specifies that:  "All motions in limine
   shall be set forth in a single memorandum, not to exceed ten (10) pages in length.
   Responses to the motions in limine shall be set forth in a single memorandum, not to
25  exceed ten (10) pages in length.  Reply briefs shall not exceed six (6) pages."  Dkt. 426.  In
   violation of that Order, Tyco filed two separate motions in limine, totaling nineteen pages
26  in length.  Tyco also filed two reply briefs, totaling eighteen pages in length.  Despite
   Tyco's blatant transgressions of the Court's scheduling order, the Court, in the interest of
27  expediting this matter, will consider Tyco's motions on the merits.  Tyco is warned that
   further violations of any Court order may result in the imposition of sanctions, up to and
28  including dismissal of the action.

1   effectuate a mutual general release between said parties." Id. at 3.  To that end, the

2   Agreement contains the following indemnification provision:

3   > Upon this Agreement becoming effective, each party hereby
   > agrees to hold the other free and harmless of, and defend

4   > against, any claims of any nature whatsoever, including without
   > limitation in connection with said Sublease, which may

5   > hereafter be made by or through any of the following
   > companies related to the other:

6

7   > COMPANIES RELATED TO Sublessee:  Pacific
   > Transformer Company, Hill Magnetics Inc. and Hill
   > Industries Inc.

8

9   Id.  Rowe contends that under the foregoing provision, Redwood agreed to indemnify it

10   from any claims for damages arising out of its use of the Property.  Tyco now moves to

11   preclude Rowe from admitting the Release Agreement into evidence at trial.

12   **1.     Analysis**

13        Tyco first contends that the Release Agreement should be excluded at trial on the

14   grounds that liability under CERCLA cannot be contractually shifted from one party to

15   another, and that Rowe's interpretation of the indemnification clause is untenable.  These

16   arguments, however, are not appropriate for resolution through a motion in limine.

17   Typically, in limine motions are used to exclude inadmissible or prejudicial evidence

18   before it is actually offered in order to avoid undue prejudice in jury trials.  See Brodit v.

19   Cabra, 350 F.3d 985, 1004-05 (9th Cir. 2003) (noting that in limine motions "allow parties

20   to resolve evidentiary disputes ahead of trial, without first having to present potentially

21   prejudicial evidence in front of a jury.").  Here, the likelihood of such potential prejudice is

22   ameliorated by the fact that this case involves a court trial, as opposed to a jury trial.

23   Moreover, Tyco's arguments relate to the substantive merit of Tyco's claim for damages

24   against Rowe, which is outside the purview of a motion in limine.  See Natural Res.

25   Defense Council v. Rodgers, No. CIV-S-88-1658 LKK, 2005 WL 1388671, at *1 n.2 (E.D.

26   Cal, June 9, 2005) ("[m]otions in limine address evidentiary questions and are inappropriate

27   devices for resolving substantive issues.") (citing 75 Am.Jur.2d Trial § 99 (2004)).

28

1    Next, Tyco argues that the copy of the Release Agreement proffered by Rowe is

2    unsigned and cannot be considered as evidence.  Tyco unsuccessfully made the same

3    argument in opposition to Rowe's earlier motion for summary judgment.  Dkt. 317 at 9.

4    Judge Fogel rejected Tyco's contention, noting that there is circumstantial evidence that the

5    Release Agreement was executed by the parties thereto.  See 9/19/11 Order re Cross Mots.

6    for Partial Summ. Adjudication at 5-6 ("9/19/11 Order"), Dkt. 344.  Accordingly, Judge

7    Fogel ruled that "there may be a triable issue of fact as to the effect of the indemnity

8    agreement."  Id.  Tyco has not sought leave to file a motion for reconsideration of that

9    determination, as required by Civil Local Rule 7-9, nor has Tyco demonstrated that Judge

10   Fogel's ruling is erroneous.

11   Notwithstanding Judge Fogel's prior order, the Court independently finds Tyco's

12   argument unpersuasive on the merits.  The mere fact that the Release Agreement is

13   unsigned does not ipso facto render it inadmissible.  Under Rule 901(a) of the Federal

14   Rules of Evidence, an item is admissible where the proponent "produce[s] evidence

15   sufficient to support a finding that the item is what the proponent claims it is."  Here, the

16   copy of the Release Agreement in dispute was produced during discovery by the law firm

17   of Morrison & Foerster, which represented Coleman during the 1970's.  See Boone Decl.

18   ¶¶ 2, 4, Dkt. 317.  Marshall Small, Senior Counsel with Morrison & Foerster, received a

19   request from Rowe's counsel for documents pertaining to the firm's representation of

20   Coleman.  Small Decl. ¶ 3, Dkt. 312.  After Rowe's counsel provided evidence of

21   authorization from Rowe for the release of such records, Mr. Small submitted the request to

22   the firm's historical records department.  Id.  Mr. Small made the records available to

23   Rowe's counsel at Morrison & Foerster's offices.  Id. ¶¶ 4-5.  During the course of his

24   review, counsel selected various documents, including the Release Agreement, which Mr.

