1  MICHAEL J. PIETRYKOWSKI (SBN: 118677)
   mpietrykowski@gordonrees.com
2  MORDECAI D. BOONE (SBN: 196811)
   mboone@gordonrees.com
3  CHRISTOPHER D. STRUNK (SBN: 214110)
   cstrunk@gordonrees.com
4  GORDON & REES LLP
   Embarcadero Center West
5  275 Battery Street, Suite 2000
   San Francisco, CA 94111
6  Telephone: (415) 986-5900
   Facsimile: (415) 986-8054
7
   Attorneys for Defendant and Counter-Claimant
8  ROWE INDUSTRIES, INC.

9             UNITED STATES DISTRICT COURT

10    NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

11  TYCO THERMAL CONTROLS LLC,              ) CASE NOS. 4:06-cv-07164-NC
                                            )
12               Plaintiff,                 ) **DEFENDANT ROWE**
                                            ) **INDUSTRIES, INC.'S**
13       vs.                                ) **MEMORANDUM OF POINTS**
                                            ) **AND AUTHORITIES IN**
14  REDWOOD INDUSTRIALS, et al,             ) **SUPPORT OF MOTION FOR**
                                            ) **PARTIAL FINDINGS**
15               Defendants.                ) **PURSUANT TO RULE 52(c)**
                                            )
16                                          ) Trial Date: January 22, 2013
                                            ) Time:       9:00 a.m.
17                                          ) Courtroom: A, 15th Floor
                                            ) Judge:      Hon. Nathanial
18  AND ALL CROSS RELATED ACTIONS           )            Cousins
                                            )
19                                          ) Action Filed: November 17, 2006
                                            )
20
21
22
23
24
25
26
27
28

DEFENDANT ROWE INDUSTRIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR PARTIAL FINDINGS PURSUANT TO RULE 52(c)

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT.................................................................................1

II.   APPLICABLE STANDARD ................................................................................2

    A.   This court is empowered to enter judgment once it is able to
     reach a dispositive finding of fact based on the evidence
     admitted.........................................................................................................2

    B.   Plaintiff is not entitled to the Rule 50 standard in a motion for
     judgment on partial findings .......................................................................3

III.  ARGUMENT.........................................................................................................4

    A.   Plaintiff has not achieved a "CERCLA-quality cleanup,"
     necessitating entry of judgment in Rowe's favor ................................4

        1.   Tyco's two amendments to the January 4, 2011 ROD
         were fundamental changes requiring mandatory public
         comment, and the failure to satisfy this requirement
         necessitates a finding that there was no CERCLA-quality
         cleanup ...........................................................................................5

            a.   The evidence at trial is uncontroverted that
             plaintiff made two amendments to the January 4,
             2011 ROD which were fundamental changes as a
             matter of law...................................................................6

                i.   Tyco sought and obtained two amendments
                 to the June 2010 ROD without opportunity
                 for public comment .................................................6

                ii.  The work described in the two Amendments
                 represented a fundamental change from the
                 ROD, but there was no public participation...........7

        2.   Plaintiff's selected remedy is not cost effective under 40
         CFR 300.430(f)(1)(ii)(D) and is therefore neither NCP
         compliant nor results in a CERCLA-quality cleanup.................8

            a.   The remedy selected by Tyco is not cost effective
             because its total costs of $7.2M are not
             proportional to its effectiveness .....................................11

            b.   The selected remedy is not cost effective because it
             is not proportional to the alternate remedy of
             capping...........................................................................12

    B.   Considered "as a whole," plaintiff's selected remedy is not
     NCP compliant .........................................................................................13

IV.   CONCLUSION ..................................................................................................15

i

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ameripride Services, Inc. v. Valley Industrial Service, Inc.*
2011 U.S. Dist. Lexis 55634 (E. D. Cal. 2011) ....................................................10

*City of Colton v. Am. Promotional Events, Inc.-West*
614 F.3d 998 (9th Cir. 2010) ........................................................................4

*First Virginia Banks, Inc. v. BP Exploration & Oil, Inc.*
206 F.3d 404 (4th Cir., 2000) ........................................................................3

*Franklin County Convention Facilities Authority v. American Premier
Underwriters, Inc.*
240 F.3d 534 (6th Cir. 2001) ....................................................................9, 10

*Geddes v. Northwest Missouri State Univ.*
49 F.3d 426 (8th Cir. 1995) ........................................................................2, 4

*International Union of Operating Engineers, Local Union 103 v. Indiana Const.
Corp.*
13 F.3d 253 (7th Cir. 1994) ............................................................................3