25   Small had copied and delivered to Rowe's counsel.  Id.  Mr. Small's declaration is

26   sufficient to demonstrate that the copy of the document proffered by Rowe is what it is

27   purported to be; i.e., a copy of an unsigned Release Agreement found in the files of

28   Coleman's former counsel.  See Fed. R. Evid. 901(b)(1) (authentication through

1   "[t]estimony that an item is what it is claimed to be").  That the copy of the Release

2   Agreement is unsigned goes to the weight, as opposed to the admissibility, of the

3   document.

4         In sum, the Court is not persuaded that exclusion of the Release Agreement is

5   warranted.  Accordingly, Tyco's Motion in Limine No. 1 to Exclude Evidence of Unsigned

6   Release is DENIED.  The Court's ruling does not relieve Rowe of its obligation to establish

7   a proper foundation for the admission of the Release Agreement at trial, nor is it intended to

8   deprive Tyco of its right to object to such evidence. [3]

9         **B.    PLAINTIFF TYCO THERMAL CONTROLS, LLC'S MOTION IN LIMINE NO. 2
              TO EXCLUDE OPINIONS OF DR. GABRIEL SABADELL AND DR. RICHARD**
10            **RICHTER RE RAILROADS**

11

12        Tyco moves to preclude Rowe from calling Gabriel Sabadell, Ph.D., and Richard

13  Richter, Ph.D., as expert witnesses at trial.  Rowe intends to call these witnesses to offer

14  testimony, inter alia, concerning the cause of the PCB contamination of the Property.  See

15  Def.'s Witness List at 2-3, Dkt. 385.  In its motion in limine, Tyco contends that these

16  witnesses' opinions should be excluded on the grounds that they lack a sufficient factual

17  foundation to opine that the site contamination was caused by "railroad activities" on the

18  Property.  See Boone Decl. in Opp'n to Pl's Mot. for Partial Summ. J, Ex. G at 43:24-45:2.[4]

19        "Rule 702 requires that a testifying expert be 'qualified as an expert by knowledge,

20  skill, experience, training, or education.'"  Hangarter v. Provident Life and Acc. Ins. Co.,

21

22        [3] In its reply, Tyco argues for the first time that the Release Agreement is
    inadmissible hearsay.  The Court does not consider new arguments presented in a reply
23  brief.  See Ind. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("we review
    only issues which are argued specifically and distinctly in a party's opening brief").
24  Nonetheless, Rowe should be prepared at trial to respond to Rowe's likely hearsay
    objection.
25
          [4] Dr. Richter opined that the Property may have been contaminated by PCBs
26  resulting from Tyco's manufacture of "44 wire" on the site and/or paints and sealants used
    on the Property.  See Decl. of Richardo O. Richter in Opp'n to Pl.'s Mot. for Partial Summ.
27  J. at 4, 7, Dkt. 332.  Tyco's motion in limine, however, focuses only on Dr. Sabadell's
    opinions regarding railroad operations, and does not does not specifically address Dr.
28  Richter's opinions.

373 F.3d 998, 1016 (9th Cir. 2004) (quoting in part Fed. R. Evid. 702).  Tyco does not

contend that either Drs. Sabadell or Richter lack the requisite knowledge, skill, experience,

training, or education to offer expert testimony at trial.  Rather, Tyco avers that their

opinions lack sufficient factual foundation.  However, "[t]he factual basis of an expert

opinion goes to the credibility of the testimony, not the admissibility, and it is up to the

opposing party to examine the factual basis for the opinion in cross-examination."  Id. at

1017 n.14 (brackets, internal quotations and citation omitted).  Tyco will have ample

opportunity at trial to challenge the bases of these witnesses' opinions through cross-

examination.   See Bergen v. F/V St. Patrick, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987) ("the

weakness in the underpinnings of [expert] opinions may be developed upon cross-

examination," as "such weakness goes to the weight and credibility of the testimony" as

opposed to its admissibility) (internal quotations and citation omitted).

     The cases cited by Tyco are inapposite.  In McGlinchy v. Shell Chemical Company,

845 F.2d 802 (9th Cir. 1988), the court of appeal upheld the exclusion of expert testimony

regarding damages under Rule 403 on the grounds that the expert's inconsistent and

unsubstantiated opinions "would pose a great danger of confusing the fact and cause of

damages with the amount of damages."  Id. at 806-807.  Here, Tyco does not allege that Dr.