*Pinkston v. Madry*
440 F.3d 879 (7th Cir. 2006) ..........................................................................3

*Price v. United States Navy*
39 F.3d 1011 (9th Cir.1995) ............................................................................3

*Ritchie v. U.S.*
451 F.3d 1019 (9th Cir. 2006) ........................................................................3

*Roth v. American Hosp. Supply Corp.,*
965 F.2d 862 (10th Cir. 1992) ........................................................................3

*Southfund Partners III v. Sears, Roebuck and Co.*
57 F.Supp.2d 1369 (1999) ............................................................................10

*Waste Management of Alameda County, Inc. v. East Bay Regional Park District*
135 F.Supp.2d 1071 (N.D. Cal. 2001) ............................................................4, 5

## Statutes

40 C.F.R. § 300.700(c)(4) ..............................................................................13

40 C.F.R. § 300.700(c)(5)(vii) ..........................................................................5

40 C.F.R. § 300.700(c)(5)(viii) ..........................................................................5

40 C.F.R. § 300.700(c)(6) ................................................................................5

40 CFR § 300.345(c)(2) ..................................................................................5

40 CFR § 300.345(c)(2)(ii)(A-C) ..............................................................5, 6, 7, 8

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

DEFENDANT ROWE INDUSTRIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR PARTIAL FINDINGS PURSUANT TO RULE 52(c)

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

40 CFR § 300.700(c)(3)(i) ....................................................................... 13

40 CFR 300.430(f)(1)(ii)(D) ........................................................................ 9

55 Fed. Reg., at 8793 ................................................................................... 5

55 Federal Register 8666 (March 8, 1990) ................................................. 9

Fed. R. Civ. P. 52 .................................................................................... 2, 3

Fed. R. Civ. P. 52(c) ............................................................................... 2, 3

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT ROWE INDUSTRIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR PARTIAL FINDINGS PURSUANT TO RULE 52(c)

## I.    SUMMARY OF ARGUMENT

After more than six years of discovery and two weeks of trial, plaintiff TYCO THERMAL CONTROLS, LLC ("Tyco")[1] cannot show that it is entitled to recover any of its alleged "response costs" against Rowe.

Most significantly, Tyco has failed to achieve a CERCLA-quality cleanup for two reasons:

- First, the uncontroverted evidence is that Tyco made two amendments to the January 4, 2011 Record of Decision ("ROD") which by definition fundamentally changed the remedy and mandated public comment under 40 CFR 300.435(c)(2)(ii) and 42 USC 9617(a)(2).  However, there was no public comment of any kind.  The amendments – which, among other differences, proposed leaving PCB contamination in the ground – were fundamental departures from the approved plan to remove all contamination above the screening levels.  There can be no other meaningful conclusion save that plaintiff has failed to achieve a CERCLA-quality cleanup as a matter of law.

- Second, a "CERCLA quality cleanup" must also be cost effective under 40 CFR 300.430, and evaluating cost effectiveness requires that the remedy's costs be proportional to its overall effectiveness.  A remedy's costs are those costs actually "incurred." *Franklin County Convention Facilities Authority v. American Premier Underwriters, Inc.,* 240 F.3d 534, 546 (6th Cir. 2001).  Therefore, because (1) a CERLCA-quality cleanup could have been accomplished for between $783,397 and $1,000,000 but was not and (2) as only $3,970,126 out of $7,215,542 in costs presented was determined by plaintiff's own expert to have been an appropriate "response" action, there can be no finding that the entirety of the costs incurred were proportional to

---

[1] On December 28, 2012, Tyco Thermal Controls LLC changed its name to "Pentair Thermal Management LLC."  All references to Tyco in the instant motion expressly include and encompass Pentair Thermal Management LLC.

1

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    the overall effectiveness of the remedy.  Thus, there can be no finding that a

2    "CERCLA quality cleanup" occurred.

3    Finally, after all of the evidence has been entered, Tyco's remedy is *still* not

4    in substantial compliance with the NCP when evaluated as a whole.  (See Code of

5    Federal Regulations section 300.700 (c)(3)(i)).  As expected, Tyco's NCP

6    compliance expert, Stephen Johnson, testified he cut nearly *half* of the

7    approximately $7.2M in costs sought by Tyco for the remediation at the site on the

8    grounds that these costs were not a "response" and were not compliant with the

9    NCP.  As a matter of law, therefore, plaintiff's actions cannot be deemed to be in

10   substantial compliance with the NCP when "evaluated as a whole."

11   For the foregoing reasons, this Court should make appropriate factual

12   findings and render a decision in Rowe's favor.