Sabadell or Dr. Richter's opinions are inconsistent.  In addition, any potential Rule 403

concerns are accommodated by the fact that this case will be tried to the Court, as opposed

to a jury.

     Tyco's citation to Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250 (9th Cir. 1982)

fares no better.  In that case, the court affirmed the exclusion of percipient witness

affidavits presented in opposition to a motion for summary judgment because the affiants

lacked personal knowledge to support their statements.  Id. at 1205.  The issue presently

before the Court involves the admission of expert testimony, not the sufficiency of an

affidavit offered in opposition to a summary judgment motion, which is governed by Rule

56(c)(4) (formerly numbered as Rule 56(e)).  Accordingly, Tyco's Motion in Limine No. 2

to Exclude Opinions of Dr. Gabriel Sabadell and Dr. Richard Richter re Railroads is DENIED.

### C.   DEFENDANT ROWE'S MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S MONSANTO SHIPPING RECORDS

#### 1.   Background

As noted, from 1965 to mid-1973, the Property was subleased to Hill, Rowe's predecessor, which manufactured transformers on the Property.  According to Tyco, PCB fluids historically have been used to manufacture transformers, and records from Monsanto Company ("Monsanto") will show that products containing PCBs were shipped to Hill at the Property.  Thus, Tyco intends to present evidence of these shipments at trial.

Judge Fogel previously addressed the admissibility of Monsanto's shipping records. In response to Rowe's previous motion for summary judgment, Tyco proffered shipping records from Monsanto to establish that PCB-containing products were shipped to Hill. Curtiss Decl. ¶¶ 10-11, Dkt. 254.  Tyco sought to authenticate these documents as business records through Sharon Locke, an order billing clerk who worked for Monsanto from 1961 to 1994.  Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 4, Dkt. 258.  Rowe challenged the admissibility of the shipping records, claiming that Ms. Locke was not the custodian of records, but was merely familiar with invoices such as those proffered by Tyco.  Def.'s Reply in Supp. of Mot. for Summ. J. at 6, Dkt. 283.  In addition, Rowe argued that Ms. Locke was uncertain precisely who created those records or whether they were complete. Id. at 6-7.

In his summary judgment order, Judge Fogel rejected Rowe's arguments.  See 9/19/11 Order at 5-6.  He explained that business records may be authenticated by the custodian of records *or* through "another qualified witness"—such as a witness who understands the record-keeping system at issue.  Id. at 6 (citing United States v. Ray, 930 F.2d 1368, 1370 (9th Cir. 1990) (holding that welfare fraud investigator who was familiar with the filing and reporting requirements for public assistance benefits was an "other qualified witness" competent to authenticate welfare record even though she was not

1  custodian of record)); see Fed. R. Evid. 902(11).  With respect to the matter of whether the

2  records were complete, Judge Fogel found that "this argument goes to the weight that

3  should be attributed to the records, not their admissibility."   9/19/11 Order at 6.

4                    **2.      Analysis**

5          In its Motion in Limine to Exclude Plaintiff's Monsanto Shipping Records, Rowe

6  offers no new grounds for excluding the records at trial.  Rather, Rowe merely incorporates

7  by reference the arguments presented in connection with its prior summary judgment

8  motion, stating that "[it] wishes to reassert its exclusion request to preserve its evidentiary

9  objections are trial."  Def.'s Mot. in Limine at 1-2, Dkt. 418.  Rowe's motion is thus

10 tantamount to an unauthorized motion for reconsideration.  Yet, Rowe has not sought leave

11 to file a motion for reconsideration of that determination, as required by Civil Local Rule 7-

12 9, nor has Rowe demonstrated that Judge Fogel's ruling is erroneous.  For these reasons,

13 Defendant Rowe's Motion in Limine to Exclude Plaintiff's Monsanto Shipping Records is

14 DENIED.  However, the Court's ruling does not obviate Tyco's obligation to lay an

15 appropriate foundation at trial for the admission of the Monsanto shipping records, nor does

16 it deprive Rowe of its right to interpose an objection thereto.

17 **III.    CONCLUSION**

18        For the reasons set forth above,

19        IT IS HEREBY ORDERED THAT:

20        1.      Plaintiff Tyco's Motion in Limine No. 1 to Exclude Evidence of Unsigned

21 Release is DENIED.

22        2.      Plaintiff Tyco's Motion in Limine No. 2 to Exclude Opinions of Dr. Gabriel

23 Sabadell and Dr. Richard Richter re Railroads is DENIED.

24        3.      Defendant Rowe's Motion in Limine to Exclude Plaintiff's Monsanto

25 Shipping Records is DENIED.

26

27

28

1

      4.     This Order terminates Docket 398, 399, 400 and 431.

2

    IT IS SO ORDERED.

3

Dated:  July 9, 2012

4

SAUNDRA BROWN ARMSTRONG
United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28