## II.    APPLICABLE STANDARD

### A.    This court is empowered to enter judgment once it is able to reach a dispositive finding of fact based on the evidence admitted

Rule 52(c) provides in part:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter a judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 52(c).  Rule 52(c) "authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence." Fed. R. Civ. P. 52, advisory committee's notes (1991).  The rule allows either party to move for judgment at the close of the opposing party's case or at any time after a party has been heard fully on an issue. Fed. R. Civ. P. 52, advisory committee's notes (1993);  *see Geddes v. Northwest Missouri State Univ.,* 49 F.3d 426, 429, fn. 7 (8th Cir. 1995).  The right to be fully heard under Rule 52(c) does not amount to a right to introduce every shred of evidence that a party proffers without regard to the probative value of the evidence. *See  First Virginia Banks, Inc. v. BP*

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

DEFENDANT ROWE INDUSTRIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR PARTIAL FINDINGS PURSUANT TO RULE 52(c)

1    *Exploration & Oil, Inc.*, 206 F.3d 404, 407 (4th Cir., 2000).   The court may find

2    against the party on that issue and then may enter judgment against that party on

3    any claim that cannot be maintained in the face of the adverse finding.  Fed. R.

4    Civ. P. 52(c).   The court may also make partial findings on issues even if it will

5    not dispose of the entire claim or action.  Fed. R. Civ. P. 52, advisory committee's

6    notes (1993).  A finding made pursuant to Rule 52(c) is reversible only if it is

7    clearly erroneous.  *Price v. United States Navy,* 39 F.3d 1011, 1021 (9th Cir.1995).

8        In the context of a motion for judgment on partial findings pursuant to Rule

9    52(c), the judge is the factfinder.  Thus, the court makes its own independent

10    determination of the facts, weighing the evidence and assessing witness credibility

11    to resolve the factual disputes in the case. *See Ritchie v. U.S.,* 451 F.3d 1019, 1023,

12    65 Fed. R. Serv. 3d 339 (9th Cir. 2006), cert. denied, 549 U.S. 1211, 127 S. Ct.

13    1337, 167 L. Ed. 2d 84 (2007); *Pinkston v. Madry,* 440 F.3d 879, 890 (7th Cir.

14    2006); *see Roth v. American Hosp. Supply Corp.* 965 F.2d 862, 865 (10th Cir.

15    1992).  The trial court may "weigh the evidence, resolve any conflicts in it, and

16    decide for itself where the preponderance lies." *See International Union of*

17    *Operating Engineers, Local Union 103 v. Indiana Const. Corp.*, 13 F.3d 253, 257

18    (7th Cir. 1994).

19       **B.**    **Plaintiff is not entitled to the Rule 50 standard in a motion for**
20             **judgment on partial findings**

21        The Rule 50 standard (Judgment as a Matter of Law, Jury Trial) is not

22    applicable in a motion for judgment on partial findings because the court acts as

23    the factfinder, and it need not consider the evidence in a light favorable to the

24    nonmoving party as is required under Rule 50. *Ritchie,* 451 F.3d at 1023.   "In

25    deciding whether to enter judgment on partial findings under Rule 52(c), the

26    district court is not required to draw any inferences in favor of the non-moving

27    party; rather, the district court may make findings in accordance with its own view

28    of the evidence." *See id.* "The trial court need not consider the evidence in a light

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

DEFENDANT ROWE INDUSTRIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR PARTIAL FINDINGS PURSUANT TO RULE 52(c)

1  favorable to the plaintiff and may render judgment for the defendant if it believes

2  the plaintiff's evidence is insufficient to make out a claim." *Geddes,* 49 F.3d at

3  429, fn. 7.

4  **III.    ARGUMENT**

5  **A.    Plaintiff has not achieved a "CERCLA-quality cleanup,"**
       **necessitating entry of judgment in Rowe's favor**

6

7        The two goals of CERCLA are "not simply to encourage private response,

8  but rather to 'make the party seeking response costs choose a cost-effective course

9  of action to protect public health and the environment' and to achieve 'a CERCLA-

10  quality cleanup.'" *See City of Colton v. Am. Promotional Events, Inc.-West,* 614

11  F.3d 998 (9th Cir. 2010).  Under the NCP, "[i]n order to demonstrate a 'CERCLA-

12  quality cleanup,' the action must satisfy the three basic remedy selection

13  requirements of CERCLA section 121(b): it must (1) be 'protective of human

14  health and the environment,' (2) utilize 'permanent solutions and alternative

15  treatment technologies or resource recovery technologies to the maximum extent

16  practicable,' and (3) be 'cost effective.'" *Waste Management of Alameda County,*

17  *Inc. v. East Bay Regional Park District,* 135 F.Supp.2d 1071 (N.D. Cal. 2001).

18  Plaintiff's own NCP compliance expert, Stephen Johnson, confirmed the accuracy

19  of these factors, and specifically confirmed that an CERCLA-quality cleanup

20  cannot be accomplished if the remedial action was not cost effective.  (Transcript,

21  Vol. 5, at 849: 15 – 850: 20; at 852: 1 – 4; 854: 21 - 25).  Further, the preamble to

22  the NCP explicitly mandates public participation in addition to cost effectiveness.

23  (NCP Preamble, p. 324).

24        The preamble to the NCP explains a "CERCLA-quality cleanup" is not met

25  by "substantial compliance."  Indeed, the preamble states that "[t]hese

26  requirements are not new additions from the proposed rule.  Under the proposal,

27  ***private parties were required to strictly comply*** with the detailed provisions of the

28  NCP, including provisions codifying these statutory mandates . . . EPA has simply

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

4

1  issued a substantial compliance test *while at the same time identifying several*

2  *requirements that <u>must be met in order to achieve substantial compliance.</u>"*

3  (NCP Preamble, p. 324, emphasis added, citations omitted).  Because Tyco has

4  failed to meet the mandatory requirements of public participation and cost

5  effectiveness, its CERCLA claim against Rowe fails.

6          **1.    Tyco's two amendments to the January 4, 2011 ROD were**

7                **fundamental changes requiring mandatory public comment, and the failure to satisfy this requirement**

8                **necessitates a finding that there was no CERCLA-quality cleanup**

9        To achieve a CERCLA-quality cleanup, a meaningful opportunity for public

10  participation in the selected remedy must be provided.  40 C.F.R. § 300.700(c)(6).

11  The EPA has made clear "that '*meaningful public participation*' is 'integral' to

12  ensuring the proper completion of a CERCLA-quality cleanup."[2]  *Waste*

13  *Management*, 135 F.Supp.2d at 1100 *citing* 55 Fed. Reg., at 8793 (emphasis

14  added); *see also* 40 C.F.R. § 300.700(c)(5)(vii) (the party seeking response costs

15  must conduct a remedial site investigation); 40 C.F.R. § 300.700(c)(5)(viii) (parties

16  must prepare a remedial investigation and feasibility study ("RI/FS"); 40 C.F.R. §

17  300.700(c)(6) (an opportunity for public comment must be provided).

18        In those circumstances where, during the course of remediation, there is a

19  significant deviation from the ROD, 40 CFR § 300.345(c)(2) applies.  Where that

20  significant deviation *fundamentally alters* the basic features of the selected

21  remedy with respect to scope, performance, or cost, 40 CFR § 300.345(c)(2)(ii)(A-

22  C) applies and an *amendment* is required.  Notably, under this regulation, any

23  "amendment" to the ROD *mandates* additional public participation.  Specifically, it

24  requires (A) a notice of availability and description of the proposed amendment be

25  published in a local paper; (B) the proposed amendment be made available for

26  *public comment*; and (C) a reasonable opportunity, not less than 30 calendar days,

27  _____

28  [2] This is true even though section 121's remedy selection language may not explicitly say as much.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

DEFENDANT ROWE INDUSTRIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR PARTIAL FINDINGS PURSUANT TO RULE 52(c)

1   for submission of written or oral comments on the amendment to the ROD.  (*Id.*)

2

3              a.     **The evidence at trial is uncontroverted that plaintiff made two amendments to the January 4, 2011 ROD which were fundamental changes as a matter of law.**

4

5                   i.     **Tyco sought and obtained two amendments to the June 2010 ROD without opportunity for public comment**

6

7   On January 4, 2011, the EPA issued its ROD, approving the June 14, 2010

8   'PCB Cleanup Notification and Workplan' authored by AMEC Geomatrix and

9   submitted to EPA.  (Tyco Exhibit No. ("TTC") 27, **Exhibit A** to the Supporting

10  Declaration of Christopher D. Strunk ("Strunk Decl.").)  Notably, the ROD

11  required PCB cleanup levels to .22 mg/kg of PCB's or .74 mg/kg if a restrictive

12  covenant were to run with the land; notably, the ROD made *no* mention of leaving

13  any amounts of contamination above these levels in the soil and made *no* mention

14  of capping of any kind.  (TTC 27, p. 2)

15       On August 8,  2012, Tyco sought to amend the ROD to add a protective

16  multimedia cap at the northern portion of the facility to modify its original

17  workplan and, for the first time, proposed leaving PCB's in the soil at 2201 Bay

18  Road in excess of the .74 mg/kg levels as previously approved by EPA.  On

19  August 24, 2012, EPA approved this amendment.  (TTC 271, p .1, **Exhibit B** to the

20  Strunk Decl.).   On  September 12, 2012, Tyco, through SCS Engineers, proposed

21  a second amendment to the ROD to place another multimedia cap at "Excavation

22  Area 4" of the 2201 Bay Road site.  On September 26, 2012, EPA approved this

23  second amendment.  (TTC 277, p 1, **Exhibit C** to the Strunk Decl.)   Finally, "due

24  to changes in the extent and depth of the excavation and the proposed change in

25  cap design," SCS sought approval for – and obtained – a revision to Amendment 2

26  to revise the design of the cap.  (TTC 284, **Exhibit D** to the Strunk Decl.)  EPA

27  approved this Amendment on October 12, 2012.  (TTC 284)

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1

2

ii.    **The work described in the two Amendments represented a fundamental change from the ROD, but there was no public participation**

3    Under 40 CFR § 300.345(c)(2)(ii)(A-C), by proposing "amendments," Tyco

4    asked for and received "fundamental changes" to the ROD requiring public

5    participation as opposed to mere "significant differences" which do not require

6    "amendments" to the ROD.  Notably, the remedy went from removal of all soil to

7    capping and leaving contamination above .74 mg/kg in the ground.  Johnson

8    himself conceded that the main reason for the initial selection of the "dig and haul"

9    approach approved by the ROD was to "remove all PCB contamination above the

10    ESL in the feasibility study and draft RAP." (Transcript, Vol. 5 at 871: 3 – 7.  True

11    and correct copies of the trial transcripts are attached to the Strunk Decl. as

12    **Exhibit E.**)  As to the soil that was removed, the modifications from the original

13    ROD to the Amendments included a fundamental increase in the excavation

14    volume of soil, more than doubling the amount of soil removed from 2,100 yds$^3$ to

15    4,.750 yds$^3$.  (Transcript, Vol. 5 at 869: 12 – 870: 14.)

16    However, there was no public comment or participation of any kind.  In fact,

17    as to both of the Amendments and all of the work discussed in the Explanation of

18    Significant Differences ("ESD"), the public was informed *after* the work was

19    performed, with no opportunity to have any input into that process.  (Transcript,

20    Vol. 5, at 865: 1 – 18.)  Indeed, when Peggy Pieschl conducted her meeting with

21    the public on the draft RAP, she told the public that the site investigation was

22    complete, even though she conceded that she still anticipated performing additional

23    investigation.  (Transcript, Vol. 3 at 513: 5- 14.)

24    Rowe's NCP expert, David Teter, also opined that Tyco's remedy did not

25    achieve a CERCLA-quality cleanup on this basis.  (Transcript, Vol. 7 at 1336: 17 –

26    25; at 1342: 1 – 16.)  Not only did plaintiff propose two amendments to the ROD,

27    but the site cleanup goals that were chosen were extremely conservative and hard

28    to meet in a cost effective manner.  (Transcript, Vol. 7 at 1344: 16 – 1345: 22.)

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

7

1   Fact witness, engineer Peggy Pieschl, who offered testimony on the actual work
2   done on site, provided consistent testimony, agreeing that the proposal of .74
3   mg/kg to the water board was a conservative screening level. (Transcript, Vol. 3 at
4   492: 25 – 493: 5.)  Teter emphasized that when amending the ROD and making a
5   fundamental change, there *must* be additional public participation to achieve a
6   CERCLA quality cleanup. (Transcript, Vol. 7 at 1354: 1 – 1355: 9; at 1360: 7 –
7   1361: 10.)

8       Finally, Pieschl testified that she was not an expert in the national
9   contingency plan, and did not know how "necessary" or "response action" were
10   defined under the NCP.  (Transcript, Vol. 3, at 470: 14 – 471: 10.) She likewise
11   testified as to her lack of expertise in the area of public participation, and could not
12   characterize, in any way, whether the actions of Tyco in seeking to amend the
13   ROD were "significant" or "fundamental." (Transcript, Vol. 3, at 472: 2 – 25.)
14   Further, her preparation of the ESD was not done to analyze whether the changes
15   that occurred required public participation. (Transcript, Vol. 3 at 473: 1 – 6.)
16   Importantly, Johnson never testified as to the effect of actual "amendments," as
17   opposed to significant differences, on the public participation requirements of 40
18   CFR § 300.345(c)(2)(ii)(A-C).

19       By defintion, the amendments Tyco sought and received – which permitted
20   leaving PCB contamination in the ground – were a fundamental departure from the
21   approved plan to remove all contamination above the screening levels.  There can
22   be no other meaningful conclusion.

23               **2.    Plaintiff's selected remedy is not cost effective under 40
                         CFR 300.430(f)(1)(ii)(D) and is therefore neither NCP
24                       compliant nor results in a CERCLA-quality cleanup**

25       A "CERCLA quality cleanup" must by definition be cost effective under 40
26   CFR 300.430, and evaluating cost effectiveness requires that the remedy's costs be

27

28

DEFENDANT ROWE INDUSTRIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR PARTIAL FINDINGS PURSUANT TO RULE 52(c)

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

proportional to its overall effectiveness.[3]  40 CFR 300.430(f)(1)(ii)(D) provides, in

pertinent part, that:

> (D) Each remedial action selected shall be cost-effective, provided that it first satisfies the threshold criteria set forth in §300.430(f)(1)(ii)(A) and (B). Cost-effectiveness is determined by evaluating the following three of the five balancing criteria noted in §300.430(f)(1)(i)(B) to determine overall effectiveness: long-term effectiveness and permanence, reduction of toxicity, mobility, or volume through treatment, and short-term effectiveness. Overall effectiveness is then compared to cost to ensure that the remedy is cost-effective. A remedy shall be cost-effective if its costs are proportional to its overall effectiveness

The Federal Register further explains the concept of "proportional," noting

that:

> EPA uses the term 'proportional' because it intends that in determining whether a remedy is cost effective, the decisionmaker should both compare the cost to the effectiveness of each alternative individually *and* compare the cost and effectiveness of alternatives in relation to one another.  In comparing alternatives to one another, the decisionmaker should examine incremental cost differences in relation to incremental increase in effectiveness. ***Thus, for example, if the difference in effectiveness is small but the difference in cost is very large, a proportional relationship does not exist.  The most expensive remedy may not be cost effective.***

55 FR 8666 (March 8, 1990).

In *Franklin County Convention Facilities Authority v. American Premier Underwriters, Inc.,* 240 F.3d 534 (6th Cir. 2001), the Sixth Circuit applied precisely this kind of analysis in comparing two plans for addressing contamination at a railroad site in which a box containing creosote and benzene had been buried decades earlier and had leaked.   There, the Court was tasked with addressing whether the cleanup option selected was "cost effective."  (*Id.* at 546.)  The court stated that "[c]ost effectiveness is determined by comparing overall effectiveness

---

[3]  Johnson has agreed that 40 CFR 300.430 and 435 both expressly apply to the instant case. (Transcript, Vol. 5, at 861: 10 - 21.)

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   to cost" and that a "remedy is cost effective if its costs are proportional to its

2   overall effectiveness." (*Id.*)  The court compared two NCP-compliant plans, one

3   costing approximately $200,000 and calling solely for encapsulation, and another

4   plan (selected by Franklin) costing approximately $239,000 and calling for

5   removal of most of the contamination and encapsulation of the remainder.   In

6   finding that the selected remedy was cost effective, the court explained that

7   "[h]ere, CFA chose to remove much of the contamination to a landfill, and

8   encapsulate the remainder.  In doing so, CFA incurred $239,280 in costs.  While

9   CFA could have saved up to $30,000 by opting for encapsulation rather than

10  removal, *we conclude that this amount is insignificant* when compared to the

11  benefits CFA achieved in terms of permanence and reduction of mobility and

12  volume by opting to remove as much of the contamination as possible." (*Id.* at

13  546, emphasis added.)   Importantly, the methodology employed by the court

14  demonstrated that it *compared* the two plans and determined that a $30,000

15  difference was not significant.   More importantly, the Court analyzed "cost

16  effectiveness" based upon costs actually *incurred*, as opposed projected costs at the

17  time of remedy selection. *Id.*

18      Indeed, costs actually incurred in the implementation of the chosen remedy

19  is the standard Federal courts consistently use in determining whether or not a

20  "cost effective," CERCLA-quality clean up was achieved. *See Ameripride*

21  *Services, Inc. v. Valley Industrial Service, Inc.*, 2011 U.S. Dist. Lexis 55634 at *9,

22  13-14 (E. D. Cal. 2011)(entirety of costs incurred during remedial action evaluated

23  for cost effectiveness against alternatives); *Southfund Partners III v. Sears,*

24  *Roebuck and Co.*, 57 F.Supp.2d 1369, 1381 (1999) (CERCLA-quality "cost

25  effectiveness" standard is determined by "the end-product [rather] than the process

26  used to arrive there" (internal citations omitted)).

27      This is the precise methodology discussed by Rowe's NCP expert David

28  Teter, who also opined that the NCP requires comparison of costs to total

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

10

1  effectiveness, with cost effectiveness being proportional to the cost and its impact

2  on total effectiveness. (Transcript, Vol. 7 at 1350: 21 – 1353: 2.)  In the instant

3  case, however, the evidence of *lack* of proportionality is overwhelming.

### a.  The remedy selected by Tyco is not cost effective because its total costs of $7.2M are not proportional to its effectiveness

6  Ultimately, $7.2M was spent on remediating the site.  Yet, Johnson found

7  that only the $3.9M in "compliant" costs were effective in protecting human

8  health and the environment; Johnson determined that the remainder of the costs

9  were not part of the response action and he did not expressly evaluate them for

10  consistency with the NCP. (Transcript, Vol. 5, at 858: 9 – 22.)  Moreover,

11  Johnson did not attempt to determine cost effectiveness in determining

12  "compliant" costs. (Transcript, Vol. 5, at 859: 4 - 7.)  And, while Johnson

13  ultimately opined that the remedy was "cost effective," he based his opinion on the

14  fact that *at the time of the decision* on the remedy, the intent was to remove all of

15  the contaminants. (Transcript, Vol. 5 at 879: 1 – 23)  Johnson's focus on the

16  *prospective* possible costs misstates the legal standard, and his opinion is wholly

17  inconsistent with *Franklin* and its progeny, which states the accepted standard that

18  it is the *end product* – actual costs expended – that must be evaluated for cost

19  effectiveness.  Further, *nowhere* does Johnson offer any opinion or provide any

20  support that the actual costs incurred of the chosen remedy were  proportional to its

21  overall effectiveness, especially when compared to the signifcantly less expensive

22  alternative of capping the Site.

23  The simple fact is that spending $7.2M to achieve $3.9M of compliant

24  remediation results cannot represent a "cost effective" solution.  Such a conclusion

25  would be inconsistent with the both public policies behind CERCLA and the

26  caselaw interpreting it.  The fact is that Tyco chose to implement the most

27  expensive remedy, and Pieschl concedes that all of the site work, investigations

28  and costs incurred by Tyco flowed directly from its decision to implement that

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   remedy. (Transcript, Vol 3, at 509: 23 – 510: 3.)  The amounts spent by Tyco are

2   grossly *disproportionate* to the results achieved, precluding any conclusion that the

3   selected cleanup option was cost effective under any rational reading of the NCP.

4
5
                **b.**     **The selected remedy is not cost effective because it is not proportional to the alternate remedy of capping**

6          Additionally, following the methodology employed by the Sixth Circuit in

7   *Franklin,* a comparison of Johnson's "necessary" costs of $3,970,126 to the

8   $783,397 to approximately $1,000,000 cost of another NCP compliant remedy –

9   capping – reveals plaintiff's remedy to be grossly disproportionate and cost

10  *ineffective.*

11         Importantly, Johnson did not evaluate or offer any opinion on whether or not

12  the site could have been cleaned up consistent with EPA at a much lower cost.

13  (Transcript, Vol. 5 at 839: 17 – 21)  However, this analysis was performed by

14  Rowe's expert, David Teter, who offered ***uncontested, undisputed*** testimony that:

15     •  An NCP compliant capping remedy which was protective of human health

16        and the environment and would result in a CERCLA quality cleanup could

17        be performed for between $783,000 to $1,000,000 or less (Transcript, Vol. 7

18        at 1331: 5- 20; at 1330: 10 – 23; at 1333: 7 – 25; at 1335: 11 - 15);

19     •  Capping is a common remedy in PCB sites in the Bay Area, which involves

20        limited excavation and deed control (Transcript, Vol. 7 at 1325: 23 – 1326:

21        7);  Johnson conceded that he has previously found remediation plans

22        proposing surface caps in remedial actions such as this one to be consistent

23        with the NCP, and Pieschl likewise conceded that it was a common remedy.

24        (Transcript, Vol. 5 at 840: 4 – 21; Vol. 3 at 523: 23 – 524: 15.)

25         Additionally, Dr. Teter opined that both Alternative 2 (capping) and

26  Alternative 3 (dig & haul) met the same standard of total effectiveness, but the

27  costs were significantly different, up to 400 – 500% greater by Tyco choosing

28  Alternative 3 over Alternative 2.  (Transcript, Vol. 7 at 1353: 6 – 22)

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    The Court's determination of proportionality in *Franklin* involved a

2 difference of just $30,000 in the total costs incurred between the chosen remedy

3 and the alternative remedy – approximately 20%.  In the instant case, plaintiff's

4 chosen remedy constitutes a whopping ***397% increase*** when compared to

5 $1,000,000 for capping when looking just at necessary costs as determined by

6 Johnson.  If one were to make the comparison to the totality of the costs, Tyco's

7 remedy is a full ***721% greater.***   This is grossly disproportionate and under even

8 the most lenient standards ***cannot*** be found to constitute a CERCLA-qualify

9 cleanup.

10    **B.    Considered "as a whole," plaintiff's selected remedy is not NCP**
              **compliant**

12    In order to determine whether a private party response action is "consistent

13 with the NCP," 40 CFR section 300.700(c)(3)(i) explains that: :

> (3) For the purpose of cost recovery under section
> 107(a)(4)(B) of CERCLA:
>
> (i) A private party response action will be considered
> "consistent with the NCP" if the action, ***when evaluated***
> ***as a whole,*** is in substantial compliance with the
> applicable requirements in paragraphs (5) and (6) of this
> section, and results in a CERCLA-quality cleanup;

19 (40 CFR section 300.700(c)(3)(i), emphasis added)  Thus, a private CERCLA

20 action is consistent with the NCP if the action, ***evaluated as a whole***, is in

21 "substantial compliance" with certain procedural requirements, and results in a

22 "CERCLA-quality cleanup."  40 C.F.R. § 300.700(c)(3)(i); *See also* 40 C.F.R. §

23 300.700(c)(4) ("immaterial or insubstantial deviations" will not render a response

24 action inconsistent with the NCP).[4]

25    As anticipated, at the close of plaintiff's evidence, plaintiff has failed to

26 proffer any evidence that its response action was NCP compliant when evaluated

27

28 [4] Rowe has extensively briefed the law applicable to its position in its trial brief, and incorporates its prior brief by reference.  (Dkts. 502, 518 and 518)

13

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  "as a whole." Notably, Johnson testified that necessary costs do not automatically

2  become consistent with the NCP by virtue of being "necessary," and a separate

3  analysis is required to reach such a conclusion. (Transcript, Vol. 5, at 863: 9 - 18.)

4  Moreover, the "unnecessary costs" were not performed in response to any

5  environmental threat, and either did not meet the definition of 'response action' or

6  was not related to the threat posed by the release. (Transcript, Vol. 5 at 875: 5 –

7  15) Further, simply because Tyco was working with and through the Water Board

8  was of no consequence to its NCP compliance. Indeed, in the response to

9  comments on the draft RAP asked to "[c]larify that the Water Board is not

10  requiring an NCP-compliant process at this site," the water board responded that

11  "[w]e are requiring cleanup at this site pursuant to California Water Code

12  authority. We are not requiring Tyco to follow an NCP compliant process. We

13  understand that Tyco is attempting to follow an NCP-compliant process for cost-

14  recovery purposes. *We have no opinion on whether the process to date has been*

15  *NCP compliant.*" (Joint Exhibit No. ["JE"] 531, **Exhibit F** to the Strunk Decl.)

16  Ultimately, it would be illogical not to find that plaintiff's "whole" costs are

17  the $7,215,542 spent remediating the site, which includes all of the items that

18  plaintiffs have sought for the better part of six years of litigation to seek recovery

19  from Rowe. How, then, can just 55% of plaintiff's sought-after costs represent

20  "substantial" compliance with the NCP? Simply stated, they cannot. Perhaps it is a

21  "preponderance" of compliance, but that is not the standard. Moreover, factoring

22  in plaintiffs' failures to secure meaningful public participation or select a cost

23  effective remedy, it is simply impossible to reach a conclusion *other* than the fact

24  that plaintiffs' remedy does not comply with the NCP. And, as this is not a state

25  tort action– rather, it is solely a CERCLA claim – Tyco's failure to substantially

26  comply with the NCP bars its recovery.

27

28

DEFENDANT ROWE INDUSTRIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR PARTIAL FINDINGS PURSUANT TO RULE 52(c)

1  **IV.    CONCLUSION**

2         For the foregoing reasons, Rowe requests that this Court make the factual

3  findings enumerated in its notice, that its motion be GRANTED, and that

4  Judgment be entered in its favor.

5  Dated: February 15, 2013                    GORDON & REES LLP

6

7                                        By:

8                                            Michael J. Pietrykowski
                                             Mordecai D. Boone
9                                            Christopher D. Strunk
                                             Attorneys for Defendant and
10                                           Cross-Complainant
                                             ROWE INDUSTRIES, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111